# **EXHIBIT 10**

MAY 16 2002 14:08 FR US ATT                    TO 914154367234    P.02



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*Date of Transcription*
April 16, 2002

Page 1 of 3

On 4/12/02 ROOMY KHAN, a cooperating witness, ████████ was
interviewed at the Securities and Exchange Commission Office
located at 44 Montgomery St., San Francisco, CA.  Present for the
interview were Criminal Investigator John Mazzella, SEC Assistant
Director Jeff Coffman and SEC Senior Counsel Greg Lawrence.  KHAN
was represented by JOHN WILLIAMS ████████ during this
meeting.  At this time, KHAN stated substantially, in part the
following:

KHAN stated that she was born in Delhi, India and her educational
background includes an associates degree from Delhi, a masters in
physics from Delhi, a masters in electrical engineering from
Columbia University in NYC and another masters in physics from
Kent State in Ohio.  KHAN worked at INTEL from approximately
1995 to 1998.  She then worked for one year at GALLEON FUNDS and
has been unemployed since then.

KHAN met RAJ RAJARATNAM when she worked for INTEL.  KHAN advised
that she "cold called" analysts to obtain information on
competitors of INTEL.  RAJARATNAM was one of the first people she
sought that actually answered the telephone.  KHAN advised that
RAJARATNAM was very helpful and friendly.  KHAN told RAJARATNAM
she was from Delhi, India and RAJARATNAM said that his wife was
also from there.  KHAN explained that she had a desire to work as
an analyst related to Wall Street at this time.  KHAN stated
that she spoke to RAJARATNAM in the fall of 1995 when he was
still at NEEDHAM.  RAJARATNAM told KHAN to send her resume to
him, which she did.  KHAN interviewed with RAJARATNAM in the end
of 1996 and he made a job offer to her but she did not wish to
move to NYC and declined.  KHAN then did not have any contact
with RAJARATNAM until the end of 1996 when she called him again.
At this time, RAJARATNAM told KHAN that he was leaving NEEDHAM
and starting his own fund, GALLEON.  RAJARATNAM gave KHAN his
home telephone number and asked her to call once he got started.
KHAN advised that it was around this time that RAJARATNAM began
asking KHAN "how's business" at INTEL.  He then started calling
with more frequency when he realized how much information she
actually had about the company.  KHAN advised that she still
wished to be an analyst on the West coast and RAJARATNAM would

Investigation on 4/12/02      at San Francisco, CA  File Number _____

By Criminal Investigator John J. Mazzella      Date Distated     April 16, 2002
This document contains neither recommendations nor conclusions of the U.S. Attorney's Office (USAO). It is the property of the USAO
and is loaned to your agency; it and its contents are not to be distributed outside your agency.

KHAN 4/12/02
Page 2 of 3

give her leads for job interviews. KHAN stated that during her
conversations with RAJARATNAM he indicated that someone else at
INTEL's finance department was providing him information. KHAN
stated that she "absolutely" believes RAJARATNAM had someone in
INTEL's finance department. She explained that once or twice
RAJARATNAM provided INTEL numbers to KHAN before the information
had been released to the public. KHAN further advised that
RAJARATNAM would refer to his "check" at INTEL or "my guy" at
INTEL. During 1997 KHAN and RAJARATNAM spoke at least one time
per week. KHAN would provide RAJARATNAM a "backlog report" each
week. In the beginning, KHAN would verbally give RAJARATNAM this
information. KHAN explained that eventually (Mid 1997) she got
tired of adding the numbers for him and started to just fax the
report directly to RAJARATNAM. KHAN also provided RAJARATNAM a
monthly report. KHAN advised that this was an extremely
informative report that she received only 1 or 2 times.
RAJARTANAM "pressed" KHAN to get this report. KHAN told
RAJARATNAM that she wasn't on the mailing list. KHAN advised
that both the "backlog report" and the "monthly report" were
"Intel confidential". She further advised that the reports she
faxed to RAJARATNAM had "Intel confidential" written on them.

KHAN stated that when she told RAJARATNAM she was leaving INTEL,
he asked her to stay and suggested that he pay her extra money.
He mentioned paying her as a "consultant" and also mentioned the
figure "$100,000". She declined. KHAN further stated that
RAJARATNAM also asked her to find someone that he could pay at
INTEL to continue to provide him information. KHAN opined that
RAJARATNAM has done this with other firms to get information.

KHAN stated that RAJARATNAM is very close friends with ████
████ of ████ ████ (LNU), who worked for GALLEON, told KHAN
that ████ tells RAJARATNAM everything. KHAN explained an
incident when she believed RAJARATMAN had insider information
related to XILINX. Prior to the announcement of a XILINX 2 for 1
stock split, GALLEON purchased approximately $700,000 worth of
XILINX shares the same day.

KHAN advised that RAJARATNAM has told her that he used to get
weekly numbers related to COMPAQ. KHAN did not who at COMPAQ may
have provided RAJARATNAM this information.

KHAN stated that RAJARATNAM called her within the last few
months. ████ (LNU) formerly of GALLEON, was starting her own
fund and RAJARATNAM asked KHAN what she thought about ████.

USA-000313622

KHAN 4/12/02
Page 3 of 3

KHAN stated that RAJARATNAM is from SRI LANKA and has 3 children,
2 girls and a boy.  His parents live in a home owned by
RAJARATNAM in New Jersey and RAJARATNAM resides in NYC.  KHAN
advised that several SRI LANKAN's work for RAJARATNAM at GALLEON.
She further advised that RAJARATNAM frequently takes trips abroad
to meet investors.  She recalled that he traveled to London quite
often sometimes just for the weekend.

USA-000313623

# EXHIBIT 11



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Del Global Technologies Corporation, HO-9122

To:    Custodian of Records
Galleon Management, L.P.
c/o George Lau
135 East 57th St., 16th Floor
New York, NY 10022

---

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

U.S. Securities and Exchange Commission, 450 5th Street, N.W., Washington, D.C. 20549-0806, November 21, 2003, at 9:00 a.m.

---

☐    **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____           Date:   November 6, 2003
Kevin Haley
Senior Counsel

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS:    If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## ATTACHMENT TO SUBPOENA
## TO GALLEON MANAGEMENT, L.P.

