# EXHIBIT 12



01/29/2007 16:39 FAX  212 336 1324                                              ☑001/025



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
Room 4300
THREE WORLD FINANCIAL CENTER
NEW YORK, N.Y. 10281-1022

## TELEFACSIMILE TRANSMITTAL

PLEASE DELIVER THE FOLLOWING PAGES TO:

Name: George Lau

Organization: Galleon Management, LP

Telefacsimile Number: (212) 371-2891

Total Number of pages with cover sheet: 25 Pages

Date: 1-29-07    Time: 3:30 Pm

**Comments:**

George - Attached is SEC Form 1661, an examination brochure and
our initial request list. Please call me at (212) 336-0548 with
any questions

From:  Ken Roberts

Transmitted by:

NERO fax number:                          212-336-1327

IF YOU DO NOT RECEIVE ALL THE TRANSMITTED PAGES, PLEASE CALL   212-336- 0548

**CONFIDENTIALITY NOTE:** This facsimile is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, or copying of this facsimile or the information herein by anyone other than the intended person is prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the facsimile by mail.



UNITED STATES SECURITIES AND EXCHANGE COMMISSION
INFORMATION REQUEST LIST

Registrant:     **Galleon Management, LP**
File No.:        **801-65025**

      Please furnish the information listed below for the above-referenced entity.  Please also use your judgment regarding whether records requested in both electronic format and hard copy should only be provided electronically. Where necessary, furnish responses on Registrant's letterhead. Unless otherwise indicated, please provide the requested information for the **examination period January 3, 2006 to December 31, 2006 (the "examination period")**. This request for information is divided into two main parts. The first part, which covers all items listed in Sections A and B, identifies information that is to be provided at the outset of the inspection. The second part, which includes all items in Section C, lists information that may be requested if Registrant's compliance program is deemed to be weak or if other information we review indicates to us that additional scrutiny of any area is necessary.

      At this time, copies need not be made of information in any of the sections to which only access is requested.  However, please have such information *collected and ready* for the staff's review.  While certain information is specifically identified in this document, during the inspection the staff may request additional information if it becomes necessary.

      At the commencement of our fieldwork, we would like to speak with at least one member of senior management to obtain an overall view of Registrant's organization, business, control environment, and compliance culture.  Also during our fieldwork, we would like to discuss in more detail with the Chief Compliance Officer and Risk Manager (if Registrant has such a position), and other persons as relevant, Registrant's compliance program, as well as the specific compliance risks Registrant has identified and the policies and procedures used to mitigate and manage such risks in the areas listed in **Section A**.  At various times during our fieldwork, we will also want to interview persons responsible for functions such as portfolio management, trade execution, pricing, back office/administration, information technology, anti-money laundering, and marketing.

      You are expected to produce all of the documents requested herein and provide such to the examination team upon their arrival, with the exception of information responsive to Item B75, B84 and C1 where the staff will select only a sample. **If the Registrant becomes aware of a delay in the production of any of the information included in this request list extending beyond the first day of the field examination which is scheduled to begin on February 12, 2007 the Registrant should immediately, upon learning of the delay, contact Dorothy A. Eschwie, Assistant Regional Director, (212) 336-0502 or George DeAngelis, Branch Chief, (212) 336-0494.  If production of any additional information requested during the field examination will be delayed for more than one week from the date the request is made, Registrant should also immediately contact either of the persons identified above.**

A.    <u>**Risk Management and Internal Controls**</u>

      New Rule 206(4)-7 under the Investment Adviser's Act (compliance date October 5, 2004) is designed to protect investors by ensuring that all advisers have internal programs to enhance compliance with the federal securities laws.  To assist us in evaluating Registrant's compliance program, please provide relevant information that **documents and substantiates** the effectiveness of Registrant's compliance policies and procedures in each of the areas identified below.  In addition to policies, procedures, and compliance manuals, please make available documents such as:  exception reports together with documentation of follow-up work, completed compliance checklists, reconciliations, management reports, documents containing supervisory

01/29/2007 16:39 FAX  212 336 1324                                    ☒003/025

Master Information Request List – Investment Advisers

approval of overrides, in various areas, warning or sanction notices to staff that violated a policy or procedure, results of and related analyses of transactional (quality control) and forensic testing, follow-up work performed based upon such analyses, self-assessments of the effectiveness of Registrant's compliance policies and procedures, internal audit reports, and so on.

*NOTE*:  In responding to our requests for information below, you should provide information that **demonstrates** how the policies and procedures used by Registrant to mitigate and manage its compliance risks are applied in practice.  In this regard, procedures and compliance manuals represent a useful starting point; these manuals **do not**, however, provide information about how compliance policies and procedures are being applied in practice or how effective such policies and procedures may be in preventing, finding and correcting compliance problems  As a result, you can demonstrate the effectiveness of your compliance processes **only** by providing documents that contain "output" from the application of such compliance policies and procedures to the daily work flows of Registrant.

Failure to provide information that documents how your compliance program operates in practice may result in our concluding that Registrant has weak or ineffective risk management and control processes and is not in compliance with Rule 206(4)-7.

A1.  Registrant's overall process for and commitment to establishing and maintaining an effective compliance culture (its "tone at the top").

A2.  The specific compliance policies, techniques and procedures used in achieving the following important objectives:

   a.  Portfolio management decisions are consistent with clients' mandates (investment objectives, restrictions and risk tolerance), regulatory requirements, disclosures and fiduciary obligations.

   b.  Decisions made and costs incurred in establishing and maintaining Registrant's brokerage arrangements and placing orders (trades) for clients are consistent with maximizing the value of clients' accounts, disclosures made to clients, regulatory requirements and fiduciary obligations.

   c.  Allocations among clients' accounts of IPOs, other investment opportunities, and blocked and crossed trades in issues traded on secondary markets are fair and consistent with disclosures, regulatory requirements and fiduciary obligations.

   d.  Prices used to value positions in clients' accounts, including all clients that are commingled accounts/funds, reflect accurately current market conditions and the prices that could be realized upon a current sale of those positions; the process used to calculate NAVs of commingled accounts/funds results in consistently accurate allocations of the commingled accounts' net assets among participants/fund shareholders and is consistent with disclosures and regulatory requirements.

   e.  Advisory clients' assets, including those of commingled accounts/funds, are held and moved in ways that protect them from theft, misappropriation, misuse, and loss.

   f.  Information provided to advisory clients and commingled account/fund shareholders regarding transactions in and balances of their accounts reflects accurately the actual transactions in and balances of those accounts and reflects fairly all decisions affecting these accounts.

   g.  Personal trading activities of access persons and investment decisions for proprietary accounts of Registrant are consistent with codes of ethics, regulatory requirements, disclosures and fiduciary obligations.

Master Information Request List – Investment Advisers

h.   Performance and other information used in advertisements and other marketing materials is calculated accurately and fairly and is used in ways that are not misleading and marketing and distribution activities are consistent with regulatory requirements and disclosures.

i.   Information about Registrant's operations and activity in client accounts is timely and accurately created, captured, and compiled, and is safeguarded from unauthorized access, use, manipulation, alteration, and untimely destruction; such information is used to provide complete, accurate and timely reports and statements to management, clients, and regulators.

j.   Registrant's compliance program is adequately designed and maintained so as to prevent, find and resolve violations of relevant statutes, rules and other regulatory guidance.

k.   Anti-money laundering programs effectively prevent Registrant from being a party to money laundering or terrorist financing schemes.

**B.   Initial Requests for Information**

B1.   Provide complete information about all undisclosed arrangements or side arrangements that adversely impact advisory clients and directly or indirectly benefit any person or entity other than advisory clients.

B2.   A copy of any report or letter submitted to management by Registrant's independent auditors concerning internal controls (including any report or letter to the board of directors of any affiliated fund group).

B3.   Registrant's organization chart, employee list and a schedule or chart of all affiliated entities.  Please include all advisory representatives and/or independent contractors.

B4.   (i)A list of current clients (excluding wrap fee clients) featuring for each:

a.   Account inception date;

b.   Account number, account name and the current balance;

c.   Whether the client is a related person or a proprietary account, identifying the person to whom related)[1]

d.   Account custodian, including name and location;

e.   Type of account (*e.g.*, individual, family office, defined benefit retirement plan, registered fund, private investment fund, other unregistered fund);

---

[1]      Affiliated person of Registrant means (a) any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting securities of Registrant; (b) any person 5 per centum or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by Registrant; (c) any person directly or indirectly controlling, controlled by, or under common control with, Registrant; and (d) any officer, director, partner, copartner, or employee of Registrant.

Master Information Request List – Investment Advisers

    f.   Investment strategy (*e.g.*, global equity, high-yield, aggressive growth, long-short, statistical arbitrage);

    g.   Whether or not Registrant has discretionary authority;

    h.   Whether client has a directed brokerage arrangement (include name of broker and purpose for such direction, if known);

    i.   Value of each client's account at end of period that was used for purposes of calculating its advisory fee for the most recent billing period;

    j.   Whether the client pays a performance fee;

    k.   Whether the client receives account statements directly from the custodian.

    l.   The portfolio manager responsible for investment decisions;

    m.   With respect to trust accounts, indicate if Registrant or related person is a trustee for the account;

    n.   Indicate if Registrant or related person has a full power of attorney, i.e. not just limited to trading discretion;

    o.   Indicate if Registrant bills client's custodial account directly for its fees

(ii) A list of wrap fee (SMA) programs in which one or more clients participate, including for each program:

    a.   Name of custodian/sponsor/broker-dealer;

    b.   Total fee percentage charged by the sponsor;

    c.   Terms of Registrant's compensation;

    d.   Total value of client assets in each program as of the most recent billing date.

