UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

RAJ RAJARATNAM and DANIELLE CHIESI,

    Defendants.

09 Cr. 1184 (RJH)

**MEMORANDUM OPINION
AND ORDER**

Richard J. Holwell, U.S. District Judge:

    Defendants Raj Rajaratnam ("Rajaratnam") and Danielle Chiesi ("Chiesi") have each moved for a bill of particulars. Both defendants want the government to provide more detailed information about the nature of the inside information they are alleged to have exchanged, and about the trades they allegedly made based on that inside information.[1] The government contends that it has already provided sufficient information about the nature of the charges, and it opposes the defendants' requests to do more. For the reasons given below, the Court grants in part the motions for a bill of particulars.

    The governing standards are well settled. Federal Rule of Criminal Procedure 7(f) authorizes the trial court to "direct the filing of a bill of particulars."[2] Such a bill "enables a defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Rigas*, 490

---

[1] The defendants originally requested information about (1) the alleged co-conspirators for each count and (2) the alleged sources of the inside information. Since the filing of the motions, the government has provided this information, mooting those requests.

[2] Rule 7(f) provides in full: "The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires." Fed. R. Crim. P. 7(f).

F.3d 208, 237 (2d Cir. 2007) (internal alterations omitted).  Still, defendants are not entitled to a bill of particulars as of right.  It is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks omitted).  The government need not "particularize all of its evidence," *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988), or "disclose [its] trial strategy," *United States v. Dames*, 380 F. Supp. 2d 270, 274 (S.D.N.Y. 2005).  And a bill is "not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means."  *Chen*, 378 F.2d at 1154 (internal quotation marks omitted).  Because "a bill of particulars confines the government's evidence at trial to the particulars furnished," a court must "balance restricting the government's proof against protecting defendants from surprise."  *United States v. McPherson*, 08 Cr. 1244, 2009 WL 4756470, at *2 (S.D.N.Y. Dec. 11, 2009) (quoting *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985) (internal quotation marks and alterations omitted)); *see United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 2002) ("[T]he government is strictly limited to proving what [the bill of particulars] has set forth in it.") (citations and quotation marks omitted).

That the standards are familiar does not mean they are easy to apply in individual cases.  *See United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) (Sand, J.) (noting that the standards "provide little guidance," demarcate lines that have proved "quite difficult to draw," and "furnish little help in disposing of requests for bills of particulars" in particular cases") (internal quotation marks omitted).  The line between mere evidentiary detail and information needed to prepare a defense and prevent unfair surprise can be thin indeed.

This case is no exception. But several factors favor granting a bill of particulars at least in part. First, in complex conspiracy cases like this one, the potential for unfair surprise and the difficulty of preparing a defense are amplified. *See id.* at 236 (in a case where "the charged conspiracies involve[d] a wide range of conduct, occurring over a long period of time, in various countries around the world," overt acts described in general terms "provide[d] too little information to the [d]efendants and their counsel to permit them reasonably to focus their trial preparations"). While the government's brief describes the schemes alleged as "not complicated" (Govt.'s Br. 5) and the charges as "quite simple" (*id.* 6), that characterization departs from the U.S. Attorney's description of the case as "the largest hedge fund insider trading case in history." (*See* U.S. Attorney's Office Press Release dated Oct. 16, 2009, "Manhattan U.S. Attorney Charges Hedge Fund Managers, Fortune 500 Executives, and Management Consulting Director in $20 Million Insider Trading Case.") The charges here lack the breadth of the conspiracy in *Bin Laden*, but they are still substantial—spanning six years and involving dozens of stocks, dozens of co-conspirators, and a total of seven conspiracies as charged in the indictment. What is more, this is an insider trading conspiracy case, which means the government must prove that the defendants conspired to acquire material nonpublic information. The merits of such a charge depend heavily on the facts and context. A defendant might argue that the information he sought to obtain was not material, or that it was already public at the time he tried to get it. But he can only do that if he knows what the information *is* and when it was conveyed.