**I.    Definitions and Rules of Construction**

A.    As used in this attachment, the term "Galleon" means Galleon Management, L.P. and all present and former subsidiaries, affiliates, predecessors, successors, officers, directors, agents, employees, partnerships, general and limited partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, all affiliated hedge funds (or **functionally equivalent investment vehicles**) and Galleon Advisors, LLC.

B.    As used in this attachment, the term "documents" means all records, materials, and other tangible forms of expression, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, work papers, papers, reports, files, correspondence, notes, memoranda (including notes and memoranda of communications or meetings), graphs, charts, research, analyses, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, checks (front and back), drafts for money, wire transfer receipts and requests, confirmations of wire or cash transfers, deposit slips, invoices, bills, bills of lading, records of billings, records of payment, summaries of interviews, transcripts, calendars, datebooks, worksheets, contracts, agreements, bank statements, videotapes, audiotapes, and other permanent voice or image recordings (including voice-mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs, and other electronic media (**including electronic-mail**), microfilm, microfiche, and other storage devices.  The term "documents" includes finished versions and drafts of documents; it also includes the original document (or copy thereof if the original is not available) and all copies that differ in any respect from the original.

C.    As used in this attachment, the term "concerning" means relating to, referring to, pertaining to, reflecting, describing, evidencing, or constituting.

D.    As used in this attachment, the terms "and" and "or" shall be construed as both disjunctive and conjunctive so to bring within the scope of the attachment all responses that might otherwise be construed outside of its scope.

E.    As used in this attachment, the term "all" shall be construed as any, all, each, and every.

F.    Unless otherwise specified, all of the paragraphs below apply to the period January 1, 2001, to the present.

## II.   Documents to Produce

Produce the following documents in the possession, custody, or subject to the control of Galleon:

1. Documents sufficient to identify all brokerage accounts and/or investment accounts held by Galleon since January 1, 2003.

2. Documents sufficient to identify each Galleon fund and the individuals who have or had authority to execute trades in the fund.

3. An organizational chart or other graphic representation of the corporate structure of Galleon.

4. Documents sufficient to identify the name, title, current address and telephone number of all Galleon investors and limited partners since January 1, 2003.

5. Documents sufficient to identify the name, title, current address and telephone number of all Galleon employees, partners, officers, and directors since January 1, 2000.

6. All documents concerning the resignation, retirement, or termination of any Galleon employees, partners, officers, or directors, including any documents identifying their current addresses and phone numbers.

7. All documents concerning communications between any Galleon employees, partners, officers, or directors and any securities regulators, including, but not limited to:

   a) the Commission or its staff,
   b) any other federal agency,
   c) any state agency,
   d) any state board of accountancy,
   e) any other entity responsible for the regulation of accountants,
   f) any stock exchange,
   g) the NASD, or
   h) any other self-regulatory organization.

8. Documents sufficient to identify Galleon's fifty largest investors or limited partners, as measured by the dollar value of their investments on November 5, 2003.

9. All documents concerning communications between Galleon and its investors or limited partners since January 1, 2003.

10. All documents concerning incoming or outgoing telephone calls made or received by Galleon employees, partners, officers, or directors since January 1, 2003.

2

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Galleon Management, L.P., HO-9809

To:  Custodian of Records
     Galleon Management, L.P.
     c/o Lindi L. Beaudreault
     LeClair Ryan
     1701 Pennsylvania Avenue N.W.
     Suite 1045
     Washington, D.C. 20006

---

☒  **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

450 Fifth Street, N.W., Washington, D.C. 20549-0806, December 30, 2003, at 5:00 p.m.

☐  **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below: Not applicable

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:  *Mark E. Wolfe*                         Date:   December 9, 2003
     Mark E. Wolfe
     U.S. Securities and Exchange Commission
     450 5th Street, N.W.
     Washington, D.C.  20549-0806
     (202) 942-4643

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**ATTACHMENT TO SUBPOENA TO GALLEON MANAGEMENT, L.P.**
*In the Matter of Galleon Management, L.P., HO-9809*

I.    **Definitions and Rules of Construction**

The following definitions apply to the terms wherever used in this Attachment:

A.    **All/Each.** Each of the terms "all" and "each" shall be construed as "all, each and every."

B.    **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Attachment all responses that might otherwise be construed to be outside of its scope.

C.    **"Galleon" or "you".** The term "Galleon" means Galleon Management, L.P. and all present and former subsidiaries, affiliates, predecessors, successors, officers, directors, agents, employees, partnerships, general and limited partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, all affiliated hedge funds **(or functionally equivalent investment vehicles)** and Galleon Advisors, LLC.

D.    **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

E.    **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing, constituting or containing.

F.    **Document.** As used in this attachment, the term "documents" means all records, materials, and other tangible forms of expression, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, work papers, papers, reports, files, correspondence, notes, memoranda (including notes and memoranda of communications or meetings), graphs, charts, research, analyses, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, checks (front and back), drafts for money, wire transfer receipts and requests, confirmations of wire or cash transfers, deposit slips, invoices, bills, bills of lading, records of billings, records of payment, summaries of interviews, transcripts, calendars, date books, worksheets, contracts, agreements, bank statements, videotapes, audiotapes, and other permanent voice or image recordings (including voice-mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs, and other electronic media **(including electronic-mail)**, microfilm, microfiche, and other storage devices. The term "documents" includes finished versions and drafts of documents; it also includes the original document (or copy thereof if the original is not available) and all copies that differ in any respect from the original.

G.    **Identify (with respect to documents).** When referring to documents, "identify" means provide, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author, addressee and recipient.

In the Matter of Galleon Management, L.P., HO-9809
Attachment to Galleon Management, L.P. Subpoena
December 9, 2003
Page 2 of 2

     H.     **Identify (with respect to persons).** When referring to a person, "identify" means provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent requests for the identification of that person.

     I.     **Including.** The term "including" means "including, but not limited to."

     J.     **Number.** The use of the singular form of any word includes the plural and vice versa.

     K.     **Person.** The term "person" means an individual, a business, any other legal entity legal, governmental entity, or incorporated or unincorporated association or other associated group of persons. The term also includes any person acting on behalf of any other person.