(iii) The total value of assets under management for *all clients* combined, managed as of **December 31, 2006.**

(iii) The total number of discretionary and non-discretionary accounts and corresponding assets under management as of **December 31, 2006.** Please indicate the amount of the aforementioned accounts and assets attributed to registered investment companies and wrap-fee accounts.

Please provide this record electronically, preferably formatted in Microsoft Excel as indicated in Exhibit 2, attached.

B5.    For each wrap fee arrangement in which Registrant's clients participate, a list, by sponsor, of the current and former clients who participate or have participated in the arrangement, including the client's name, the asset value of the account, and the investment strategy.

B6.    List of all proprietary trading or investment accounts of Registrant.

B7.    A list of clients obtained during the **examination period,** their account inception dates, and the identity of any third party consultant instrumental in Registrant's obtaining a particular client. Please provide this record both on a hard copy and in electronic format.

Master Information Request List – Investment Advisers

**B8.**    A list of clients lost during the **examination period**, their effective dates of termination, the asset value at termination, and the reason for termination. Please provide this record both on a hard copy and in electronic format.

**B9.**    A list of officers or directors who either resigned or were terminated during the period with an explanation regarding the reason for their departure.

**B10.**    A list of employees who were terminated during the period with an explanation regarding the reason for their departure.

**B11.**    A list of threatened, pending and settled litigation or arbitration to which Registrant was a party during the **examination period**. Provide a description of the allegations forming the basis for each issue, the status of each pending issue, and a brief description of any "out of court" or informal settlement. If none, please provide a written statement to that effect.

**B12.**    Provide all advisory client and hedge fund investor complaints received during the **examination period** and information regarding how each complaint was resolved. Such information could be a copy of any communications sent to the complainant.

**B13.**    Any no-action letters or exemptive orders relied upon by Registrant.

**B14.**    Provide any correspondence with the staff of the Commission or other regulatory agencies.

**B15.**    Please inform the staff in writing of any compliance issues since the last exam.

**B16.**    A list of any joint ventures or any other businesses in which Registrant or any officer, director, portfolio manager or trader participates or has any interest (other than their employment with Registrant), including a description of each relationship. Please describe each relationship.

**B17.**    Please provide in writing, for each type of security held by client accounts during the **examination period**, the valuation method used for client reporting and client fee computations. In addition, in writing, identify all securities that were internally priced by the Registrants during the **examination period**.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**B18.**    Registrant's trading blotter or purchase and sales journal for the **examination period**, preferably formatted in Microsoft Excel as indicated in Exhibit 1, attached. Please also include the transactions of Registrant's access persons and proprietary accounts in this record.

**B19.**    An **electronically formatted** cross reference, stock record, or securities position record of all client securities holdings, as required by Rule 204-2(c)(i), as of **December 31, 2006**. This list should show the name of each security, the number of shares or principal amount held, and the market value of the security position.

**B20.**    An **electronically formatted** record of all securities held in all client portfolios (aggregate position totals for all securities), as required by Rule 204-2(c)(ii), as of **December 31, 2006**. This list should show the name of each security, the aggregate number of shares or principal amount held, and total market value of the security position. In addition, the record should list the name of each client who holds an interest in the security and the amount owned by such client.

Master Information Request List – Investment Advisers

B21. For each investment strategy in which Registrant managed assets during the **examination period**, quarterly performance returns for each quarter during the **examination period**. If possible, please provide this information electronically.

B22. With respect to Rule 206(4)-6 proxy voting, please provide the following:

   a.  A copy of Registrant's proxy voting policies and procedures;

   b.  List of accounts for which Registrant votes proxies;

   c.  Documentation that Registrant has described its proxy voting procedures to its clients and provides copies of such disclosures upon request;

   d.  Disclosure provided to clients regarding how they may obtain information on how Registrant voted their proxies;

   e.  A copy of each written client request for information on Registrant's proxy voting, and a copy of any response to any request (written or oral); and

   f.  A copy of any document created by Registrant that was material to making a voting decision, or that memorializes the basis for that decision.

B23. A list of publicly traded companies of which officers of Registrant, or affiliates of Registrant, serve as officers or directors.

B24. On a total return basis, provide a list of Registrants' 10 most profitable positions that were opened and closed during the inspection period.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

B25. Provide any written plans, policies, and procedures that provide guidance in preparing for and responding to emergencies, contingencies, and disasters.

B26. Documentation regarding the results of Registrant's most recent test of its business continuity plan.

▓▓▓▓▓▓▓▓▓

B27. A copy of Registrant's Code of Ethics and insider trading policies pursuant to Section 204A of the Investment Advisers Act of 1940, and those of participating affiliates, and a list of all access persons, including contract employees, required to report transactions.

B28. Policies and procedures adopted, if not incorporated in Registrant's Code of Ethics, to address employee personal trading hardship exemptions from Registrant's personal trading policies.

B29. Policies and procedures adopted, if not incorporated in Registrant's Code of Ethics, to govern the personal trading of contract employees.

B30. If separate from Registrant's Code of Ethics, a copy of its policy governing receipt by officers and employees of gifts and entertainment.

B31. Provide any file or log maintained of gifts and entertainment received by Registrant's directors, officers and employees. Note that Registrant is not explicitly required to maintain any such log or file.

B32. Records of violations of the Code of Ethics during the **examination period**.

Master Information Request List – Investment Advisers

B33.   List of all persons required to report personal securities transactions to Registrant during the **examination period** pursuant to Rule 204-2(a)(13) under the Investment Advisers Act including all officers, partners, directors, portfolio managers, traders, and research analysts.   Please indicate the following:

  a)  Name/Social Security Number;
  b)  Position/Title/Division (i.e. equities, fixed income, foreign securities);
  c)  Percent ownership of Registrant's outstanding stock;
  d)  Affiliations/positions with other corporations or partnerships and shares or interests held in each.

B34.   List of affiliated broker-dealers featuring their affiliation and a description of their clearing arrangements.

B35.   A list of all employees or their relatives who are principals or registered representatives of a broker-dealer.

B36.   A list of the soft-dollar arrangements, both third-party and proprietary, to which Registrant was a party during the **examination period**.  This list should be provided in Excel format and should include the following information for each arrangement:

  a.  The name of the broker or other entity involved in each arrangement;

  b.  The nature of the goods or services received by Registrant under the arrangement;

  c.  Whether the goods or services are third-party or proprietary or both;

  d.  A detailed description of how the product or service is used by Registrant;

  e.  The approximate annual amount of commissions on securities transactions needed to satisfy each arrangement;

  f.  The soft-dollar ratio with respect to each arrangement;

  g.  Whether the product or service received is within the Section 28(e) safe harbor;

  h.  The allocation procedures used if this item is considered to be mixed use;

  i.  The total brokerage commissions used to obtain each product or service for the current year to date and the previous year;

  j.  The types of transactions used to generate soft dollars for this agreement (i.e. equity or fixed income, listed or OTC, agency or principal, or new issue designations);

  k.  The current amount of soft dollar credits generated by securities transactions placed by the adviser for the current year to date and the previous year;

  l.  Whether or not invoices or statements which record soft and/or hard dollars paid are sent to Registrant and, if so, how often;

  m.  Total hard dollar cost of such item if known;

  n.  A copy of any written agreement; and

Master Information Request List – Investment Advisers

      o.  Whether the broker-dealer providing the product or service is contractually obligated to pay the cost of the product or service.

B37.  A list of trading errors (*e.g.*, bought rather than sold, entered limit order at wrong price, entered for wrong account, etc.) that occurred in client or proprietary accounts during the **examination period** featuring the transaction date, the security, the account and broker-dealer involved, and a summary of the error and its ultimate disposition, including the conditions of any financial settlement.

B38.  List of approved broker-dealers currently in use by Registrant's trading staff.

B39.  A list of cross transactions which took place during the **examination period** in which any client was a participant. These transactions would include those where a broker was used or where Registrant, acting without a broker, effected the transactions.

B40.  A list of all trades where Registrant had the executing broker *"step-out"* all or a portion of the entire transaction to another broker for settlement and confirmation, including the trade date, security, executing broker and confirming broker identities, the total number of shares filled by the executing broker, and the number of shares stepped-out by the broker.

B41.  A list of securities which Registrant or any affiliate underwrote or with respect to which Registrant participated in such securities' underwriting as underwriting manager or member of a purchase group (or syndicate) or selling group during the **examination period** and which were purchased by or for any client. For each situation identified provide the approximate date of the underwriting.

B42.  List of securities for which Registrant or an affiliate was a market maker during the **examination period**.

B43.  A list of broker-dealers with whom Registrant has or had revenue sharing agreements for any purpose during the **examination period**.

B44.  Any written trading department policies and procedures, including order entry and execution allocation policies.

B45.  A copy of brokerage allocation reports for **December 31, 2006**, featuring the name of the firm, aggregate amount of agency commissions by the firm, and aggregate principal values or imputed compensation for principal transactions by the firm. Please provide this record in electronic format (preferably in Microsoft Excel format).

B46.  Policies and procedures, if any, which assure the Registrant that it is achieving best price and execution on client transactions. In addition, please provide any reports which are generated regarding best price and execution by Registrant.

B47.  A list of all broker-dealers, including ECNs, affiliated or unaffiliated, that, to Registrant's knowledge, received order flow payments or rebates related to executing transactions for client portfolios.

B48.  Please identify any broker-dealers used which rebate commissions to clients or the Registrant. In addition, please provide the amounts rebated over the **examination period**.