There is precedent for directing the filing of a bill of particulars in an insider trading conspiracy case. *See United States v. Contorinis*, 09 Cr. 1083 (RJS), slip op. at 1 (S.D.N.Y. May 5, 2010) (directing the government to "submit a bill of particulars with respect to the

material, non-public information allegedly disclosed in connection with" a specified transaction); *United States v. Nacchio*, 05 Cr. 545 (EWN), 2006 WL 2475282, at *3, *5–*9 (D. Colo. Aug. 25, 2006) (directing the government to provide additional particulars regarding the nature of the inside information). This case is far larger than *Contorinis* or *Nacchio*—or, indeed, any insider trading case either side has cited. At issue in this case are 31 stocks, many more than the single stock at issue in *Nacchio* or the four stocks at issue in *Contorinis*. As noted, the case involves dozens of co-conspirators, charged and uncharged.

It is true that the government has provided a large amount of information to the defendants. In particular, it has identified the securities at issue in each count of the indictment; the co-conspirators, charged and uncharged, who are alleged to have participated in each count; the sources of material, nonpublic information; and, at least in general terms, the event to which each piece of inside information relates. The government has also identified the trades at issue in the substantive counts. But the production of this material does not necessarily obviate the need for a bill of particulars. The government may not "rely solely on the quantity of information disclosed"; "sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." *Bin Laden*, 92 F. Supp. 2d at 234; *see Davidoff*, 845 F.2d at 1154–55 (holding that district court erred in denying request for particulars regarding victims of each discrete extortion scheme the government intended to prove, and finding it inadequate that the government had produced 6,000 pages of wiretap applications and transcripts of wiretap intercepts); *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (not enough for government to "provid[e] mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged"); *United States v.*

4

*Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (granting request for particulars about defendant's role in transactions, where defendant had "been provided with 100,000 pages of discovery," a "veritable mountain of documents" that the government would have forced the defendant "comb through" to "attempt to guess at" which transactions, during a six-year period, were allegedly improper); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571–72 (S.D.N.Y. 2000) (granting bill of particulars where government had produced 200,000 documents relating to 2,000 Medicare claims, but had not told the defendants which claims were alleged to be false); *Nacchio*, 2006 WL 2475282, at *8 (finding that it was "not sufficient simply to refer defense counsel to discovery," because "dumping vast quantities of documents and information on one's opposing party does not always elucidate what is going on, so that the [d]efendant can adequately prepare for trial").

The government contends that the defendants' demands, at least with respect to the conspiracy counts (Counts One through Seven), would require it to provide more information now than it will need to provide at trial to satisfy its burden of proof. To prove a conspiracy to commit insider trading, the government argues, it need not offer evidence about the specific inside information, the dates on which it was exchanged, or trades made based on it. (Govt.'s Br. 18; Tr. of June 23, 2010 Hearing ("Tr.") 37.) Instead, it must simply show that

> (1) two or more people agree to trade based on [i]nside [i]nformation that came from someone who was violating a duty of trust or confidence; (2) each defendant knowingly became a member of the conspiracy; and (3) any single member of the conspiracy—not necessarily the defendants—knowingly committed at least one overt act in furtherance of the conspiracy.

(Govt.'s Br. 5.) The government resists the defendants' request that it disclose more specifics about (1) the content of the inside information and the dates on which it was exchanged, and (2) the trades at issue in the conspiracy counts. To force it to turn over this additional

5

information, the government suggests, would be akin to requiring it to itemize all the overt acts committed in furtherance of the conspiracy—a condition courts have declined to impose. *See United States v. Minaya*, 395 F. Supp. 2d 28, 36 (S.D.N.Y. 2005) (quoting *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001)) ("In the context of prosecutions of narcotics conspiracies, courts have consistently refused to grant a bill of particulars requesting . . . [information regarding] how the Government alleges the defendant performed acts in furtherance of the conspiracy."); *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987) ("Particularly since the Government is not required to charge any overt acts in the indictment, the information provided on the face of count one is, itself, more detailed than defendants have a right to demand with respect to the overt acts enumerated therein."). Even so, courts have sometimes ordered the government to provide more particulars about overt acts alleged in terms too general to enable the defendant to defend against them. *See Bin Laden*, 92 F. Supp. 2d at 237 ("Although the Government need not have included so many overt act allegations in the Indictment, having chosen to do so, it cannot be permitted to allege overt acts in such general terms as to require seemingly unlimited research and investigation by the Defendants in an attempt to answer those charges.").