     L.     **LYO Underwriters.** The term "LYO Underwriters" means Salomon Smith Barney, Inc., Banc of America LLC, J.P. Morgan Securities, Inc., Credit Suisse First Boston Corporation, and Scotia Capital (USA), or any of their respective officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, representatives or promoters.

     M.     **Secondary Offering.** The term "secondary offering" means an offering of securities by an issuer with a class of securities registered under the Securities Exchange Act of 1934 prior to the date of the offering.

## II.   INSTRUCTIONS

     A.     If, after the service of your responses to this subpoena, you become aware of any other document responsive to this subpoena, you shall promptly furnish such additional document to the staff.

     B.     If the attorney-client privilege, work product doctrine, or any other privilege or immunity is claimed as to anything called for by this subpoena, you shall state: (i) the date that any such document was prepared; (ii) the identity of each person who prepared it; (iii) its subject matter; (iv) the identity of each person to whom it was directed or circulated; (v) the identity of each person who has custody of it; (vi) the nature of each objection; (vii) any and all facts and reasons that you claim support each objection; (viii) the reason or reasons for the preparation of the document; and (ix) the identity of each person who has knowledge of any of the facts or reasons that you claim support such objection or any of the reasons for the preparation of the document.

     C.     You must produce each document in your actual or constructive possession, custody or control.

Dec-10-03    09:16am    From-LeClair Ryan                2026594130            T-298    P.009/017    F-650
12/08/03    11:04 ...

In the Matter of Galleon Management, L.P., HO-9809
Attachment to Galleon Management, L.P. Subpoena
December 9, 2003
Page 3 of 3

## III.   DOCUMENTS TO PRODUCE

  A. For the period beginning June 1, 2002, and continuing through July 1, 2002, provide documents sufficient to identify all Galleon hedge funds that had securities positions in Lyondell Chemical Company, Inc.

    • For each hedge fund identified, provide documents sufficient to identify: (1) the securities account numbers and descriptions that held securities positions in Lyondell Chemical Company, Inc. for the period beginning June 1, 2002, and continuing through July 1, 2002; (2) the broker-dealers that maintained the before-mentioned securities accounts; (3) the securities positions in Lyondell Chemical Company, Inc. for each of above-mentioned securities accounts, and, where applicable, (4) the prime broker.

  B. For the period beginning June 1, 2002, and continuing through July 1, 2002, provide documents sufficient to identify all purchase and sale (including short sale) orders placed, including subsequently cancelled orders, by Galleon in the above-requested securities accounts with regard to the securities (including derivative securities) of Lyondell Chemical Company, Inc.

    • For each order placed, provide the name of the individual who submitted the order as well as the applicable date and the person authorized to trade for the securities account.

  C. For the period beginning March 1, 2002, and continuing through July 1, 2002, provide documents (including, but not limited to, contracts, agreements, prospectuses, letters, securities transfers, bills, invoices, deposit slips, or payments) concerning communications between Galleon and any of the LYO Underwriters with respect to the securities of Lyondell Chemical Company, Inc.

  D. For the period beginning June 1, 2002 and continuing through October 31, 2002, provide documents sufficient to identify all secondary offerings in which Galleon purchased any of the securities offered.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK

Jan-16-04    09:32am    From-LeClair Ryan                2026594133          T-389   P.007/013   F-870



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Galleon Management, L.P., HO-9809

To:   Custodian of Records
      Galleon Management, L.P.
      c/o George Lau
      135 East 57th Street, 16th Floor
      New York, NY  10022

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

      ATTN:  Michael Monticciolo
      Mail Stop-0908
      Office of Internet Enforcement
      United States Securities and Exchange Commission
      450 Fifth Street NW, Washington, DC 20549-0908

      on January 29, 2004 at 5:30 p.m., Eastern time

☐ **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
Failure to comply may subject you to a fine and/or imprisonment.

By:  _(signature)_                                    Date:   January 15, 2004
      Michael Monticciolo
      Senior Counsel

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**ATTACHMENT**
**TO**
**SUBPOENA**
**TO**
**GALLEON MANAGEMENT, L.P.**
*In the Matter of Galleon Management, L.P., HO-9809*

## I.     DEFINITIONS

The following definitions apply to the terms wherever used in this Attachment:

A.     **All/Each.** Each of the terms "all" and "each" shall be construed as "all, each and every."

B.     **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Attachment all responses that might otherwise be construed to be outside of its scope.

C.     **"Galleon" or "you".** The term "Galleon" means Galleon Management, L.P. and all present and former subsidiaries, affiliates, predecessors, successors, officers, directors, agents, employees, partnerships, general and limited partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, all affiliated hedge funds (or functionally equivalent investment vehicles) and Galleon Advisors, LLC.

D.     **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

E.     **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing, constituting or containing.

F.     **Document.** As used in this attachment, the term "documents" means all records, materials, and other tangible forms of expression, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, work papers, papers, reports, files, correspondence, notes, memoranda (including notes and memoranda of communications or meetings), graphs, charts, research, analyses, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, checks (front and back), drafts for money, wire transfer receipts and requests, confirmations of wire or cash transfers, deposit slips, invoices, bills, bills of lading, records of billings, records of payment, summaries of interviews, transcripts, calendars, datebooks, worksheets, contracts, agreements, bank statements, order tickets, brokerage statements, videotapes, audiotapes, and other permanent voice or image recordings (including voice-mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs, and other electronic media (including electronic-mail and instant messages), microfilm, microfiche, and other storage devices. The term "documents" includes finished versions and drafts of documents; it also includes the original document (or copy thereof if the original is not available) and all copies that differ in any respect from the original.

*Attachment to Galleon Management, L.P. Subpoena*
*January 15, 2004*

G.   **Identify (with respect to documents).**  When referring to documents, "identify" means provide, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author, addressee and recipient.

H.   **Identify (with respect to persons).**  When referring to a person, "identify" means provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent requests for the identification of that person.