B49.  A list of all initial public offerings during the **examination period** in which Registrant's clients (including registered and unregistered funds), proprietary accounts or its access persons participated

Master Information Request List – Investment Advisers

(*i.e.*, purchased shares). Indicate whether such shares traded at a premium over the public offering price when trading in secondary markets began ("hot issues"). Please include the security name, symbol, and the following information:

    (a) Dates of purchase

    (b) List of clients who participated in the purchase and the corresponding purchase price as well as the broker-dealer used.

    (c) If the IPO was sold, provide the amount of shares sold, date of the sale and the price at which it was effected, as well as the broker-dealer used.

B50.    Any written trade allocation policies and procedures, if not provided in response to another item.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

B51.    With respect to third-party solicitors, including registered representatives, please provide the following:

    (a)    A list of third-party solicitors used during the **examination period** indicating the respective client accounts obtained;

    (b)    A list of third-party solicitors which have been paid during the **examination period** for past solicitation activities indicating the respective client accounts obtained and the amount of the fee;

    (c)    A copy of the contracts between the Registrant and any solicitor as well as any solicitor's separate written disclosure document;

    (d)    A list of services, publications, and seminars received from any of the aforementioned entities indicating the cost and whether payment is in soft or hard dollars.

    (e)    Total referral fees paid to each solicitor during the **examination period**.

B52.    A list of all third-party consultants for whom Registrant completed questionnaires or otherwise corresponded with during the period. In addition, list of any respective client accounts obtained through these consultants.

B53.    A list of all third-party consultants (such as pension consultants) to whose clients Registrant made a presentation in an effort to obtain or retain such entity as an advisory client.

B54.    A list of all third-party consultants from whom Registrant or any of its affiliates purchased any product or service (including any payments connected to conferences sponsored or hosted by the consultant) during the **examination period**. Indicate the cost and whether payment is in soft or hard dollars.

B55.    A copy of the most recent RFP (Request-for-Proposal) completed during the **examination period**.

B56.    A list of all conferences sponsored or held by Registrant, the respective dates thereof, and the names of all attendees and the companies who employ them.

Master Information Request List – Investment Advisers

B57.   A copy of all advertisements (*e.g.*, newspaper or magazine ads, radio scripts, reprints, etc.) used to inform or solicit clients during the **examination period**. If Registrant makes information about its services available on the Internet, including websites and blogs, please include a printout.

B58.   If Registrant's website includes sections for clients or advisory representatives that are accessible only with a username and password, please establish a temporary username and password for the examination staff's use during this examination and provide such passwords in your response.

B59.   A copy of any promotional brochures, pamphlets or other materials furnished to existing and/or prospective clients during the **examination period**.

B60.   A copy of any composite or representative performance reports, data or graphs disseminated to clients or prospective clients during the period.

B61.   A copy of any newsletters sent to clients during the **examination period**.

B62.   A statement of the account inclusion criteria Registrant employs in the construction of any composite performance results.

B63.   A list of all composites that were terminated during the **examination period**.

B64.   A list of any composites whose composition was changed on a retroactive basis. Please include the dates and reasons for the change.

B65.   A list of any seminars attended by Registrant employees conducted by research providers during the **examination period**.

████████████████████████████████████

B66.   Registrant's current standard client advisory contract or agreement.

B67.   Any sub-advisory agreements executed with other investment advisers.

B68.   Registrant's fee schedule(s) currently in use, if not stated in the advisory contracts.

B69.   Copy of powers of attorney or discretionary authority Registrant obtains from clients if not incorporated directly in the advisory contracts.

B70.   Form ADV Part II currently furnished to clients and any alternative disclosure document given in conjunction with or in lieu of Part II. In addition, please include a copy of Registrant's Form ADV Part 1A.

B71.   Registrant's balance sheet, trial balance, income statement, cash receipts and disbursements journal, and cash flow statements dated **as of the end of its most recent fiscal year and the most current year-to-date. Provide audited financials, if available.**

████████████████████████████████████

B72.   If Registrant has physical custody or possession of any client funds or securities, so state, and provide a list of the clients for whom Registrants has such custody or possession.

Master Information Request List – Investment Advisers

B73.   If Registrant or its related persons is deemed to have custody or possession of or access to any client funds or securities, please provide:

    b.   A list including the names of all affected clients;

    c.   The current market value of all assets in possession or to which access is available;

    d.   The locations where such assets are held or the names of the custodians holding them;

    e.   Whether these clients receive account statements from the custodian or Registrant; and

    f.   The name of any independent representative designated by the client to receive these statements.

    g.   Copy of the custodian agreement.

B74.   List of clients for whom Registrant, an officer, or an affiliate acts as trustee, co-trustee, or successor trustee or has full power of attorney for the account.

B75.   For a sample of clients to be selected by the staff, please request the custodian to provide a copy of the most recent custodial statement as well as the mailing address(es) to which these statements are sent.  This information should be sent directly to:

        Attention:   **Kenneth Roberts**
                   **Securities and Exchange Commission**
                   **3 World Financial Center, 4th Floor**
                   **New York, NY 10281-1022**

    Please provide the staff with a copy of this request.

B76.   Please request the custodian(s) of each private fund to provide a confirmation of all positions, including all cash balances and short positions, as well as any loans or other creditor positions it has outstanding with the fund.  This information should be provided as of December 31, 2006 for each fund.  In addition, the position list should be signed by an officer of the custodian and sent directly to:

        Attention:   **Kenneth Roberts**
                   **Securities and Exchange Commission**
                   **3 World Financial Center, 4th Floor**
                   **New York, NY 10281-1022**

B77.   If an entity other than the fund's adviser maintains records regarding the interests of each fund investor in the funds, please request that entity to provide a confirmation of the following, as of **December 31, 2006**:

    a.   the total number of shares outstanding if fund is in corporate form;

    b.   the total number of limited partners; and

    c.   the most recently calculated value of each limited partner's interest in the fund.

This information should be signed by an officer of the Administrator and sent directly to:

        Attention:   **Kenneth Roberts**
                   **Securities and Exchange Commission**
                   **3 World Financial Center, 4th Floor**

Master Information Request List – Investment Advisers

### New York, NY 10281-1022

Please provide the staff a copy of each request.

████████████████████

B78.  A list of pricing services, quotation services, and externally acquired portfolio accounting systems utilized by Registrant, including a description of whether such items were paid for with hard-dollars, soft-dollars, or a combination thereof.

B79.  A list of all securities that have been fair valued or priced by Registrant.

████████████████████

B80.  A copy of any anti-money laundering policies and procedures adopted.

B81.  Documentation of any annual review conducted of Registrant's anti-money laundering policies and procedures.

████████████████

B82.  Any regulatory compliance manual not already provided in response to a previous item.

████████████████████████████████

This section encompasses all investment funds advised by Registrant or an affiliate which are not registered under the Investment Company Act of 1940 (typically referred to as a "private investment fund").

B83.  A list of private investment funds featuring for each:

   a.  Name as shown in organizational documents (as amended);

   b.  Domicile (country);

   c.  The investment strategy (long-short, statistical arbitrage, fund of funds);

   d.  If fund is a master fund, full name and domicile of each feeder fund as of December 31, 2006;

   e.  If fund is a feeder fund, full name and domicile of master fund;

   f.  The number of investors and total assets at the end of examination period;

   g.  The amount, if any, of Registrant's equity interest in each fund as of December 31, 2006;

   h.  The amount, if any, of Registrant's affiliated persons' equity interest as of December 31, 2006;

   i.  The date the fund began accepting unaffiliated investors;

   j.  Whether the fund is currently closed to new investors;

   k.  Lock-up periods for both initial and subsequent investments;

   l.  The specific exemption(s) from registration upon which each fund relies (e.g., Section 3(c)(1) or Section 3(c)(7) of the Investment Company Act);

   m.  The services Registrant or an affiliate is providing (e.g., general partner, adviser, managing member); and

Master Information Request List – Investment Advisers

    n.  The amount of leverage, both explicit (on-balance sheet) and off-balance sheet (futures and certain other derivatives), used by the fund as of **December 31, 2006** as measured by Registrant for risk-management purposes.

B84.  For each private fund (chosen by the staff for its sample review), as defined in Rule 203(b)(3)-2, please provide copies of the following:

    h.  The current version of the fund's offering document or private placement memorandum;

    i.  The organizational document and operating agreement (*e.g.*, partnership agreement);

    j.  The financials, audited or un-audited, for its **most recent fiscal year end**;

    k.  The general ledger, separated by calendar year, underlying the above-referenced statements;

    l.  The organizational chart of the general partner/managing member;

    m.  Account statements sent to investors during the current fiscal year, if any;

    n.  A list of current investors including total current value of each investor's equity interest in the fund;

    o.  Identify any registered representatives and broker-dealers who are investors.

    p.  A list of investors who purchased and redeemed an interest in the fund during the **examination period**, including for each the cost of the interest and whether it was a purchase or redemption;

    q.  Latest advisory fee calculation, including any performance fee calculations, and the specific manner in which the fees were calculated;

    r.  A list of illiquid securities and/or private placements, as defined by Registrant, as of **December 31, 2006**;

    s.  A complete description of all positions held in side pockets or special situation accounts together with their valuation on the date of the related calculation of net asset values; and

    t.  A description of all business activities of the registered adviser(s) affiliated with each fund that are not covered by the required compliance programs of such advisers and oversight by their chief compliance officers (examples of such activities may include calculation of net asset values, preparation of financial statements and calculation of limited partner interests in the fund).

    u.  For investors in the Registrant's pooled investment vehicles please indicate whether such investors receive statements directly from the pooled investment vehicle's custodian or audited financial statements within 120 days of the pooled investment vehicle's fiscal year end.