Given the complexity of this case, and the fact-intensive nature of its allegations about inside information,[3] the defendants are entitled to some additional particulars about various of

---

[3] The government rightly distinguishes the conspiracy charges from the substantive counts in that the former do not necessarily require proof of the *existence* of inside information—only of a conspiracy to obtain it. (*See* Tr. 37.) But to the extent the government seeks to prove the existence of the conspiracy by showing that the defendants received inside information, the defendants may defend against it by showing that they knew the information to be public or obviously immaterial. Defendants can only prepare this defense if they know more about the nature of the information. For the same reason, it matters when the information was

6

the substantive counts (Counts 18 and 19) and the conspiracy counts (Counts One through Seven), subject to certain limitations discussed below. For other counts, the Court concludes that sufficient particulars already exist to enable the defendants to prepare their case. The Court will address each count in turn.

1.  Count One alleges a conspiracy to acquire inside information about the following companies: Atheros Communications, Inc. ("Atheros"); Marvell Technology Group, Ltd. ("Marvell"); @Road, Inc. ("@Road"); ATI Technologies Inc. ("ATI"); Advanced Micro Devices, Inc. ("AMD"); AT&T Inc. ("AT&T"); Cisco Systems Inc. ("Cisco"); Clear Channel Communications ("Clear Channel"); Goldman Sachs, Inc. ("Goldman Sachs"); Intel Corp. ("Intel"); Integrated Circuit Systems, Inc. ("ICS"); Juniper Networks, Inc. ("Juniper"); PeopleSupport, Inc. ("PeopleSupport"); PF Chang's China Bistro ("PF Chang's"); Spansion Inc. ("Spansion"); Xilinx Inc. ("Xilinx"); Maxim Integrated Products Inc. ("Maxim"); MEMC Electronic Materials, Inc. ("MEMC"); Broadcom Corp. ("Broadcom"); Cavium Networks, Inc. ("Cavium"); and Synaptics Inc. ("Synaptics"). (*See* Indictment ¶ 4; Govt.'s Letter dated March 22, 2010.)

    a.  According to the government, the Atheros information relates to certain earnings announcements during the term of the conspiracy, including one made on February 2, 2009. (*See* Govt.'s Letter dated April 14, 2010, at A-2.) The government should also identify (1) all reporting periods that were the subject of inside information, (2) the substance of the information provided for any period, and (3) the date(s) on which it was conveyed.

---

conveyed; information about an upcoming acquisition may be material and nonpublic on one day, and public the next.

7

b. According to the government, the Marvell information relates to certain earnings announcements during the term of the conspiracy, including for the quarter ending in January 2009. (*See* Govt.'s Letter dated April 14, 2010, at A-3.) The government should also identify (1) all reporting periods that were the subject of inside information, (2) the substance of the information provided for any period, and (3) the date(s) on which it was conveyed.

c. According to the government, the @Road information relates to the acquisition of that company by Trimble, prior to the public announcement of the acquisition on December 10, 2006. (*See* Govt.'s Letter dated April 14, 2010, at A-1.) The government should also identify (1) the substance of the information provided and (2) the date(s) on which it was conveyed.

d. According to the government, the ATI information relates to AMD's acquisition of ATI prior to the announcement of that acquisition in July 2006. (*See* Govt.'s Letter dated April 14, 2010, at A-1.) The government has fleshed out the ATI allegation in sufficient detail. (*See* Kumar Information ¶¶ 8–9.) No further particulars are required.

e. According to the government, the AMD information relates to a 2008 reorganization of the company. (*See* Govt.'s Letter dated April 14, 2010, at A-1.) In the Rajaratnam Complaint, the government has extensively described the content of this information. (*See* Criminal Compl. Against Rajaratnam, Goel, and Kumar, dated Oct. 15, 2009 ("Rajaratnam Compl.") ¶¶ 57–60.) No further particulars are required.

f.  According to the government, the AT&T information was conveyed in August 2008 and concerns AT&T's "potential acquisition of certain companies." (*See* Govt.'s Letter dated April 14, 2010, at A-2.) The government should also identify (1) the target companies, (2) the identity of the tipper, (3) the substance of the information provided, and (4) the date(s) on which it was conveyed.

g.  According to the government, the Cisco information was provided between July and September 2008 regarding Cisco's "potential acquisition . . . of another company." (*See* Govt.'s Letter dated April 14, 2010, at A-2.) The government should also identify (1) the target company, (2) the substance of the information provided, (3) the date(s) on which it was conveyed, and (4) which tipper provided which piece of information to Rajaratnam.