I.   **Including.**  The term "including" means "including, but not limited to."

J.   **Number.**  The use of the singular form of any word includes the plural and vice versa.

K.   **Person.**  The term "person" means an individual, a business, any other legal entity legal, governmental entity, or incorporated or unincorporated association or other associated group of persons.  The term also includes any person acting on behalf of any other person.

II.   **INSTRUCTIONS**

A.   If, after the service of your responses to this subpoena, you become aware of any other document responsive to this subpoena, you shall promptly furnish such additional document to the staff.

B.   If the attorney-client privilege, work product doctrine, or any other privilege or immunity is claimed as to anything called for by this subpoena, you shall state:  (i) the date that any such document was prepared; (ii) the identity of each person who prepared it; (iii) its subject matter; (iv) the identity of each person to whom it was directed or circulated; (v) the identity of each person who has custody of it; (vi) the nature of each objection; (vii) any and all facts and reasons that you claim support each objection; (viii) the reason or reasons for the preparation of the document; and (ix) the identity of each person who has knowledge of any of the facts or reasons that you claim support such objection or any of the reasons for the preparation of the document.

C.   You must produce each document in your actual or constructive possession, custody or control.

Jan-16-04  10:14am  From-LeClair Ryan            2026594130        T-390  P.002/002  F-872

Attachment to Galleon Management LP... Filing ...

*January 15, 2004*

## III.  DOCUMENTS YOU MUST PRODUCE

A.  For each "Issuer" listed in section III.B. of this Attachment, for the period of 30 calendar days before and after the "Pricing Date," provide the following:

    1.  Documents sufficient to identify all securities purchased and sold (including short sales) orders placed, including subsequently cancelled orders, by Galleon.

    2.  Without limiting the information subject to any other item in this Attachment, documents (including contracts, instant messages, electronic-mail agreements, prospectuses, letters, securities transfers, bills, invoices, deposit slips, or payments) concerning communications between Galleon and any underwriter, broker (including prime broker) or dealer, including any agent of the foregoing, with respect to any of the "Offerings" listed in section III.B.

B.  Offerings

| ISSUER | SYMBOL | PRICING DATE |
|---|---|---|
| American Electrical Power, Inc. | AEP | 2.27.03 |
| Amphenol Corp. | APH | 8.15.03 |
| AON Corp. | AOC | 11.5.02 |
| Baxter International | BAX | 12.11.02 |
| Big 5 Sporting Goods | BGFV | 11.17.03 |
| Chicago Bridge & Iron Co. | CBI | 6.26.03 |
| Corrections Corp. of America | CXW | 5.1.03 |
| CSK Auto Corp. | CAO | 9.9.03 |
| Digital Theatre | DTSI | 11.19.03 |
| Digitas, Inc. | DTAS | 8.4.03 |
| Endo Pharmaceuticals | ENDP | 7.2.03 |
| Epix Medical, Inc. | EPIX | 8.6.03 |
| Forward Air Corp. | FWRD | 11.10.03 |
| Hewitt Associates, Inc. | HEW | 8.6.03 |
| Inet Technologies | INTI | 10.7.03 |
| MEMC Electronic Materials, Inc. | WFR | 5.15.03 |
| Navigator Group | NAVG | 10.1.03 |
| Pacificare | PHS | 11.10.03 |
| Penn-America Group | PNG | 12.10.02 |
| Progress Energy | PGN | 11.6.02 |
| SFBC International, Inc. | SFCC | 10.31.03 |
| Technical Olympic | TOUS | 11.13.03 |
| Westcorp | WES | 11.18.03 |
| Xerox | XRX | 6.19.03 |

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK

Apr-12-04   08:57am   From-LeClair Ryan                 2026594130              T-680   P.002/009   F-586



### SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Galleon Management, L.P., HO-9809

To:   Custodian of Records
      Galleon Management, L.P.
      c/o George Lau
      135 East 57th Street, 16th Floor
      New York, NY  10022

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

      ATTN:  Michael Monticciolo
      Mail Stop-0908
      Office of Internet Enforcement
      United States Securities and Exchange Commission
      450 Fifth Street NW, Washington, DC 20549-0908

      on April 30, 2004 at 5:30 p.m., Eastern time

☐  **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

### FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.
Failure to comply may subject you to a fine and/or imprisonment.

By: _____        Date:  ___April 9, 2004___
    Mark F. Vilardo
    Senior Counsel

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

ATTACHMENT
TO
SUBPOENA
TO

GALLEON MANAGEMENT, L.P.
*In the Matter of Galleon Management, L.P., HO-9809*

## I.   DEFINITIONS

The following definitions apply to the terms wherever used in this Attachment:

**A.   All/Each.** Each of the terms "all" and "each" shall be construed as "all, each and every."

**B.   And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Attachment all responses that might otherwise be construed to be outside of its scope.

**C.   "Galleon" or "you".** The term "Galleon" means Galleon Management, L.P. and all present and former subsidiaries, affiliates, predecessors, successors, officers, directors, agents, employees, partnerships, general and limited partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, all affiliated hedge funds **(or functionally equivalent investment vehicles)** and Galleon Advisors, LLC.

**D.   Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**E.   Concerning.** The term "concerning" means relating to, referring to, describing, evidencing, constituting or containing.

**F.   Document.** As used in this attachment, the term "documents" means all records, materials, and other tangible forms of expression, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, work papers, papers, reports, files, correspondence, notes, memoranda (including notes and memoranda of communications or meetings), graphs, charts, research, analyses, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, checks (front and back), drafts for money, wire transfer receipts and requests, confirmations of wire or cash transfers, deposit slips, invoices, bills, bills of lading, records of billings, records of payment, summaries of interviews, transcripts, calendars, datebooks, worksheets, contracts, agreements, bank statements, videotapes, audiotapes, and other permanent voice or image recordings (including voice-mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs, and other electronic media **(including electronic-mail and instant messages)**, microfilm, microfiche, and other storage devices. The term "documents" includes finished versions and drafts of documents; it also includes the original document (or copy thereof if the original is not available) and all copies that differ in any respect from the original.