Master Information Request List – Investment Advisers

## C.   Secondary Requests for Information

Based on our discussions with Registrant's staff, our review and analysis of the items requested above, and our evaluation of the effectiveness of Registrant's compliance processes for the areas identified in Section A., we may ask for additional books and records regarding specific activities.  Below is a list of information that **should be readily available if a request is made by the examiners**.

C1.   During the examination, the examiners will review Registrant's records pertaining to certain clients.  Be prepared to furnish the following records for review for each client indicated:

  a.   Advisory contract;

  b.   Custodial or trust agreement;

  c.   New account information forms, if applicable;

  d.   Client correspondence; including email correspondence

  e.   Documentation of annual offer pursuant to Rule 204-3 under the Investment Advisers Act of 1940;

  f.   Fee invoices for a period to be determined;

  g.   Custodial statements, and, if applicable, internally generated statements that correspond with the above-selected fee invoices;

  h.   Any reconciliations between the above-referenced statements;

  i.   Performance appraisals for a period to be determined;

  j.   For terminated clients, the date of termination, reason and, if applicable, evidence of refunded advisory fees where such fees are paid in advance; and

  k.   If applicable, notice of assignment of the client's advisory contract and their consent related to acquisition.

  l.   Trade confirmations

  m.   Investment policy statement which outlines client's investment objective(s).

C2.   A list of all incentive and bonus programs offered by Registrant to its advisory representatives.

C3.   A copy of any securities lending procedures.

C4.   A list of all securities of clients that were loaned during the **examination period** together with the net amount earned by each client for each security loaned.

C5.   A copy of the prospectus and statement of additional information for each mutual fund managed during the period.

C6.   A list of all derivative or synthetic products purchased or sold (written) for any clients during the **examination period**.

01/29/2007 16:42 FAX  212 336 1324                                                    ☑016/025

Master Information Request List – Investment Advisers



C7.    Access to confirmations and order tickets for the **examination period**.

C8.    Performance returns for each client account for the 1-year period ended **December 31, 2006.**

C9.    A record of all written acknowledgements as required by Rule 204A-1(a)(5) for each person who is, or was within the past five years, a supervised person of Registrant.

C10.   A record supporting the decisions to approve securities acquisitions by access persons under Rule 204A-1(c).

C11.   Access to records of employee personal securities transactions during the **examination period** kept pursuant to Rule 204-2(a)(13) under the Investment Advisers Act of 1940.

C12.   Custodial statements for any proprietary/investment accounts of Registrant for the **examination period**.

C13.   Provide access to the files or database that contains "holdings" information reported by access persons under Registrant's Code of Ethics.

C14.   The following records for each client account in an advertised performance composite:

    a.   Internal calculations indicating beginning and ending asset values for each quarter, all capital additions and withdrawals (including the dates), and the quarterly performance return.

    b.   All custodial statements, including a statement that indicates the beginning asset value for the performance period.  For example, the December 2003 statement for the verification of the calendar year 2004 performance returns.

C15.   Access to all questionnaires completed for third party consultants.

C16.   Registrant's revenue and expense journals and ledgers for the **examination period**, including the following supporting records:

    a.   Bank statements, canceled checks, deposit slips, and check registers for all bank accounts open during the period;

    b.   Loan agreements, notes payable, and notes receivable; and

    c.   Bills and statements, paid or unpaid, presented to or issued by Registrant.

C17.   A copy of Registrant's chart of accounts (with respect to expense journals & ledgers).

C18.   Access to Registrant's general ledger for a period to be determined.

Master Information Request List – Investment Advisers

C19.  Copies of any written policies and procedures that address the reconciling of client security holdings to outside custodian records.

C20.  To the extent Registrant has a valuation committee, copies of any minutes of the committee's meetings.

Based upon discussions with Registrant's staff and review of the operations of Registrant's pooled investment vehicles, we may ask for the following additional information.

C21.  IRS Forms K-1.

C22.  IRS Forms 1065.

C23.  Fund custodial statements.

C24.  Fund bank account records, canceled checks, deposited items, etc.

C25.  Capital account transactions.

C26.  Rate of return calculations for the **examination period**.

C27.  A copy of the documents that were used to calculate and which substantiate each of the net asset values that were used during the **examination period** to price interests of purchasing and redeeming investors and/or for reporting to fund investors the value of their positions in the fund.  At a minimum, the documents must show the date the net asset value was calculated and position level detail (both long and short), including a description of each separate asset and liability and descriptions and notional values of off balance sheet positions such as futures contracts.

C28.  Solicitation letters/advertising used during the **examination period**.

C29.  List of cross transactions effected during the **examination period**.

C30.  Fund administration agreements.

C31.  Valuations for illiquid securities and/or private placements held by the fund(s) during the **examination period**.

C32.  Correspondence with investors, fund administrators, private placement investments, etc. during the **examination period**.

01/29/2007 16:42 FAX   212 336 1324                                    ☑018/025

# Exhibit 1

## Layout for Securities Trading Blotter/Purchase and Sales Journal

In conjunction with the scheduled examination, the staff requests records for all purchases and sales of securities for portfolios of advisory clients and proprietary accounts being advised by Registrant. Please provide this record in Microsoft Excel format on either 3.5-inch diskettes or compact discs. This record should include the fields of information listed below in a similar format.

Please provide separate worksheets for (*i*) equities (Note: ETF trades should be included with equities), (*ii*) fixed income, (*iii*) cash or cash equivalents, maturities, calls, pay-downs, expirations, or reinvestments of mutual fund dividends or capital gains distributions, (*iv*) mutual funds, and (*v*) options, futures, swaps and other derivatives.

Examples:

A.  Sample Trading Blotter for Equity Securities

| Client Name/ Client Acct# | Trade Date | Settle Date | Buy/ Sell | CUSIP | Security Symbol | Security Description | Quantity | Unit Price | Principal/ Proceeds/ Notional Value | Total Commission | Fees | Net Proceeds | Broker |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 155 | 1/1/00 | 1/3/00 | B | 1234567 | MSFT | Microsoft Corp | 100 | $100.00 | $10,000 | $10.00 | | $9,990 | BEST |
| 123 | 1/2/00 | 1/5/00 | S | 89101112 | IBM | IBM Corp. | 500 | $100.00 | $50,000 | $50.00 | $1.67 | $49,948.33 | HRZG |

B.  Sample Trading Blotter for Fixed-Income Securities

| Client Name/ # | Trade Date | Settle Date | Buy/ Sell | CUSIP | Security Description 1 (Issuer) | Security Description 2 (Coupon Maturity, etc) | Quantity | Unit Price | Accrued Interest | Principal Value/ Proceeds | Total Commission | Net Proceeds | Broker |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 155 | 4/2/98 | 4/6/98 | B | 802586AG2 | SANTA ROSA CA PKG FACS DIST | 4.60% 07-02-2004 | 50,000 | 100 | $95.83 | $50,000 | $0 | $50,095.83 | Salomon |
| 123 | 1/2/99 | 1/5/99 | S | 908640105 | UNION TEXAS PETRO HOLDINGS INC | 4.75% 9-15-2004 | 20 | 102 | $304.60 | $20,400 | $39.95 | $20,664.65 | Schwab |
| 6578 | 1/3/00 | 1/6/00 | B | 912795C38 | UNITED STATES TREASURY BILLS | DUE 6/18/00 | 100,000 | 97.781 | $0 | $97,781 | $0 | $97,781 | Auction |

Master Information Request List – Investment Advisers

## Exhibit 2

## Client List

A.  Client List for Separately Managed Accounts

| Account Number | Client Name | Custodian | Account Type | Investment Strategy | Registrant has discretion? (Y/N) | Related Account? (Y/N) | Directed Brokerage Arrangement? (Y/N) | Name of Broker or Registered Rep (if directed) | Performance Fee? (Y/N) | Account Statements from Custodian? (Y/N) | Account Value as of Most Recent Billing |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

B.  Wrap Fee Programs

| Sponsor | Program Name | Total Fee | Registrant's Portion of Fee | Client Assets in Program |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Page 2 of 2

01/29/2007 16:43 FAX   212 336 1324                                      020/025



# EXAMINATION INFORMATION FOR BROKER-DEALERS, TRANSFER AGENTS, CLEARING AGENCIES, INVESTMENT ADVISERS AND INVESTMENT COMPANIES

> This brochure provides a brief description of the purpose of the examination program, the examination process and the methods employed by the Commission for resolving problems disclosed during examinations. This information should help you better understand the Commission's objectives in this area.

## I.    PURPOSE OF EXAMINATION PROGRAM

The Securities Exchange Act of 1934, the Investment Advisers Act of 1940 and the Investment Company Act of 1940 authorize the Commission by rule to require registered entities to maintain certain books and records and to make their books and records available to the Commission and its representatives for inspection (including books and records stored electronically). A fundamental purpose of the examination program is to determine whether registered broker-dealers, transfer agents, clearing agencies, investment advisers and investment companies are conducting their activities in accordance with the federal securities laws and rules adopted under these laws (including rules of self-regulatory organizations subject to the Commission's oversight, where applicable); are adhering to the disclosures they have made to investors; and are implementing appropriate systems and procedures to ensure that their operations are in compliance with the law.

Examinations are conducted by staff of the Commission's five regional and six district offices and its headquarters office in Washington, DC. The Office of Compliance Inspections and Examinations, located in Washington, DC, is responsible for coordinating the overall examination program.