h.  According to the government, the Clear Channel information relates to the closing of the acquisition of that company in March 2008. (*See* Govt.'s Letter dated April 14, 2010, at A-2.) Rajaratnam has requested that the government also identify the date(s) on which this information was conveyed (*see* Rajaratnam Reply, Ex. A, at 3), and the Court agrees that the government should provide this information.

i.  According to the government, the Goldman information relates to the company's quarterly earnings prior to public announcements on June 17, 2008 and December 16, 2008, as well as to Berkshire Hathaway's investment in Goldman prior to the announcement of the investment on September 23, 2008. (*See* Govt.'s Letter dated April 14, 2010, at A-2.) The government should also

       identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

j.     According to the government, the Intel information relates to Intel's plans to invest in a joint venture involving Clearwire, and to Intel's earnings announcement on April 17, 2007. (*See* Govt.'s Letter dated April 14, 2010, at A-2–3.) As to the Clearwire investment, the content of this information is adequately described in the Rajaratnam Complaint. (*See* Rajaratnam Compl. ¶¶ 51–53.) As to the earnings announcement, however, the government should also identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

k.     According to the government, the ICS information relates to a merger between ICS and IDT. (*See* Govt.'s Letter dated April 14, 2010, at A-3.) The government should also identify (1) the identity of the tipper, (2) the substance of the information provided, and (3) the date(s) on which it was conveyed.

l.     According to the government, the Juniper information relates to certain quarterly earnings announcements between 2006 and March 2009. (*See* Govt.'s Letter dated April 14, 2010, at A-3.) The government should also identify (1) all reporting periods that were the subject of inside information, (2) the substance of the information provided for any period, (3) the date(s) on which it was conveyed, and (4) which tipper provided which piece of information to Rajaratnam.

m.     According to the government, the PeopleSupport information relates to Aegis's acquisition of PeopleSupport prior to the announcement of that acquisition on

        August 4, 2008, and the closing of that acquisition in October 2008.  (*See* Govt.'s Letter dated April 14, 2010, at A-3.)  The Rajaratnam Complaint provides some detail about this allegation.  (*See* Rajaratnam Compl. ¶ 61.)  No more is required.

n.    According to the government, the PF Chang's information relates to the potential acquisition of PF Chang's by another company.  (*See* Govt.'s Letter dated April 14, 2010, at A-3–4.)  The government should also identify (1) the acquiring company, (2) the substance of the information provided, and (3) the date(s) on which it was conveyed.

o.    According to the government, the Spansion information was conveyed in May 2008 and relates to the potential acquisition of Spansion by another company.  (*See* Govt.'s Letter dated April 14, 2010, at A-4.)  The government should also identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

p.    According to the government, the Xilinx information relates to certain quarterly earnings announcements between 2006 and March 2009.  (*See* Govt.'s Letter dated April 14, 2010, at A-4.)  The government should also identify (1) all reporting periods that were the subject of inside information, (2) the substance of the information provided for any period, and (3) the date(s) on which it was conveyed.

q.    According to the government, the Maxim information relates to certain earnings announcements during the term of the conspiracy, including an announcement on January 29, 2009.  (*See* Govt.'s Letter dated June 11, 2010,

11

      Ex. A.)  The government should also identify (1) all reporting periods that were the subject of inside information, (2) the substance of the information provided for any period, and (3) the date(s) on which it was conveyed.

r.   According to the government, the MEMC information relates to a mid-quarter update announced on September 2, 2008.  (*See* Govt.'s Letter dated June 11, 2010, Ex. A.)  The government should also identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

s.   According to the government, the Broadcom information relates to certain earnings announcements during the term of the conspiracy, including an announcement made on January 29, 2009.  (*See* Govt.'s Letter dated June 11, 2010, Ex. A.)  The government should also identify (1) all reporting periods that were the subject of inside information, (2) the substance of the information provided for any period, and (3) the date(s) on which it was conveyed.

t.   According to the government, the Cavium information relates to the company's earnings announcement of January 28, 2009.  (*See* Govt.'s Letter dated June 11, 2010, Ex. A.)  The government should also identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

u.   According to the government, the Synaptics information relates to certain earnings announcements during the term of the conspiracy, including an announcement on January 22, 2009.  (*See* Govt.'s Letter dated June 11, 2010, Ex. A.)  The government should also identify (1) all reporting periods that

        were the subject of inside information, (2) the substance of the information provided for any period, and (3) the date(s) on which it was conveyed.