*In the Matter of Galleon Management, L.P., HO-9809*
*Attachment to Galleon Management, L.P. Subpoena*
*April 9, 2004*

G.    **Identify (with respect to documents).**  When referring to documents, "identify" means provide, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author, addressee and recipient.

H.    **Identify (with respect to persons).**  When referring to a person, "identify" means provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent requests for the identification of that person.

I.    **Including.**  The term "including" means "including, but not limited to."

J.    **Number.**  The use of the singular form of any word includes the plural and vice versa.

K.    **Person.**  The term "person" means an individual, a business, any other legal entity legal, governmental entity, or incorporated or unincorporated association or other associated group of persons.  The term also includes any person acting on behalf of any other person.

L.    **Secondary Offering.** The term "secondary offering" means an offering of securities by an issuer with a class of securities registered under the Securities Exchange Act of 1934 prior to the date of the offering.

## II.    INSTRUCTIONS

A.    If, after the service of your responses to this subpoena, you become aware of any other document responsive to this subpoena, you shall promptly furnish such additional document to the staff.

B.    If the attorney-client privilege, work product doctrine, or any other privilege or immunity is claimed as to anything called for by this subpoena, you shall state: (i) the date that any such document was prepared; (ii) the identity of each person who prepared it; (iii) its subject matter; (iv) the identity of each person to whom it was directed or circulated; (v) the identity of each person who has custody of it; (vi) the nature of each objection; (vii) any and all facts and reasons that you claim support each objection; (viii) the reason or reasons for the preparation of the document; and (ix) the identity of each person who has knowledge of any of the facts or reasons that you claim support such objection or any of the reasons for the preparation of the document.

C.    You must produce each document in your actual or constructive possession, custody or control.

*In the Matter of Galleon Management, L.P., HO-9809*
*Attachment to Galleon Management, L.P. Subpoena*
*April 9, 2004*

## III.   DOCUMENTS YOU MUST PRODUCE

A.     For the period beginning January 1, 2000 and continuing through March 31, 2004, provide documents sufficient to identify all secondary offerings in which Galleon purchased any of the securities offered, including the following information:

    1.     the issuer of the securities offered;

    2.     the pricing date of the offering; and

    3.     each of Galleon's funds (*e.g.*, Admirals Overseas Fund, Partners Fund, Captains Fund, Buccaneers Fund, Healthcare Fund, Technology Fund, New Media Fund) allocated securities in the offering and the number of securities allocated to each fund;

B.     For the period beginning 30 calendar days before and ending 30 days after the pricing date of each offering identified in response to III.A., provide documents sufficient to identify all purchase and sale (including short sale) orders placed, including subsequently cancelled orders, by Galleon in the securities (including derivative securities) of each issuer identified in response to III.A.1.a.

C.     Without limiting the information subject to any other item in this Attachment, provide documents concerning any offering identified in response to III.A.

D.     All documents relating to Galleon's policies, procedures and controls concerning oversight of personnel, including, but not limited to, trading in securities, in effect since January 1, 2000.

E.     Documents provided to potential investors in Galleon funds, including, but not limited to:

    1.     marketing materials;

    2.     prospectuses, offering circulars or similar materials;

    3.     financial information;

    4.     Galleon personnel, including management of Galleon and funds controlled by Galleon;

    4.     descriptions, characteristics and performance of Galleon's funds; and

    5.     questionnaires, applications or similar materials.

<u>Note</u> that <u>you</u> <u>may</u> <u>omit</u> from your production hereunder information provided to the Commission in response to subpoenas to you dated December 1, 2003 and/or January 15, 2004.

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK

May-25-04    03:20pm    From-LeClair Ryan                2026594130            T-851  P.002/015  F-870



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Galleon Management, L.P., HO-9809

To:    Custodian of Records
       Galleon Management, L.P.
       c/o Lindi L. Beaudreault
       LeClair Ryan
       1701 Pennsylvania Avenue N.W.
       Suite 1045
       Washington, D.C. 20006

---

☒    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

450 Fifth Street, N.W., Washington, D.C. 20549-0806, June 11, 2004, at 5:00 p.m.

☐    **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below: Not applicable

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:  _Mark E. Wolfe_                        Date:  May 25, 2004

     Mark E. Wolfe
     U.S. Securities and Exchange Commission
     450 5th Street, N.W.
     Washington, D.C.  20549-0806
     (202) 942-4643

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS:    If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

May-25-04   03:23pm   From-LeClair Ryan                2026594130        T-852  P.006/015  F-970

**ATTACHMENT TO SUBPOENA TO GALLEON MANAGEMENT, L.P.**
*In the Matter of Galleon Management, L.P., HO-9809*

I.   **Definitions and Rules of Construction**

The following definitions apply to the terms wherever used in this Attachment:

A.   **All/Each.** Each of the terms "all" and "each" shall be construed as "all, each and every."

B.   **And/Or.** The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this Attachment all responses that might otherwise be construed to be outside of its scope.

C.   **"Galleon" or "you".** The term "Galleon" means Galleon Management, L.P. and all present and former subsidiaries, affiliates, predecessors, successors, officers, directors, agents, employees, partnerships, general and limited partners thereof, and any aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, all affiliated hedge funds (or functionally equivalent investment vehicles) and Galleon Advisors, LLC.

D.   **Communication.** The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

E.   **Concerning.** The term "concerning" means relating to, referring to, describing, evidencing, constituting or containing.

F.   **Document.** As used in this attachment, the term "documents" means all records, materials, and other tangible forms of expression, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, work papers, papers, reports, files, correspondence, notes, memoranda (including notes and memoranda of communications or meetings), graphs, charts, research, analyses, ledger sheets, periodic account statements, confirmations, telegrams, telexes, facsimiles, telephone logs, checks (front and back), drafts for money, wire transfer receipts and requests, confirmations of wire or cash transfers, deposit slips, invoices, bills, bills of lading, records of billings, records of payment, summaries of interviews, transcripts, calendars, date books, worksheets, contracts, agreements, bank statements, videotapes, audiotapes, and other permanent voice or image recordings (including voice-mail), magnetic tapes, computer printouts, computer tapes, disks, diskettes, disk packs, and other electronic media (including electronic-mail), microfilm, microfiche, and other storage devices. The term "documents" includes finished versions and drafts of documents; it also includes the original document (or copy thereof if the original is not available) and all copies that differ in any respect from the original.