## II.    EXAMINATION PROCESS

The process begins with the selection of candidates for examination. Candidates may be selected for any number of reasons, including a routine review, as a result of a complaint or in connection with a general regulatory issue. The reason behind any selection is non-public information, and is not typically shared with the registered entity being examined. Examinations may be made on an announced or unannounced basis. When the examination is announced, it begins with a document request letter requiring the production of the specified documents or information by a certain date. In some instances, the registrant may be requested to download certain of the documents and information onto a CD Rom. Additional documents and information may be requested upon the examiners' arrival at the registrant's office. Upon arrival, examiners will conduct an initial interview concerning the registrant's operations. During the interview, the registrant will be provided with SEC Form 1661, "Supplemental Information for Regulated Entities Directed to Supply Information Other Than Pursuant to a Commission Subpoena," and a request list that asks for copies of certain records and documents. If a document request list had been provided prior to the visit to the registrant's offices, the examination staff will go over the document request list during this interview. The interview is also designed to provide the examiners with an overview of the registrant's operations. Examiners may also ask for a walk-through of the registrant's offices to gain an overall understanding of its organization and flow of work.

SEC 2389 (7-04)

Following this initial phase of the examination, examiners will review the registrant's books and records. During the examination, examiners may need to discuss specific aspects of the registrant's operations with members of the registrant's staff in order to gain a better understanding of the registrant's operations. Examiners may also request meetings with persons who can explain the books and records provided. This enables examiners to determine if operating and control systems are working properly, proper corrective actions are taken when things go wrong and procedures appear to channel activities in ways that comply with legal requirements and disclosures made to customers, clients and shareholders.

On the last day of the on-site visit, examiners may conduct a preliminary "exit interview" during which the examiners will discuss what happens next and, if appropriate, the examiners' initial findings. The examiners will then return to their office and perform additional work, if necessary (including possibly contacting the registrant to ask clarifying questions or request additional documents or information), and write a non-public report of examination findings, which will include a recommendation of action(s) to be taken. This report will be reviewed by supervisory personnel who oversee the work of the examination staff to determine appropriate disposition.

## III.   DISPOSITION OF EXAMINATION FINDINGS

Prior to closing an examination, the examination staff will generally offer the registrant an exit conference call (also referred to as a final exit interview or conference) to discuss any problems found during the examination. It will generally occur no later than 90 days following the end of the fieldwork phase of the examination. During this exit conference, the registrant will be provided an opportunity to discuss the staff's findings and, in some instances, provide additional facts or information, including information demonstrating actions taken or planned to be taken to address examiners' concerns.

Examination findings may be handled in the following ways. (1) the staff may issue a letter indicating that the examination has concluded without findings; (2) the staff may issue a deficiency letter, which cites the problems found, describes the need for corrective action, and possibly requests a conference at the regional, district or headquarters office; and/or (3) the staff may make an enforcement referral if serious problems are found, or make a referral of its findings to a self-regulatory agency, state regulatory agency or other regulator for possible action, as appropriate. On occasion, the staff may issue a deficiency letter and also refer some or all of the examination findings to the Commission's Division of Enforcement or another regulator.

Deficiency letters and letters indicating that the examination has concluded without findings will generally be sent to the registered entity within 90 days after the end of the examination fieldwork. Responses to deficiency letters indicating any corrective action the registrant has taken, or will take, are generally requested within 30 days of the date of the letter. In most cases, if the examiners have comments on the response to the deficiency letter, they will contact the registrant within 60 days. Otherwise, the examination is likely closed. Failure to hear from the examination staff within this 60-day period, however, does not foreclose the possibility of other Commission action, including action by the Division of Enforcement.

*     *     *

If you have questions or concerns, you are always free to call the respective regional, district or headquarters office either during an examination or after it is completed.

SEC 2389 (7-04)

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Regulated Entities* Directed to Supply Information
### Other Than Pursuant to a Commission Subpoena

**A. Freedom of Information Act**

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgement of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**B. Authority for Solicitation of the Information**

    1. *Mandatory Information.* All records of registered broker-dealers, transfer agents and other entities identified in Section 17(a)(1) of the Securities Exchange Act of 1934, and investment advisors, including but not limited to required records, must be made available for examination by representatives of the Commission. See Sections 17(a) and (b) of the Securities Exchange Act of 1934 and rules thereunder and Section 204 of the Investment Adviser Act of 1940 and rules thereunder. Records required to be maintained and preserved pursuant to Section 31 of the Investment Company Act of 1940 and the rules thereunder must be made available for examination by representatives of the Commission.

    2. *Other Information.* The production of information other than the records and documents described in paragraph B.1 above is voluntary.

**C. Effect of Not Supplying Information**

    1. *Mandatory Information.*

        (a) A willful failure to permit inspection by authorized Commission personnel of the records and documents described in paragraph B.1 may result in legal proceedings the penalty for which, upon conviction, is a fine of not more than $1,000,000 or imprisonment for not more than 10 years, or both. When the person failing to permit inspection is a person other than a natural person, a fine not exceeding $2,500,000 may be imposed.

        (b) Failure to produce the records and documents described in paragraph B.1 for inspection, and/or aiding or abetting someone in such failure may have the following consequences: (i) regulated persons may be censured or their registration and/or exchange or association status may be suspended, revoked, or subject to various other sanctions; (ii) members of national securities exchanges may be censured, suspended or expelled from membership; and (iii) members of a registered securities association may be censured, suspended or expelled from membership in a registered association, or subject to various other sanctions. Employees of and persons associated with the foregoing may be suspended or barred from association with regulated entities and/or they may be censured or subject to various other sanctions.

        (c) If there is a failure to permit inspection of the records and documents described in paragraph B.1, the Commission may seek an injunction against, among other things, continuing to fail to permit an inspection. The continuance of such failure thereafter may result in civil and/or criminal sanctions for contempt of court.

---

\* The term "Regulated Entities" means entities subject to registration with, and/or regulation and inspection by, the Commission, including: national securities exchanges; brokers or dealers; municipal securities dealers; national securities associations; investment advisers; investment companies; transfer agents; and clearing agencies.

SEC 1661 (5-04)

2.  *Other Information.* There are no direct sanctions and thus no direct effects for failure to provide all or any part of the information requested to be supplied on a voluntary basis.

## D. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

## E. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . Investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director, Regional Director, or District Administrator with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## F. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

## G. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To coordinate law enforcement activities between the SEC and other federal, state, local or foreign law enforcement agencies, securities self-regulatory organizations, and foreign securities authorities.

2. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

3. Where there is an indication of a violation or potential violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute or particular program statute, or by regulation, rule or order issued pursuant thereto, the relevant records in the system of records may be referred to the appropriate agency, whether federal, state, or local, a foreign governmental authority or foreign securities authority, or a securities self-regulatory organization charged with the responsibility of investigating or prosecuting such violation or charged with enforcing or implementing the statute or rule, regulation or order issued pursuant thereto.

4. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

5. To a federal, state, local or foreign governmental authority or foreign securities authority maintaining civil, criminal or other relevant enforcement information or other pertinent information, such as current licenses, if necessary to obtain information relevant to an agency decision concerning the hiring or retention of an employee, the issuance of a security clearance, the letting of a contract, or the issuance of a license, grant or other benefit.

6. To a federal, state, local or foreign governmental authority or foreign securities authority, in response to its request, in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

7. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

8. When considered appropriate, records in this system may be disclosed to a bar association, the American Institute of Certified Public Accountants, a state accountancy board or other federal, state, local or foreign licensing or oversight authority, foreign securities authority, or professional association or self-regulatory authority performing similar functions, for possible disciplinary or other action.

9. In connection with investigations or disciplinary proceedings by a state securities regulatory authority, a foreign securities authority, or by a self-regulatory organization involving one or more of its members.

10. As a data source for management information for production of summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies, and to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act or to locate specific individuals for personnel research or other personnel management functions.

11. In connection with their regulatory and enforcement responsibilities mandated by the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), or state or foreign laws regulating securities or other related matters, records may be disclosed to national securities associations that are registered with the Commission, the Municipal Securities Rulemaking Board, the Securities Investor Protection Corporation, the federal banking authorities, including but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation, state securities

regulatory or law enforcement agencies or organizations, or regulatory law enforcement agencies of a foreign government, or foreign securities authority.

12. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or the Commission's Rules of Practice, 17 CFR 201.100 - 900, or otherwise, where such trustee, receiver, master, special counsel or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice.

13. To any persons during the course of any inquiry or investigation conducted by the Commission's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

14. To any person with whom the Commission contracts to reproduce, by typing, photocopy or other means, any record within this system for use by the Commission and its staff in connection with their official duties or to any person who is utilized by the Commission to perform clerical or stenographic functions relating to the official business of the Commission.

15. Inclusion in reports published by the Commission pursuant to authority granted in the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)).

16. To members of advisory committees that are created by the Commission or by the Congress to render advice and recommendations to the Commission or to the Congress, to be used solely in connection with their official designated functions.

17. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 735-18, and who assists in the investigation by the Commission of possible violations of federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

18. Disclosure may be made to a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

19. To respond to inquiries from Members of Congress, the press and the public which relate to specific matters that the Commission has investigated and to matters under the Commission's jurisdiction.

20. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78u(a), as amended.

21. To respond to subpoenas in any litigation or other proceeding.

22. To a trustee in bankruptcy.

23. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-942-4530 or the SEC's Small Business Ombudsman at 202-942-2950. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

4

# EXHIBIT 13

02/05/2007 18:06 FAX   212 336 1324                                                    001/002



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
Room 4300
THREE WORLD FINANCIAL CENTER
NEW YORK, N.Y.  10281-1022

## TELEFACSIMILE TRANSMITTAL

PLEASE DELIVER THE FOLLOWING PAGES TO:

Name: George Lau

Organization: Galleon Management, LP

Telefacsimile Number: (212) 371 - 2891

Total Number of pages with cover sheet: 2   Pages

Date: 2-5-07     Time: 5:00 PM.