2. Count Two alleges a conspiracy to acquire inside information about Polycom, Inc; Hilton Hotels Corp.; and Google Inc. (*See* Indictment ¶ 11.) The government has provided sufficient detail about this information. (*See* Rajaratnam Compl. ¶¶ 23–50.)

3. Count Three alleges a conspiracy to acquire inside information about Intel and Nuance Communications Inc. ("Nuance"). (*See* Indictment ¶ 18; Govt.'s Letter dated April 14, 2010.)

    a. As to the Intel information, see the Court's ruling in paragraph 1(j).

    b. According to the government, the Nuance information was conveyed in March 2008 and relates to Nuance's potential acquisition of another company. (*See* Govt.'s Letter dated April 14, 2010, at A-5.) The government should also identify (1) the target company, (2) the substance of the information provided, and (3) the date(s) on which it was conveyed.

4. Count Four alleges a conspiracy to acquire inside information about AMD, ATI, eBay, Cisco, Business Objects, Spansion, and Samsung. (Indictment ¶ 25; Govt.'s Letter dated April 14, 2010, at A-5–6.)

    a. As to the AMD information, see the Court's ruling in paragraph 1(e).

    b. As to the ATI information, see the Court's ruling in paragraph 1(d).

    c. According to the government, the eBay information relates to company layoffs prior to the public announcement of those layoffs on October 6, 2008. (*See* Govt.'s Letter dated April 14, 2010, at A-6.) The government has given

     adequate detail about the content of this information, but it should also identify the date(s) on which the information was conveyed.

  d. As to the Cisco information, see the Court's ruling in paragraph 1(g).

  e. According to the government, the Business Objects information relates to quarterly earnings for the third quarter of 2007.  (*See* Govt.'s Letter dated April 14, 2010, at A-5.)  The government should also identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

  f. As to the Spansion information, see the Court's ruling in paragraph 1(o).

  g. According to the government, the Samsung information relates to a possible acquisition by Samsung of another company.  (*See* Govt.'s Letter dated April 14, 2010, at A-6.)  The government should also identify (1) the target company, (2) the substance of the information provided, and (3) the date(s) on which it was conveyed.

5. Count Five alleges a conspiracy to acquire inside information about IBM, AMD, Sun Microsystems ("Sun"), Lenovo Group Ltd. ("Lenovo"), and Sybase Inc. ("Sybase").  (*See* Indictment ¶ 32; Govt.'s Letter dated March 22, 2010.)

  a. According to the government, the IBM information relates to earnings announcements made on July 17, 2008; October 16, 2008; January 20, 2009; and April 20, 2009.  (*See* Govt.'s Letter dated April 14, 2010, at A-6.)  The Chiesi Complaint provides adequate detail about the information relating to the announcements made on October 16, 2008; January 20, 2009; and April 20, 2009.  (*See* Criminal Compl. Against Chiesi, Kurland, and Moffat, dated Oct. 15, 2009 ("Chiesi Compl.") ¶ 30.)  However, as to the information given prior

        to the July 17, 2008 announcement, the government should identify (1) the substance of the information provided and (2) the date(s) on which it was conveyed.

    b.    As to the AMD information, see the Court's ruling in paragraph 1(e).

    c.    According to the government, the Sun information relates to certain earnings announcements and a potential acquisition by IBM that never materialized. (*See* Govt.'s Letter dated April 14, 2010, at A-6–7.) The Chiesi Complaint provides adequate detail about this information.

    d.    According to the government, the Lenovo information relates to earnings for the third quarter of 2008 prior to any public announcement. (*See* Govt.'s Letter dated April 14, 2010, at A-6.) The government should also identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

    e.    According to the government, the Sybase information relates to earnings prior to a public announcement on April 22, 2009. (*See* Govt.'s Letter dated April 14, 2010, at A-7.) The government should also identify (1) the substance of the information provided, and (2) the date(s) on which it was conveyed.