G.   **Identify (with respect to documents).** When referring to documents, "identify" means provide, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author, addressee and recipient.

In the Matter of Galleon Management, L.P., HO-9809
Attachment to Galleon Management, L.P. Subpoena
May 25, 2004
Page 2 of 5

      H.     **Identify (with respect to persons).** When referring to a person, "identify" means provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent requests for the identification of that person.

      I.     **Including.** The term "including" means "including, but not limited to."

      J.     **Number.** The use of the singular form of any word includes the plural and vice versa.

      K.     **Person.** The term "person" means an individual, a business, any other legal entity legal, governmental entity, or incorporated or unincorporated association or other associated group of persons. The term also includes any person acting on behalf of any other person.

## II.    INSTRUCTIONS

      A.     If, after the service of your responses to this subpoena, you become aware of any other document responsive to this subpoena, you shall promptly furnish such additional document to the staff.

      B.     If the attorney-client privilege, work product doctrine, or any other privilege or immunity is claimed as to anything called for by this subpoena, you shall state: (i) the date that any such document was prepared; (ii) the identity of each person who prepared it; (iii) its subject matter; (iv) the identity of each person to whom it was directed or circulated; (v) the identity of each person who has custody of it; (vi) the nature of each objection; (vii) any and all facts and reasons that you claim support each objection; (viii) the reason or reasons for the preparation of the document; and (ix) the identity of each person who has knowledge of any of the facts or reasons that you claim support such objection or any of the reasons for the preparation of the document.

      C.     You must produce each document in your actual or constructive possession, custody or control.

## III.    DOCUMENTS TO PRODUCE

      A.     Provide copies of documents that sufficiently identify all Galleon hedge funds that had securities positions in Esperion Therapeutics, Inc. ("Esperion") for the period beginning November 1, 2003, and continuing through January 9, 2004.

- For each hedge fund identified, provide documents sufficient to identify: (1) the securities accounts that held securities positions in Esperion for the period beginning November 1, 2003, and continuing through January 9, 2004; (2) the

In the Matter of Galleon Management, L.P., HO-9809
Attachment to Galleon Management, L.P. Subpoena
May 25, 2004
Page 3 of 5

broker-dealers that maintained the before-mentioned securities accounts; (3) the securities positions in Esperion for each of above-mentioned securities accounts, and, where applicable, (4) the prime broker.

**B.**  For the period beginning November 1, 2003, and continuing through January 9, 2004, provide copies of all documents sufficient to identify all purchase and sale (including short sale) orders placed, including subsequently cancelled orders, by Galleon in the above-requested securities accounts with regard to the securities of Esperion.

- For each order placed, provide the name of the individual who submitted the order as well as the applicable date and time and the person authorized to trade for the securities account.

**C.**  For the period beginning November 1, 2003, and continuing through January 9, 2004, provide copies of all documents evidencing all communications, including, correspondence, notes, e-mails, taped conversations, telephone logs, with all persons associated with Esperion.

**D.**  Provide copies of documents that sufficiently identify all Galleon hedge funds that had securities positions in EVCI Career Colleges, Inc. ("EVCI Career") for the period beginning March 1, 2004, and continuing through May 7, 2004.

- For each hedge fund identified, provide documents sufficient to identify: (1) the securities accounts that held securities positions in EVCI Career for the period beginning March 1, 2004, and continuing through May 7, 2004; (2) the broker-dealers that maintained the before-mentioned securities accounts; (3) the securities positions in EVCI Career for each of above-mentioned securities accounts, and, where applicable, (4) the prime broker.

**E.**  For the period beginning March 1, 2004, and continuing through May 7, 2004, provide copies of all documents sufficient to identify all purchase and sale (including short sale) orders placed, including subsequently cancelled orders, by Galleon in the above-requested securities accounts with regard to the securities of EVCI Career.

- For each order placed, provide the name of the individual who submitted the order as well as the applicable date and time and the person authorized to trade for the securities account.

**F.**  For the period beginning March 1, 2004, and continuing through May 7, 2004, provide copies of all documents evidencing all communications, including, correspondence, notes, e-mails, taped conversations, telephone logs, with all persons associated with EVCI Career.

**G.**  Provide copies of documents that sufficiently identify all Galleon hedge funds that had securities positions in Health Management Associates, Inc. ("Health Management") for

In the Matter of Galleon Management, L.P., HO-9809
Attachment to Galleon Management, L.P. Subpoena
May 25, 2004
Page 4 of 5

the period beginning November 1, 2003, and continuing through January 9, 2004.

- For each hedge fund identified, provide documents sufficient to identify: (1) the securities accounts that held securities positions in Health Management for the period beginning November 1, 2003, and continuing through January 9, 2004; (2) the broker-dealers that maintained the before-mentioned securities accounts; (3) the securities positions in Health Management for each of above-mentioned securities accounts, and, where applicable, (4) the prime broker.

H.      For the period beginning November 1, 2003, and continuing through January 9, 2004, provide copies of all documents sufficient to identify all purchase and sale (including short sale) orders placed, including subsequently cancelled orders, by Galleon in the above-requested securities accounts with regard to the securities of Health Management.

- For each order placed, provide the name of the individual who submitted the order as well as the applicable date and time and the person authorized to trade for the securities account.

I.      For the period beginning November 1, 2003, and continuing through January 9, 2004, provide copies of all documents evidencing all communications, including, correspondence, notes, e-mails, taped conversations, telephone logs, with all persons associated with Health Management.

J.      Provide copies of documents that sufficiently identify all Galleon hedge funds that had securities positions in LM Ericsson ("Ericsson") for the period beginning December 29, 2003, and continuing through March 5, 2004.

- For each hedge fund identified, provide documents sufficient to identify: (1) the securities accounts that held securities positions in Ericsson for the period beginning December 29, 2003, and continuing through March 5, 2004; (2) the broker-dealers that maintained the before-mentioned securities accounts; (3) the securities positions in Ericsson for each of above-mentioned securities accounts, and, where applicable, (4) the prime broker.