Comments:

As discussed, attached is additional (request # 1) regarding
a sample of clients/funds selected for the staff's review

From: Ken Roberts

Transmitted by:

NERO fax number:                    212-336-1327

IF YOU DO NOT RECEIVE ALL THE TRANSMITTED PAGES, PLEASE CALL    212-336- 0548

**CONFIDENTIALITY NOTE:** This facsimile is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, or copying of this facsimile or the information herein by anyone other than the intended person is prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the facsimile by mail.

02/05/2007 18:07 FAX  212 336 1324                                002/002



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center, Suite 4300
New York, NY 10281-1022

**FORMAL REQUEST LIST**

*Attention of:* George Lau, Galleon Management, LP ("Galleon")

*Requested by:* SEC Staff

*Date:* February 5, 2007

*Request No.*   1

---

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information*
*included in this request list for more than one week from the date of receipt, the*
*Registrant should immediately, upon learning of the delay, contact George DeAngelis,*
*Supervisory Staff Accountant (212) 336-0494.*

---

1. Please provide responses to Items B76, B77 and B83 from the staff's initial request list with respect to the following sample of private funds selected by the staff:

Galleon Diversified Fund, Ltd.
Galleon Technology Partners II, LP
Galleon Communications Offshore, Ltd.
Galleon Healthcare Offshore, Ltd.
Galleon Admirals Offshore, Ltd.
Galleon Captains Partners, LP
Galleon Explorers Partners, LP
Galleon Buccaneers Offshore, Ltd.
Galleon Fleet Fund, Ltd.

2. Pursuant to Items B75 and C1 of the staff's initial request list, please provide the requested documents for the following clients:

Technology MAC 88 Ltd.
Vitruvius SICAV

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

FORMAL REQUEST LIST

ATTENTION OF:       **Galleon Management, LP ("Galleon")**
                    **File No. 801- 65025**

REQUESTED BY:       **SEC Staff**

DATE:               **February 13, 2007**

RE:                 **Items from Opening Interview/Initial Request List**

REQUEST:            **2**

----------------------------------------------------------------------

PLEASE PROVIDE A <u>WRITTEN</u> RESPONSE TO EACH ITEM BELOW. IF PRODUCTION
OF ANY ITEMS BELOW WILL BE DELAYED FOR MORE THAN ONE WEEK FROM THE
ABOVE DATE, PLEASE CONTACT DOROTHY ESCHWIE, ASSISTANT REGIONAL
DIRECTOR, (212) 336-0502 OR THOMAS BIOLSI, ASSOCIATE REGIONAL DIRECTOR,
(212) 336-0446.

----------------------------------------------------------------------

1. Please provide the staff with the names of all non-Galleon persons currently sharing
   office space with Galleon, what organization they are affiliated with, and what type of
   business it is.   Also indicate in writing what compensation arrangement has been
   negotiated with respect to the office space being utilized by these persons.
2. Please provide the names of any third party sell side analysts who are invested in any of
   the affiliated private investment vehicles managed by Galleon.
3. Please provide the names of any officers or director's of publicly traded company who are
   invested in any of the affiliated private investment vehicles managed by Galleon.
4. Please provide a copy of all risk management meeting minutes during the examination
   period.
5. Please provide all restricted lists for the examination period.
6. Please provide copies of all side letters with investors.
7. Please provide copies of Galleon's securities lending procedures and any securities lending
   agreements.
8. Please provide a list of Galleon International Management's clients.

9. Please provide Galleon's Operations Group's test check of trading and any record of questionable trades.

10. Please provide a list of securities rejected from the restricted lists (including the approximate dates) and any documentation of the reason for any rejections.

11. Please provide the IMs reported to George Lau from the IM Review as provided under Item A1:

    a)  3/15/06 Rick Schutte

    b)  3/20/06 Nicholas Caputo

    c)  3/31/06 & 8/14/06 Dan Wichman

12. For the <u>individuals</u> listed in response to initial request Item B36, please inform the staff who these individuals are, for example, Byron N. Walker.  Also, provide any contracts or agreements with the aforementioned individuals.

13. For the consultant questionnaires indicated in response to initial request Item B53 completed by Galleon, please inform the staff if Galleon ultimately acquired these investors.

14. In reference to the response provided under Item B10, please provide the staff with each terminated employee's job description.

15. Please indicate in writing if the trade blotter provided in response to the initial request list includes all US equity trading by Galleon during the exam period. If not, please provide an explanation of what types of securities or transaction types would not be included in the download provided to the staff.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center, Suite 4300
New York, NY 10281-1022

### FORMAL REQUEST LIST

*Attention of:*  George Lau, Galleon Management, LP ("Galleon")

*Requested by:* SEC Staff

*Date:* February 16, 2007

*Request No.*  3

---

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information*
*included in this request list for more than one week from the date of receipt, the*
*Registrant should immediately, upon learning of the delay, contact George DeAngelis,*
*Supervisory Staff Accountant (212) 336-0494.*

---

1. For the following individuals, please provide all e-mails and instant messages, including their corresponding attachments, sent and received during the respective periods identified below. This information should be provided in an electronically searchable format. In identifying e-mails or instant messages that are responsive to our needs, please be mindful that e-mails or instant messages may be stored both on servers and on individual hard drives of the persons selected. These emails may also be maintained by third parties such as AOL, Microsoft or Bloomberg:

| Employee | Date Range |
|---|---|
| Todd Deutsch | January 1, 2006-January 31, 2006 |
| Gary Rosenbach | March 1, 2006-March 31, 2006 |
| Raj Rajaratnam | July 1, 2006-August 31, 2006 |

2. Please provide copies of documentation of any reviews of Rule 105 of Regulation M during the examination period.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

## FORMAL REQUEST LIST

| | |
|---|---|
| ATTENTION OF: | **Galleon Management, LP ("Galleon")**<br>**File No. 801- 65025** |
| REQUESTED BY: | **SEC Staff** |
| DATE: | **February 22, 2007** |
| RE: | Personal Securities Transactions |
| REQUEST: | **4** |

--------------------------------------------------------------------------------

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included in this request list for more than one week from the date of receipt, the Registrant should immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff Accountant (212) 336-0494.*

--------------------------------------------------------------------------------

1. In reference to the **Section 5 of the COE**, please provide copies of any requests and any approvals granted by Galleon for any of its employees to engage in any outside business activities during the examination period.

2. In reference to the **Section 9 of the COE**, please provide copies of any tax returns obtained by Galleon in order to audit for compliance.

3. In reference to the response provided for **Item B29**, please provide a list of contract employees for the examination period.
   a) Please also provide any documentation of Galleon's review of brokerage statements of all contract employees during the examination period.
   b) Please provide any acknowledgement forms to the COE and Compliance Manual for all contract employees during the examination period.

4. In reference to **Item B30**, please inform the staff whether there were any gift and entertainment events from certain parties that were banned during the examination period.

5. Please provide all records of personal securities transactions maintained, e.g., brokerage statements, pre-clearance forms, etc., for the following employees for the six months period ending December 31, 2006.   This includes all investments in any private placements.

        a. Raj Rajaratnam
        b. Maria Liotta
        c. Todd Deutsch
        d. Gary Rosenbach
        e. Asha Pabla
        f. Ali Far
        g. John O'Connor

6. Please provide copies of the acknowledgements to the COE for the year ended 12/31/06 for the employees mentioned in Item #5 above.
    a) In addition, please provide the initial and annual holdings reports for the employees mentioned above.

7. In reference to Item B33-d, please inform the staff whether the response provided for this item covers all **outside** (other than Galleon related) corporations, partnerships, and shares or interest held by such access persons.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

**FORMAL REQUEST LIST**

| | |
|---|---|
| ATTENTION OF: | **Galleon Management, LP ("Galleon")** |
| | **File No. 801- 65025** |
| REQUESTED BY: | **SEC Staff** |
| DATE: | **March 7, 2007** |
| RE: | Personal Securities Transactions (follow up questions) |
| REQUEST: | 5 |

---

PLEASE PROVIDE A <u>WRITTEN</u> RESPONSE TO EACH ITEM BELOW. IF PRODUCTION
OF ANY ITEMS BELOW WILL BE DELAYED FOR MORE THAN ONE WEEK FROM THE
ABOVE DATE, PLEASE CONTACT **George DeAngelis, Branch Chief, at (212) 336-0494.**

---

1. Please inform the staff when Raj Rajaratnam's Goldman Sach's account #6400022439 was closed and provide the last brokerage statement that was reviewed by Galleon.
   a) Please inform the staff what is the business of Asha Pabla Ltd.?

2. Please inform the staff whether Galleon received any brokerage statements from Deutsche Bank for account #6TY-010516 for Gary Rosenbach, as there were none provided in response to Formal request #4.
   a) Please inform the staff whether Galleon receives statements from Goldman Sach's for Gary's holdings for GS Private Equity Partners. If not, was Gary the recipient of follow-on offerings similar to Raj, as stated in a memo dated 12/22/06 in Raj's file.

3. Please inform the staff whether Raj Rajaratnam and Todd Deutsch provided an initial holdings report and if such report has been provided to the staff in response to Formal Request #4 Item 6 a).