6.    Count Six alleges a conspiracy to acquire inside information about Akamai Technologies, Inc. ("Akamai"), AMD, IBM, and Marvell. (*See* Indictment ¶ 38; Govt.'s Letter dated March 22, 2010.)

    a.    According to the government, the Akamai information relates to Akamai's quarterly earnings prior to its earnings announcement on July 30, 2008, and to a potential acquisition of the company in September 2008. (*See* Govt.'s Letter

        dated April 14, 2010, at A-7.)  As to the earnings information, the government has supplied enough detail.  (*See* Chiesi Compl. ¶¶ 22–23.)  But the government is much less specific about a "potential acquisition of Akamai in or about September 2008."  (Govt.'s Letter dated April 14, 2010, at A-7; *see* Chiesi Compl. ¶ 23.)  It should identify (1) the substance of this information, and (2) the date(s) on which it was conveyed.

    b.    As to the IBM information, see the Court's ruling in paragraph 5(a).

    c.    As to the AMD information, see the Court's ruling in paragraph 1(e).

    d.    As to the Marvell information, see the Court's ruling in paragraph 1(b).

7.    Count Seven alleges a conspiracy to acquire inside information about Akamai, IBM, AMD, Sun, Lenovo, and Sybase.  (*See* Indictment ¶ 45; Govt.'s Letter dated March 22, 2010.)

    a.    As to the Akamai information, see the Court's ruling in paragraph 6(a).

    b.    As to the IBM information, see the Court's ruling in paragraph 5(a).

    c.    As to the AMD information, see the Court's ruling in paragraph 1(e).

    d.    As to the Sun information, see the Court's ruling in paragraph 5(c).

    e.    As to the Lenovo information, see the Court's ruling in paragraph 5(d).

    f.    As to the Sybase information, see the Court's ruling in paragraph 5(e).

8.    Count Eighteen alleges insider trading in the stock of ATI.  This trading was allegedly premised on inside information about AMD's acquisition of ATI between March and July 2006.  See the Court's ruling in paragraph 1(d).

9.  Count Nineteen alleges insider trading in the stock of Intel. This trading was allegedly based on inside information about Intel's earnings announcement of April 17, 2007. See the Court's ruling in paragraph 1(j).

\* \* \*

A few notes are in order regarding the scope of the Court's order. First, the government need not provide particulars where it has none. *Cf. Bin Laden*, 92 F. Supp. 2d at 237 ("If, in good faith, the Government determines that it cannot provide the particulars we have ordered, it may so indicate in its bill of particulars and provide as much detail as it can."). This opinion directs the government to identify specific information, but only if that information is known. If it is not known, the government should simply say "not known." For example, the government represented at the motion hearing that, for some charges, it might rely primarily or exclusively on testimony from cooperators, and that those cooperators may only be able to testify generally to providing the defendants with inside information. If that is the case, the government can say so in its bill. It is not obligated to manufacture specificity where none exists.

Second, the defendants are not entitled to an itemization of the trades at issue in the conspiracy counts.[4] They cite no case in which a court has ordered such particularization; the Court is aware of no such case; and the Court is not persuaded that more detail is necessary to prepare a defense here. Third, the government is not required to provide particulars for a

---

[4] The government has acknowledged its obligation to provide the defendants with the trades that Counts 18 and 19 allege Rajaratnam to have made. But the government has informed the defendants that the trades at issue in those counts include all trades in ATI executed between March 7, 2006 to July 24, 2006, and all trades in Intel executed between April 9, 2007 and April 17, 2007. (*See* Govt.'s Letter dated June 11, 2010, at 1.) The Court is not persuaded that greater particularization is necessary or even possible.

17

stock where the inside information is based solely on wiretap intercepts. The defendants now have all of these intercepts, along with descriptions of relevant conversations involving the defendants and electronically searchable summary line sheets. They are as capable of drawing inferences from tapped conversations as the government is. The government's disclosures suggest, for example, that wiretap intercepts are the government's sole evidence that Rajaratnam received inside information about Broadcom, Cavium, Maxim, MEMC, and Synpatics. (*See* Govt.'s Letter dated Apr. 14, 2010 at 4.) If that is the case, the defendants already possess the information they need to defend against these charges at trial. More particulars would be unnecessary.

## CONCLUSION

For the reasons given above, the defendants' motion for a bill of particulars is granted in part.

SO ORDERED.

Dated: New York, New York
July 13, 2010

Richard J. Holwell
United States District Judge