K.      For the period beginning December 29, 2003, and continuing through March 5, 2004, provide copies of all documents sufficient to identify all purchase and sale (including short sale) orders placed, including subsequently cancelled orders, by Galleon in the above-requested securities accounts with regard to the securities of Ericsson.

- For each order placed, provide the name of the individual who submitted the order as well as the applicable date and time and the person authorized to trade for the securities account.

L.      For the period beginning December 29, 2003, and continuing through March 5, 2004, provide copies of all documents evidencing all communications, including,

In the Matter of Galleon Management, L.P., HO-9809
Attachment to Galleon Management, L.P. Subpoena
May 25, 2004
Page 5 of 5

correspondence, notes, e-mails, taped conversations, telephone logs, with all persons associated with Ericsson.

    M.    Provide copies of documents that sufficiently identify all Galleon hedge funds that had securities positions in Silicon Image, Inc. ("Silicon Image") for the period beginning October 1, 2003, and continuing through December 31, 2003.

- For each hedge fund identified, provide documents sufficient to identify: (1) the securities accounts that held securities positions in Silicon Image for the period beginning October 1, 2003, and continuing through December 31, 2003; (2) the broker-dealers that maintained the before-mentioned securities accounts; (3) the securities positions in Silicon Image for each of above-mentioned securities accounts, and, where applicable, (4) the prime broker.

    N.    For the period beginning October 1, 2003, and continuing through December 31, 2003, provide copies of all documents sufficient to identify all purchase and sale (including short sale) orders placed, including subsequently cancelled orders, by Galleon in the above-requested securities accounts with regard to the securities of Silicon Image.

- For each order placed, provide the name of the individual who submitted the order as well as the applicable date and time and the person authorized to trade for the securities account.

    O.    For the period beginning October 1, 2003, and continuing through December 31, 2003, provide copies of all documents evidencing all communications, including, correspondence, notes, e-mails, taped conversations, telephone logs, with all persons associated with Silicon Image.

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of the Benchmark Company LLC  NY-7470

To:    Galleon Management L.P.

---

[X]    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below.

3 World Financial Center, New York, New York 10281, Room 4300, October 20, 2005, 10:00 am.

---

[ ]    **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below.

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____          Date: _10/5/05_____
    Christina M. Marshall
    Staff Attorney

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS:       If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## Subpoena Attachment: Galleon Management L.P.

Definitions

1. "Documents" means all records and other tangible forms of expression including, without limitation, originals, drafts or finished versions, or annotated or nonconforming copies, however created, produced or stored (manually, mechanically, electronically or otherwise), and by whomever prepared, produced, sent, dated or received, including, without limitation, documents, books, papers, work papers, files, permanent files, personnel files, notes, review notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, plans, manuals, policies, ledger sheets, schedules, invoices, telegrams, faxes, telexes, wires, electronic mail messages, instant messages, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or communications or meetings, tape recordings, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, calendars, date books, appointment books, diaries, notices, bank statements, summaries, wire transfers, checks, invoices, drafts for money, bills, billing files, and records of payment.

2. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3. "Person" means any natural person or any business, legal or governmental entity or association.

4. "Concerning" means relating to, referring to, describing, evidencing or constituting.

5. The terms "any" and "all" shall be construed as "any and all".

6. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7. The use of the singular form of any word includes the plural and vice versa.

8. "Galleon Management" means Galleon Management L.P., its subsidiaries, officers, directors, employees, and all advisory affiliates.

9. Unless otherwise described, the time period covered by the subpoena is January 1, 2004 through the present.

<u>Documents Subpoenaed</u>

Produce all of the following:

    1.    All offering materials for the funds managed by Galleon Management.

    2.    All Galleon Management policies and procedures concerning gifts, travel, and entertainment.

    3.    All documents and communications concerning all travel and entertainment received by Galleon Management employees, including, but not limited to, calendars, date books and receipts.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 WORLD FINANCIAL CENTER, ROOM 4300
NEW YORK, NEW YORK 10281

WRITER'S DIRECT DIAL LINE
MANISH K. MITAL, ESQ.
(212) 336-0136
mitalm@sec.gov

November 30, 2005

**VIA FEDERAL EXPRESS**

George Lau
The Galleon Group
135 E. 57th St., 16th Floor
New York, NY 10022

RE:   **In re James Horvath (NY-07409A)**

Dear Mr. Lau:

The staff of the United States Securities and Exchange Commission is conducting an informal inquiry into the above-referenced matter. In connection with this inquiry, the staff requests that The Galleon Group ("Galleon") provide us with the documents or information listed below in Galleon's possession, custody, or control. Instructions for complying with this request, and definitions for certain terms used herein, are provided below.

**INSTRUCTIONS**

1.   The staff requests that the requested documents and information be produced as expeditiously as possible, but no later than **Thursday, December 22, 2005 at 5:00 p.m.**

2.   In providing the requested documents, please indicate which documents are responsive to which of the below numbered requests.

3.   Where possible, the staff requests that documents or information be produced in electronic format.

4.   For the purposes of this request, a draft or non-identical copy of a document is a separate document. The staff requests production of all drafts and non-identical copies of responsive documents.

5.   If any responsive documents are withheld for any reason, including any applicable privilege, please indicate so and briefly describe the privilege invoked as well as the quantity and nature of such withheld documents. For all documents withheld on the basis of any applicable privilege, please provide a separate privilege log including at least the following information: (a) the type of document, *e.g.*, letter or memorandum; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a request for production,

including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other. If no responsive documents are withheld such that Galleon's response will not be accompanied by a privilege log, please indicate so.

6.   If any document sought by this request once was, but no longer is, within Galleon's possession, control or custody, please identify each such document and its present or last known custodian, and state: (a) the reason why the document is not being produced; and (b) the date of the loss, destruction, discarding, theft or other disposal of the document.

7.   The following rules of construction apply to this informal inquiry: (a) the terms "all" and "each" shall be construed as all and each; (b) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed outside of its scope; and (c) the use of the singular form of any word includes the plural and vice versa.