4. In reference to Galleon's response to Formal Request #4-7, please inform the staff if the following selected access persons have any affiliations/positions with outside corporations or partnerships and shares or interests held in each:

a) Murali Abburi
b) Michael Curtis
c) Leon Shaulov
d) Richard Schutte
e) Timothy Pierotti
f) Peter Swartz
g) Adam Smith

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

ATTENTION OF:        **Galleon Management, LP ("Galleon")**
                         **File No. 801- 65025**

REQUESTED BY:       **SEC Staff**

DATE:                   **March 7, 2007**

RE:                     client file questions

REQUEST:             **6**

------------------------------------------------------------------------------------

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included in this request list for more than one week from the date of receipt, the Registrant should immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff Accountant (212) 336-0494.*

1)  Please provide the backup documentation (e.g. fee invoices) for the following items on the Statement of Operations for **Galleon Healthcare Offshore, Ltd.** for the period December 31, 2006:
    a)  Travel and Entertainment Fee $4,282
    b)  Misc. Expense $3
    c)  Out of Pocket Charges $2,533
    d)  Commission Fee Expense $12,958
    e)  Other Expense $204

2)  Please explain what is meant by Crystallized Performance fee?

3)  Please provide the backup documentation (e.g. fee invoices) for the following items on the Statement of Operations for **Galleon Admiral's Offshore, Ltd.** for the period December 31, 2006:
    a)  Out of pocket fees $3,633
    b)  Other Expense $2,295

      c) Travel and Entertainment $1,410

4) Please provide subscription documents for the following investors in the respective funds mentioned:
    a) Dr. Mark L. Urken-Galleon Captain's Partners LP
    b) Robert D. Leff-Galleon Captain's Partners LP

5) In reference to response provided to Item **#B84q**, please provide an account statement or spreadsheet that would show the management fee amount charged to each individual investor, as listed below, for the management fee for 4th quarter of 2006:
    **Galleon Healthcare Offshore, Ltd.:**
    a) Stamina International Limited
    b) Mohammad Reza Maher
    **Galleon Admiral's Offshore, Ltd.:**
    c) The Virginia Retirement System
    d) Robinson & Company

6) In reference to Galleon's response to Item **#B84(o)**, please inform the staff who the broker-dealer is for each investor listed.

7) Please provide the responses provided to the staff under Item **#B19** and **#B20** in electronic format, preferably formatted in Microsoft Excel.

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281


ATTENTION OF:      **Galleon Management, LP ("Galleon")**
                   **File No. 801- 65025**

REQUESTED BY:      **SEC Staff**

DATE:              **March 9, 2007**

REQUEST:           7

-------------------------------------------------------------------------------------

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included*
*in this request list for more than one week from the date of receipt, the Registrant should*
*immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff*
*Accountant (212) 336-0494.*

1) Please conduct a review of the affiliated private investment vehicles of Galleon and inform the staff of all investors who are officers and directors of publicly traded companies.

2) Please provide any hand-outs, if applicable, and any presentation materials and any standard invitation regarding any current and prospective investor meetings hosted by Galleon, for example the St. Regis meeting.

3) Please provide Mr. Lau's email with regard to any familial relationship Galleon employees may have with outside brokers and Kris Tomasulo's response.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

ATTENTION OF:     **Galleon Management, LP ("Galleon")**
                  **File No. 801- 65025**

REQUESTED BY:     **SEC Staff**

DATE:             **March 14, 2007**

REQUEST:          **8**

---

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included in this request list for more than one week from the date of receipt, the Registrant should immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff Accountant (212) 336-0494.*

---

1) Please provide a list of all investors in the following affiliated private investment vehicles as of December 31, 2006:

   Galleon Technology Offshore, Ltd.
   Galleon Communications Partners, LP
   Galleon Healthcare Partners, LP
   Galleon Captains Offshore, Ltd.
   Galleon Explorers Offshore, Ltd.

2) Please provide quarterly portfolio appraisals, including all securities positions, for all Galleon's affiliated private investment vehicles for the quarters ended 12/31/05, 3/31/06 and 9/30/06.  Please provide this information in hardcopy and electronic format, if possible.

3) During the staff's discussions with Raj Rajaratnam at the meeting on March 9, 2007, Mr. Rajaratnam indicated that several Galleon investors are officers or directors of publicly traded companies.  Please request that Mr. Rajaratnam identify, to the best of his

his knowledge, all investors in Galleon's affiliated private investment vehicles that are officers or directors of publicly traded companies.

4) During the staff's discussions with Raj Rajaratnam at the meeting on March 9, 2007, Mr. Rajaratnam indicated that Galleon and/or Mr. Rajaratnam occasionally discuss investment ideas with several buy-side investment firms.  Please request that Mr. Rajaratnam identify, to the best of his knowledge, any buy-side investment firms with which Galleon/Mr. Rajaratnam discusses investment ideas.

5) With respect to Raj Rajaratnam's investments in any unaffiliated private investment vehicles, please provide copies of any side letters executed between Mr. Rajaratnam and the respective private investment vehicles or its related entities.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

| | |
|---|---|
| ATTENTION OF: | **Galleon Management, LP ("Galleon")**<br>**File No. 801- 65025** |
| REQUESTED BY: | **SEC Staff** |
| DATE: | **March 22, 2007** |
| REQUEST: | **9** |

---

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included*
*in this request list for more than one week from the date of receipt, the Registrant should*
*immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff*
*Accountant (212) 336-0494.*

---

1. For the list of portfolio codes on the attached spreadsheet entitled "Second Blotter Port Codes", please identify the respective Galleon Fund. If Galleon has separate portfolio codes for several managers of a fund, i.e. Galleon Buccaneers Offshore, Ltd., please identify the corresponding codes for each manager.

2. As discussed during the staff's meeting with Richard Schutte on March 20, 2007, please provide the staff with the historical additions and deletions of each analyst's best ideas in the best ideas mock portfolio for the period from January 1, 2006 through December 31, 2006.

3. For the following attached list of securities entitled "Galleon Analyst Coverage", please provide the respective analyst(s) responsible for covering the security during the period from January 1, 2006 through the present (Please include any changes made during the period and the dates of such changes).

4. Please provide a log of all faxes sent and received by all Galleon's fax machines during the examination period including the date, time and fax numbers.

5. Please provide copies of the custodial statements for the following Galleon Funds:

Galleon Admiral's Offshore, LTD                    October and November 2006
Galleon Healthcare Offshore, LTD                   October and November 2006

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281


ATTENTION OF:        **Galleon Management, LP ("Galleon")**
                     **File No. 801- 65025**

REQUESTED BY:        **SEC Staff**

DATE:                **March 26, 2007**

REQUEST:             **10**

--------------------------------------------------------------------------------

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included in this request list for more than one week from the date of receipt, the Registrant should immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff Accountant (212) 336-0494.*

1) Please provide all bills, written agreements and all written correspondence between Galleon and Calypso Capital Management during the examination period.

2) Please provide monthly custodial statements, including all transactions, for the examination period (January through December 2006) for all Galleon's clients. Please provide the aforementioned documents in electronic format, i.e. PDF.

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

ATTENTION OF:          **Galleon Management, LP ("Galleon")**
                       **File No. 801- 65025**

REQUESTED BY:          **SEC Staff**

DATE:                  **March 30, 2007**

REQUEST:               **11**

-----------------------------------------------------------------------

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included*
*in this request list for more than one week from the date of receipt, the Registrant should*
*immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff*
*Accountant (212) 336-0494.*

1. Please provide all e-mails, including their corresponding attachments, sent and received for the period January 1, 2006 through March 15, 2007 for the email account rsvp@galleongrp.com. This information should be provided in an electronically searchable format.
2. Please provide an explanation as to the business of TAJ Capital Partners ("TAJ"). Please indicate if TAJ is affiliated with Galleon and if so, please provide the staff with the current ownership of TAJ.
3. Please provide copies of any confidentiality agreements to which any of Galleon's portfolio managers or traders were a party for the period from January 1, 2006 through the date of this request.
4. Please provide a copy of the memo prepared by Maria Liotta regarding the valuation of Synta as mentioned in Galleon's response to item B84 (R).
5. Please provide a list of all private funds to which Galleon has provided "seed capital".
6. Please provide a list of all underlying private investments (including other hedge funds) held by Buccaneers Fund Partners, LP and Galleon Fleet Fund, Ltd. as of 12/31/06.

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

| | |
|---|---|
| ATTENTION OF: | **Galleon Management, LP ("Galleon")**<br>**File No. 801- 65025** |
| REQUESTED BY: | **SEC Staff** |
| DATE: | **April 4, 2007** |
| REQUEST: | **12** |

------------------------------------------------------------------------

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included*
*in this request list for more than one week from the date of receipt, the Registrant should*
*immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff*
*Accountant (212) 336-0494.*

1. The staff previously requested in additional Request #11, Item 5, a list of all private funds to which Galleon has provided "seed capital". Please also include a list of all private funds to which Galleon <u>or its affiliated persons or entities</u> has provided "seed capital".

2. Please provide a detailed description of Galleon's relationship with Doug Pratt and Mesa Capital Management, LLC ("MESA"). Specifically, the staff noted certain emails in which Mr. Pratt email/contact information was at both Galleon and MESA.

3. Please provide copies of the "Weekly" analyst reports for the following analysts for the period from July 1, 2006 through December 31, 2006 (Please provide in electronic format):

   J.W. Higgs
   Nadeem Janmohamed
   Nat Cohn
   Vijay Doralda
   Vik Khullar

4.  The following investment guideline was noted in Galleon Admirals Offshore, Ltd.'s ("Admirals") marketing brochure for November 2006: "Never more than 3% in any given investment". However, the staff notes that on Admirals' November 2006 Bank of America custodial statement, Admirals holds a position in DIA-Diamonds Trust-Unit Series 1 of $(33,935,475), which constitutes 7.51% of the portfolio (see page 17). As result, the aforementioned investment guideline, per Admirals' marketing brochure, appears to have been violated. Please inform the staff of any other investment guidelines violations for this fund and the internal controls in place, if any, to ensure that such restrictions aren't violated.