8.   Unless otherwise indicated, this request seeks documents from August 1, 2004 through November 30, 2004. If any specific request seeks documents without limitation to time period, the request seeks documents from Galleon's inception onward.

9.   These requests are ongoing in nature. The staff requests that Galleon continue to produce responsive documents as they are found or created on an ongoing basis.

## DEFINITIONS

1.   The term "Galleon" means the entity doing business under the name The Galleon Group, as well as any entities in which Galleon has or has had a controlling interest, any parents, subsidiaries, predecessors, successors or affiliated entities, and any present and former directors, officers, employees, agents, attorneys, auditors, investment bankers, consultants, representatives and independent contractors of the foregoing entities.

2.   The term "documents" means any and all records and other tangible forms of expression and data compilations through which data can be obtained, including, without limitation, originals, drafts or finished versions, or annotated or nonconforming copies, however created, produced or stored (manually, mechanically, electronically or otherwise), and by whomever prepared, produced, sent, dated or received, including, but not limited to, e-mails, instant messages, Bloomberg messages, letters, correspondence, books, papers, work papers, files, permanent files, personnel files, notes, review notes, trading records, sales records, account records, confirmations, sales documents, projections and forecasts, analyses, memoranda, reports, records, journals, registers, analyses, plans, manuals, policies, ledger sheets, schedules, invoices, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or communications or meetings, tape recordings, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, calendars, date books, appointment books, diaries, and other data

2

compilations from which information can be obtained or translated, if necessary, through detection devices into reasonably usable form.

3.   The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

4.   The term "concerning" means reflecting, relating to, referring to, describing, evidencing, or constituting.

5.   The term "person" means any natural person or any business, legal or governmental entity or association.

6.   Unless otherwise indicated, when referring to a person, the phrase "to identify" means to give, to the extent known, the person's full name, present or last known addresses, telephone numbers, email addresses, and instant messaging accounts, and when referring to a natural person, additionally, the present or last known place of employment.

7.   Unless otherwise indicated, when referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s).

8.   The phrase "securities transaction" means any transaction concerning securities, options, futures, derivatives, swaps, swap agreements, contracts for delivery, contracts for difference, stock loan agreements, enhanced leveraging, stock financing, non-publicly traded securities, private investment partnerships, pooled investment vehicles, private equity investments, private securities transactions, or any other transaction concerning contracts, arrangements, understandings or relationships (legal or otherwise) concerning any security, including but not limited to transfer or voting of any security, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or loss, or the giving or withholding of proxies.

9.   The term "Genentech" shall mean Genentech, Inc., its parents, and all entities in which it has, or had, a controlling interest, and all subsidiaries, affiliates, predecessors, successors, general partners, limited partners, and partnerships of any of the foregoing, including any aliases, code names, or trade or business names used by any of the foregoing, and all officers, directors, and employees thereof.

10.  The term "OSIP" shall mean OSI Pharmaceuticals, Inc., its parents, and all entities in which it has, or had, a controlling interest, and all subsidiaries, affiliates, predecessors, successors, general partners, limited partners, and partnerships of any of the foregoing, including any aliases, code names, or trade or business names used by any of the foregoing, and all officers, directors, and employees thereof.

11.  The term "AstraZeneca" shall mean AstraZeneca, its parents, and all entities in which it has, or had, a controlling interest, and all subsidiaries, affiliates, predecessors, successors, general partners, limited partners, and partnerships of any of the foregoing, including any

aliases, code names, or trade or business names used by any of the foregoing, and all officers, directors, and employees thereof.

12.     The term "SG Cowen" shall mean SG Cowen & Co., its parents, and all entities in which it has, or had, a controlling interest, and all subsidiaries, affiliates, predecessors, successors, general partners, limited partners, and partnerships of any of the foregoing, including any aliases, code names, or trade or business names used by any of the foregoing, and all officers, directors, and employees thereof.

13.     The term "Tarceva" means the drug Tarceva.

14.     The term "James Horvath" means former SG Cowen employee James Horvath.

15.     The term "Ron Horvath" means Genentech employee Ron Horvath.

## REQUESTS FOR PRODUCTION

1.     Documents or information sufficient to identify Galleon's organizational structure, from August 1, 2004 through the present.

2.     Documents or information sufficient to identify each Galleon employee involved in securities transactions, research, or analysis concerning Genentech.

3.     Documents or information sufficient to identify each Galleon employee involved in securities transactions, research, or analysis concerning OSIP.

4.     Documents or information sufficient to identify each Galleon employee involved in securities transactions, research, or analysis concerning AstraZeneca.

5.     All documents concerning securities transactions in Genentech.

6.     All documents concerning securities transactions in OSIP.

7.     All documents concerning securities transactions in AstraZeneca.

8.     All communications concerning Genentech.

9.     All communications concerning OSIP.

10.    All communications concerning AstraZeneca.

11.    All documents concerning Tarceva.

12.    All documents concerning James Horvath, without limitation to time period.

13.    All documents concerning Ron Horvath, without limitation to time period.

4

14.     All communications with or concerning SG Cowen employees Eric Schmidt, Phil Nadeau, Joshua Schimmer, or Constance Hsia.

15.     Documents or information sufficient to identify Galleon's policies, procedures or guidelines concerning the treatment of nonpublic information concerning publicly traded companies by Galleon employees, including, but not limited to, all policies concerning trading securities while in possession of material, nonpublic information.

16.     Documents or information sufficient to identify Galleon's plans, criteria, or guidelines for investing in pharmaceutical or biotechnology stocks.

17.     Documents or information sufficient to identify the Galleon policies, procedures or guidelines concerning the retention of documents by Galleon employees, in effect from August 1, 2004 through the present.

This inquiry is confidential and nonpublic. This request should not be construed as an indication by the Commission or its staff that any violations of law have occurred, or as a reflection upon any person, entity, or security. Any information that Galleon provides to the staff is subject to the Commission's routine uses. Please review the enclosed SEC Form 1662, which contains supplemental information concerning the staff's request.

If you have any questions regarding this request, please call me at (212) 336-0136.

Sincerely,

Manish K. Mital
Senior Counsel
Division of Enforcement

Enclosure:     SEC Form 1662

5