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

| | |
|---|---|
| ATTENTION OF: | **Galleon Management, LP ("Galleon")** |
| | **File No. 801- 65025** |
| REQUESTED BY: | **SEC Staff** |
| DATE: | **April 12, 2007** |
| REQUEST: | **13** |

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included in this request list for more than one week from the date of receipt, the Registrant should immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff Accountant (212) 336-0494.*

1. For the following individuals, please provide all e-mails and instant messages, including any corresponding attachments, sent or received during the respective periods identified below. This information should be provided in an electronically searchable format. In identifying e-mails or instant messages responsive to this request, please be mindful that e-mails or instant messages may be stored both on servers and on individual hard drives of the persons selected. These emails may also be maintained by third parties such as AOL, Microsoft or Bloomberg:

| Employee | Months (include all days in the months listed) |
|---|---|
| Joseph W. Higgs | April-May 2006, July-August 2006, October 2006 |
| Nadeem Janmohamed | January-December 2006 |
| Vijay Doradla | January 2006, April 2006, August-October 2006 |
| Todd Deutsch | July-October 2006 |
| Gary Rosenbach | April-December 2006, January-February 2007 |
| Raj Rajaratnam | January-June 2006, September-December 2006 |
| Vikram Khullar | May-July 2006 |
| John O'Connor | August-September 2006 |
| Tom Fernandez | November 2006-March 2007 |
| Maria C. Liotta | December 2006-March 2007 |
| Julia Liu | Two months preceding last day of employment |

2.  Please provide a list of all non-employees that have had email addresses at Galleon, i.e. @galleongrp.com, during the period from January 1, 2006 through April 1, 2007.  Please provide the names of each person as well as a description of Galleon's relationship with such person.

3.  In Galleon's written response to Additional Request 6, Question 5d, Galleon indicated that Robinson & Company ("Robinson") is an affiliate.  Please indicate how Galleon is affiliated and provided a detailed description of the business of Robinson, e.g. type of business, location, etc.

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

| | |
|---|---|
| ATTENTION OF: | **Galleon Management, LP ("Galleon")**<br>**File No. 801- 65025** |
| REQUESTED BY: | **SEC Staff** |
| DATE: | **April 13, 2007** |
| REQUEST: | **14** |

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included*
*in this request list for more than one week from the date of receipt, the Registrant should*
*immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff*
*Accountant (212) 336-0494.*

1) Please provide all backup documentation, i.e. invoices, statements and cancelled checks, for the following disbursements, as noted on Galleon Management, L.P.'s Check Detail ledger for January through December 2006.

| Check # | Date | Description | Amount |
|---|---|---|---|
| a) 1003 | 5/11/06 | Diamond Edge Capital Partners, LLC | $15,000 |
| b) 1008 | 5/16/06 | Bell South (Jay Deutsch) | $2,731.18 |
| c) 1011 | 5/16/06 | MCI | $10,512.78 |
| d) 1028 | 5/31/06 | The Atlantic Group | $89,515.00 |
| e) 1048 | 6/12/06 | Verizon | $6,274.40 |
| f) 1081 | 6/22/06 | First Sigma Capital, Inc. | $6,250 |
| g) 1087 | 6/30/06 | Rohan Kumar | $5,000 |
| h) 1103 | 7/13/06 | MarquisJet | $25,000 |
| i) 1126 | 7/13/06 | Verizon Wireless | $1,517.15 |
| j) 1170 | 7/26/06 | Ali Far | $12,586.76 |
| k) 1212 | 8/8/06 | The Pegasus Group | $4,322.00 |
| l) 1244 | 8/22/06 | Miner Technologies Inc. | $44,091 |
| m) 1261 | 8/30/06 | T-Mobile | $42,755.16 |
| n) 1340 | 9/22/06 | Amee Tech | $36,500 |
| o) 1400 | 10/6/06 | NetJets Inc. | $126,859.36 |
| p) 1521 | 11/15/06 | 41 East 58th Street Restaurant Group | $19,256.25 |
| q)1611 | 12/8/06 | Ladenburg Thalmann & Co | $527,579.50 |
| r) 1627 | 12/15/06 | The St. Regis New York | $15,000 |

# ***SLIP SHEET***

## PAGE INTENTIONALLY LEFT BLANK

04/17/2007-14:49 FAX 212 336 1333          US SECURITIES & COMM                    ☒002

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

ATTENTION OF:          **Galleon Management, LP ("Galleon")**
                        **File No. 801-65025**

REQUESTED BY:          **SEC Staff**

DATE:                   **April 17, 2007**

REQUEST:

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included*
*in this request list for more than one week from the date of receipt, the Registrant should*
*immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff*
*Accountant (212) 336-0494.*

1) For the following trades, BE appears to have been trading at a higher price than what is indicated on the blotter. The staff noted a range of $8.65 to $8.43 on 9/26/06. Please explain how these purchases were made at the prices below and provide trade confirmations:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Captains LP | BE | 9/26/06 | Buy | 6500 | 5.9881 | ADMLP3 | TD | 19.5 | -38942.2 |
| Captains Offshore | BE | 9/26/06 | Buy | 23950 | 5.9881 | BIO | TD | 71.85 | -143487 |

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NORTHEAST REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

ATTENTION OF:        **Galleon Management, LP ("Galleon")**
                              **File No. 801- 65025**

REQUESTED BY:       **SEC Staff**

DATE:                     **April 24, 2007**

REQUEST:              **16**

-------------------------------------------------------------------------------------------

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included in this request list for more than one week from the date of receipt, the Registrant should immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff Accountant (212) 336-0494.*

1) For each of the analysts with whom the staff has scheduled interviews, please provide, in electronic format, the analyst's model portfolio for the exam period.

2) Please provide the staff with the most recent brokerage allocation worksheets (the "100 point" system) of each analyst, and any summary report, or other documentation created indicating the ultimate determination of how future brokerage commissions would be directed.

3) Please provide, in writing, for any individual whose emails/IMs were requested in additional request 13-1, the start date of employment if the staff has requested documentation for a period that does not fully over lap with the individual's employment period.

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

ATTENTION OF:     **Galleon Management, LP ("Galleon")**
                  **File No. 801- 65025**

REQUESTED BY:     **SEC Staff**

DATE:             **May 1, 2007**

REQUEST:          **17**

---

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included*
*in this request list for more than one week from the date of receipt, the Registrant should*
*immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff*
*Accountant (212) 336-0494.*

---

1. For the examination period (January 3, 2006 through December 31, 2006), please provide phone bills and other documentation such as logs, listing all incoming and outgoing phone calls and faxes for all phone and fax lines utilized by Galleon.   Please note this may include, but is not limited to, long distance and local phone carriers.

2. Please provide a phone directory for all Galleon employees' phone numbers.   Please include office telephone numbers, fax numbers, and all cell phone numbers for cell phones paid for by Galleon, e.g., T-Mobile.

3. Please provide a list of all invitees and attendees to all events organized wholly or in part by Galleon (e.g. Tour of Galleon's New Offices/Cocktail Party, Investor Conference at the St. Regis Hotel, Galleon's Christmas Party) for the period from January 3, 2006 through the date of this request.

4. With respect to the emails and instant messages provided by Galleon in response to Formal Request # 3, Question 1, please indicate if the emails or instant messages were filtered in any way by Galleon or its third party vendor.  If so, please provide a detailed description of the manner in which such documents were filtered and any privilege log as applicable.

5.  With respect to the emails and instant messages which have been or will be provided by Galleon in response to Formal Request # 13, Question 1, please indicate if the emails or instant messages were filtered in any way by Galleon or its third party provider. If so, please provide a detailed description of the manner in which such documents were filtered and any privilege log as applicable.

6.  With respect to Galleon's response to Formal Request 14, please provide copies of the entire billing statement for items 14B, 14E and 14M.

7.  Please provide documentation of the execution times for the following transactions (If not available on Galleon's systems, please request such documentation from the executing brokers):

| Symbol | Dates |
|--------|-------|
| NDAQ | 4/26/06, 4/28/06 |
| DD | 6/22/06, 6/23/06, 6/26/06, 6/27/06 |

# ***SLIP SHEET***

# PAGE INTENTIONALLY LEFT BLANK



UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
3 World Financial Center
New York, N.Y. 10281

| | |
|---|---|
| ATTENTION OF: | **Galleon Management, LP ("Galleon")**<br>**File No. 801- 65025** |
| REQUESTED BY: | **SEC Staff** |
| DATE: | **May 4, 2007** |
| REQUEST: | **18** |

*Please promptly provide the following item(s) for review.*
*If the Registrant becomes aware of a delay in the production of any of the information included in this request list for more than one week from the date of receipt, the Registrant should immediately, upon learning of the delay, contact George DeAngelis, Supervisory Staff Accountant (212) 336-0494.*

1.  Please provide copies of the completed subscription documents for the following investors:

| Investor | Fund |
|---|---|
| Keryn M. Limmer | Galleon Captains Partners, LP |
| Richard Grodin | Galleon Captains Partners, LP |
| Bradley Zipper | Galleon Technology Partners II, LP |
| Casey Gard | Galleon Technology Partners II, LP |
| Chitranjan N. Reddy and Elsa Reddy | Galleon Explorers Partners, LP |
| Stephen R. Starker | Galleon Explorers Partners, LP |