UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | 09 Cr. 1184 (RJH) |
| | **MEMORANDUM OPINION AND ORDER** |
| RAJ RAJARATNAM and DANIELLE CHIESI, | |
| Defendants. | |

Richard J. Holwell, District Judge:

On February 9, 2010, the government filed a nineteen-count Superseding Indictment ("Indictment") against Defendant Raj Rajaratnam ("Rajaratnam") and Defendant Danielle Chiesi ("Chiesi"). The Indictment charges Rajaratnam, the principal of Galleon Management L.P. ("Galleon"), a New York-based family of hedge funds, with four counts of conspiracy to trade on inside information in which Chiesi is not named; charges Chiesi, an employee of another hedge fund, New Castle Partners, in two insider trading conspiracy counts in which Rajaratnam is not named; and charges both Rajaratnam and Chiesi in a seventh conspiracy count. Related substantive counts are charged with respect to four of the seven conspiracies. Rajaratnam and Chiesi have moved to sever the Indictment pursuant to Federal Rules of Criminal Procedure 8 and 14. For the reasons discussed below, defendants' motions are GRANTED in part and DENIED in part.

1

## BACKGROUND

### A.  The Rajaratnam Conspiracy Counts (One, Two, Three, and Four)

Count One alleges that, from some time in 2003 to March 2009, Rajaratnam conspired with Ali Far, a former Galleon portfolio manager and analyst, to trade on the basis of inside information that Far obtained regarding Atheros Communications, Inc. ("Atheros"), Marvell Technology Group, Ltd. ("Marvell"), and unspecified "other companies."  (Indictment at ¶¶ 3-4.)  The government alleges that, in exchange, Rajaratnam provided Far with inside information regarding Intel Corporation ("Intel").  (*See id.* at ¶ 4.)  The government later identified numerous other sources of inside information regarding twenty-two "other companies" with respect to which Rajaratnam and Far are alleged to have conspired to trade.  (*See* Letter from P. Bahara to J. Dowd, Mar. 22, 2010 at 4-5; Letter from P. Bahara to J. Dowd, Apr. 14, 2010; Letter from P. Bahara to J. Dowd, May 7, 2010; Letter from P. Bahara to J. Dowd, June 11, 2010.)

Count Two alleges that, from January 2006 to July 2007, Rajaratnam conspired with Roomy Khan, another former Galleon employee, to trade on the basis of inside information that Khan obtained regarding Polycom, Inc. ("Polycom"), Hilton Hotels Corp. ("Hilton"), and Google Inc. ("Google").  The government alleges that, in exchange, Rajaratnam provided Khan with inside information regarding Intel.  (*See* Indictment at ¶ 11.)

Count Three alleges that, from some time in 2007 to some time in 2009, Rajaratnam conspired with Rajiv Goel, an Intel employee, to trade on the basis of inside information that Goel obtained regarding Intel.  (*See id.* at ¶¶ 17-18.)  The government

alleges that, in exchange, Rajaratnam provided Goel with financial assistance and executed trades in Goel's brokerage account based on inside information Rajaratnam had received from other sources.  (*See id.*)  The Indictment also charges Rajaratnam with four substantive counts of securities fraud (Counts Eight, Nine, Seventeen, and Nineteen) related to the alleged conspiracy with Goel.  These counts allege insider trading in Clearwire, PeopleSupport, and Intel.  (*See id.* at ¶¶ 51, 55.)

Count Four alleges that, from some time in 2003 to October 2009, Rajaratnam conspired with Anil Kumar, a senior partner and director at the global consulting firm of McKinsey & Company, Inc. ("McKinsey"), to trade on the basis of inside information that Kumar obtained from McKinsey clients regarding Advanced Micro Devices Inc. ("AMD"), ATI Technologies Inc. ("ATI") and eBay Inc. ("eBay").  (*See id.* at ¶¶ 24-25.) The government alleges that, in exchange, Rajaratnam wired money to accounts controlled by Kumar, some of which was reinvested in Galleon funds in the name of Kumar's housekeeper, with the returns ultimately funneled back to accounts controlled by Kumar.  (*See id.* at ¶ 25.)  The Indictment also charges Rajaratnam with one substantive count of insider trading in ATI (Count Eighteen) related to the alleged conspiracy with Kumar.  (*See id.* at ¶ 53.)

### B.  The Chiesi Conspiracy Counts (Five and Seven)

Count Five alleges that, from August 2008 to April 2009, Chiesi conspired with an unindicted co-conspirator and former employee of IBM identified only as "CC-1", and others, to trade on inside information CC-1 obtained regarding IBM, AMD, Sun Microsystems ("Sun"), and "other companies."  (*Id.* at ¶¶ 31-32.)

Count Seven alleges that, from July 2008 to April 2009, Chiesi conspired with Mark Kurland, a Senior Managing Director of New Castle, to trade on inside information Chiesi obtained from CC-1 and an employee at Akamai ("the Akamai Source") regarding IBM, AMD, Akamai, Sun, and "other companies." (*Id.* at ¶¶ 44-45.) The Indictment also charges Chiesi with four substantive counts of insider trading in Akamai (Counts Eleven, Twelve, Fourteen and Sixteen) related to the Count Seven conspiracy.

### C.  The Rajaratnam-Chiesi Conspiracy Count (Six)

Count Six is the only conspiracy count that charges both Rajaratnam and Chiesi. Count Six alleges that, from July to October 2008, Rajaratnam and Chiesi conspired with each other and others, known and unknown, to trade on the basis of inside information regarding AMD that Rajaratnam had obtained from Anil Kumar and inside information regarding AMD and Akamai that Chiesi had obtained from CC-1 and the Akamai Source. (*See id.* at ¶ 38.) The government alleges that Rajaratnam and Chiesi exchanged the information they received from their respective sources and traded on the basis of that information. (*See id.*) The Indictment also charges both Rajaratnam and Chiesi with three substantive counts of insider trading in Akamai (Counts Ten, Thirteen, and Fifteen) related to the Count Six conspiracy.

### LEGAL STANDARD

### A.  Rule 8

"For reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). However,

"[u]nless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice."  *Id.* at 113.

Rule 8 of the Federal Rules of Criminal Procedure provides:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"Unlike Rule 8(a), Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of 'the same or similar character.'  Thus, though both subdivisions of Rule 8 focus on the nature of the acts constituting the alleged offenses, 8(b) provides a more restrictive test when multiple defendants are involved."  *United States v. Turoff*, 853 F.2d 1037, 1042-43 (2d Cir. 1988).  Since the Indictment charges both Rajaratnam and Chiesi with multiple offenses, their motion could be understood as a motion under either Rule 8(a) or Rule 8(b).  However, "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under [Rule] 8(b) rather than 8(a)."  *Id.* at 1043.

Under Rule 8(b), "multiple defendants may be charged with and tried for multiple offenses…only if the charged acts are part of a series of acts or transactions constituting…offenses."  *Id.* (quotation marks omitted)   The Second Circuit has interpreted this language to mean that "joinder is proper where two or more persons'

criminal acts are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'" *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989)).  That hardly settles the matter, for courts in this Circuit have interpreted and applied each standard in varying terms and have not formally distinguished between the two standards.

In obliquely elaborating on the "substantial identity of facts or participants," the Second Circuit has inquired whether "a reasonable person would easily recognize the common factual elements that permit joinder…." *Turoff*, 853 F.2d at 1044.  For example, joinder is proper where, "even if the district court had tried the[] two defendants separately, the evidence at one trial would essentially [have] duplicate[d] the evidence at the other…." *Feyrer*, 333 F.3d at 114.  Likewise, joinder is proper where "proof of one scheme is indispensible for a full understanding of the other." *Turoff*, 853 F.2d at 1044. Conversely, joinder is improper where "[c]ommission of one of the offenses neither depended upon nor necessarily led to the commission of the other" and "proof of one act neither constituted nor depended upon proof of the other." *United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1978).

The Second Circuit has elaborated less extensively on the "common plan or scheme" standard.  Generally, "a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988).   However, "[w]hether the joinder of defendants in *two conspiracies* is warranted must be determined on a case-by-case basis." *United States v. Rittweger*, 524 F.3d 171, 178 (2d Cir. 2008) (emphasis added).   In that circumstance,

joinder is proper where "one scheme stemmed from the other" such that one scheme is "part and parcel" of the other. *Turoff*, 853 F.2d at 1044.   This is so because "there is a key link between the two offenses…and that link provides a sound basis for joinder under Rule 8(b)." *Id.*  Knowledge of the other conspiracy is at least one "indicator of whether or not there is a common scheme or purpose." *See United States v. Ohle*, 678 F. Supp. 2d 215, 225 (S.D.N.Y. 2010).  And one court has even stated that a "plan cannot be called 'common' [where a single defendant] is the only one alleged to be aware of it." *United States v. Menashe*, 741 F. Supp. 1135, 1138 (S.D.N.Y. 1990).

### B.  Rule 14

Of course, Rule 8 is only one part of the joinder analysis.  "Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the government." *Zafiro v. United States*, 506 U.S. 534, 538 (1993).   Rule 14 provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The Supreme Court has held that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.   "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant….When many defendants

7

are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id*.

However, "[e]vidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). And "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *United States v. Carson,* 702 F.2d 351, 367 (2d Cir. 1983). Indeed, "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *Id.* at 366-67. Rather, the coexistence of Rule 8 and Rule 14 assumes an "inevitable tolerance of some slight prejudice to codefendants, which is deemed outweighed by the judicial economies resulting from the avoidance of duplicative trials." *United States v. Cardascia*, 951 F.2d 474, 482-83 (2d Cir. 1991). Moreover, the use of limiting instructions has frequently been found to be an effective device for curing any prejudicial spillover that may result from a multi-defendant, multi-count trial. *See United States v. Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001).

## ARGUMENTS OF THE PARTIES

The Second Circuit has noted that "choosing the definitional frame of reference dictates whether joinder is proper in a given case." *Turoff*, 853 F.2d at 1039. Not surprisingly, defendants and the government frame the Indictment differently.

In moving for severance, Rajaratnam and Chiesi frame the charges against them as seven distinct conspiracies, only one of which involves both of them. They rely

principally on the fact that each of the six remaining conspiracies charges one but not the other with conspiring to trade on inside information.  Defendants also argue that the Indictment does not allege that either defendant was even aware of the conspiracies charged only against the other.   They note that the conspiracies separately charged involve different sources of information regarding different companies than the conspiracies and are alleged to have occurred at different times.  The Rajaratnam-only conspiracies all allegedly began *before* 2008 while the Chiesi-only conspiracies as well as the one joint conspiracy all began in 2008.

The government frames the charges quite differently.  The government argues that the Indictment charges two overarching conspiracies: a "Galleon Scheme", "one criminal scheme divided into separate conspiracy counts based on specific illegal insider trading relationships between Rajaratnam and his sources of Inside Information" (Gov't Opp'n at 3-4); and a "New Castle Scheme" "alleged in the three conspiracy counts [Counts Five, Six, and Seven]…in which Chiesi is named as a defendant."  (*Id.* at 5.)  By trading information with each other and trading on the basis of that information, Rajaratnam and Chiesi each "participated in (and necessarily had been aware of)" both the Galleon and New Castle Schemes.  (*Id.* at 6.)  The government also suggests that Counts Four, Five, Six, and Seven are all related because the conspiracy to exchange information alleged in Count Six involved both (a) information Rajaratnam received from Anil Kumar in furtherance of the conspiracy alleged in Count Four, and (b) information Chiesi received

from CC-1 and the Akamai Source in furtherance of the conspiracies alleged in Counts

Five and Seven.  (*Id.* at 6-7.) [1]

## DISCUSSION

### A.  Rule 8(b)

"Under the plain language of Rule 8(b), the decision to join parties turns on what

is 'alleged' in the 'indictment.'" *Rittweger*, 524 F.3d at 178.   Indeed, as the government

readily acknowledges, the Second Circuit has "caution[ed] that the plain language of

Rule 8(b) does not appear to allow for consideration of pre-trial representations not

contained in the indictment, just as the language of the Rule does not allow for

consideration of evidence at trial."  *Id.* at 178 n. 3; *see also United States v. Jawara*, 474

F.3d 565, 578 (9th Cir. 2007) ("[T]he bottom line is that the similar character of the

joined offenses should be ascertainable—either readily apparent or reasonably inferred—

from the face of the indictment. Courts should not have to engage in inferential

gymnastics or resort to implausible levels of abstraction to divine similarity."); *United*

*States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) ("Whether joinder was proper under

---

[1] In a footnote in its opposition, the government also represents that (1) the inside information regarding AMD at issue in Counts Four, Five, Six, and Seven was also disclosed in the conspiracy in Count One; (2) the disclosure of certain inside information was an overt act in furtherance of several of the conspiracies; and (3) the government views Ali Far as an unindicted co-conspirator with respect to Count Seven.  (*See* Gov't Opp'n at 15 n.2.)  It is puzzling why the government did not allege these facts in a superseding indictment, particularly because the government seems to have been aware of them only a month after filing the Indictment.  *See* Letter from P. Bahara to J. Dowd, Mar. 22, 2010.  However, as discussed in the neighboring text, the plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment. *See United States v. Rittweger*, 524 F.3d 171, 178 n. 3 (2d Cir. 2008) (*see also* Gov't Opp'n at 15 n. 2).  Accordingly, the Court disregards these proffers.

Rule 8(a) is determined by the allegations on the face of the indictment."); *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998) ("An indictment must reveal on its face a proper basis for joinder."); *United States v. Coleman,* 22 F.3d 126, 134 (7th Cir. 1994) ("Rule 8 joinder is based solely on the face of the indictment…."); *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990) ("Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the joinder is determined solely by the allegations in the indictment.").[2]   Heeding that caution, this court will analyze whether the counts against Rajaratnam and Chiesi, *as described in the language on the face of the*

---

[2] It is true that the Second Circuit in *Rittweger* did not formally decide that pre-trial representations were irrelevant to the Rule 8(b) analysis.  It is also true that other Courts of Appeals have held that courts may consider pre-trial representations. *See United States v. Dominguez*, 226 F.3d 1235, 1241 (11th Cir. 2000) ("It is enough that when faced with a Rule 8 motion, the prosecutor proffers evidence which will show the connection between the charges."); *United States v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992) ("Trial judges may look beyond the face of the indictment to determine proper joinder in limited circumstances. Where representations made in pretrial documents other than the indictment clarify factual connections between the counts, reference to those documents is permitted."); *United States v. Halliman,* 923 F.2d 873, 883 (D.C. Cir. 1991) ("In this circuit, however, the government need not demonstrate the propriety of its joinder decisions on the face of the indictment. Rather, the government need only present evidence before trial that each defendant participated in the series of acts underlying each offense charged (though not necessarily in every act making up the series.") (citation omitted).  However, "the more common view is that Rule 8(b) is a pleading rule and the propriety of joinder is determined by the allegations in the indictment."  Charles A. Wright and Andrew D. Leopold, 1A Fed. Prac. & Proc. Crim. § 144 (4th ed.).  In any event, until the Second Circuit has occasion to formally address this issue, the Court is required to heed that court's explicit caution.  *See Rittweger*, 524 F.3d at 178 n.3. For that reason, neither *United States v. Brown*, 676 F. Supp. 2d 220, 223 (S.D.N.Y. 2009), which does not cite *Rittweger* in considering pre-trial representations, nor *United States v. De Yian*, No. 94 Cr. 719, 1995 WL 368445, at *9-10 (S.D.N.Y. June 21, 1995) or *United States v. Victor Treicher & Co., L.P.*, 726 F. Supp. 1424, 1430 (S.D.N.Y. 1989), which did the same more than a decade before *Rittweger*, is persuasive.

*Indictment*, "are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *Cervone*, 907 F.2d at 341 (quotation marks omitted).

In its brief, the government presents this case as a Venn diagram in which "the key figure at the center of each scheme also participates in the other." (Gov't Opp'n at 9-10.) However, it is difficult to recognize the government's portrait of the Indictment because the features the government describes appear nowhere on the face of the Indictment. The Indictment makes no mention of a "Galleon Scheme" or a "New Castle Scheme" but instead alleges seven insider trading schemes identified by their participants, *e.g.*, "The Rajaratnam-Far Insider Trading Scheme," and "The Rajaratnam-Chiesi Insider Trading Scheme." Why the government may have charged two alleged insider trading rings as seven different conspiracies is something of a mystery but is immaterial for purposes of the pending motions. The Indictment must be measured under Rule 8(b) not by what the government could have alleged or what it hopes to prove but by the language the government has actually used in charging the defendants with their alleged crimes. "[W]here the government seeks joinder of counts on the basis of 'same or similar character,' it crafts a barebones indictment at its own risk." *Jawara*, 474 F.3d at 578.

### 1. Count One

Count One alleges that, from 2003 to March 2009, Rajaratnam conspired with Ali Far to trade on inside information regarding Atheros, Marvell, and nearly two dozen "other companies" it has since identified. (*See* Indictment at ¶ 4.) Since the face of the

Indictment does not name these companies—or the sources of information regarding them—the Court does not consider any of those allegations.

Count One has almost nothing in common with Count Five, which alleges that from August 2008 to April 2009, Chiesi conspired with CC-1, a former IBM employee, to trade on inside information regarding IBM, AMD, Sun, and "other companies." (Indictment at ¶¶ 31-32.)  The two counts do not identify any of the same people: Count One identifies Rajaratnam and Far; Count Five identifies Chiesi and CC-1. Nor do the counts refer to inside information regarding any of the same companies: Count One alleges trading in Atheros, Marvell, and "other companies"; Count Five alleges trading in IBM, AMD, Sun, and "other companies."  No other count in the Indictment describes any other similarity between Count One and Count Five.  Rather, the only commonality between the two counts is that they charge the same offense, an insider trading conspiracy.  But Rule 8(b) "does not permit joinder of defendants solely on the ground that the offenses charged are of the same or similar character." *Turoff*, 853 F.2d at 1042 (quotation marks omitted).   Counts One and Five are therefore improperly joined.

Count One has no more in common with Count Seven than with Count Five. Count Seven alleges that, from July 2008 to April 2009, Chiesi conspired with Mark Kurland, also of New Castle, to trade on inside information regarding IBM, AMD, Akamai, Sun, and "other companies."  (*Id.* at ¶¶ 44-45.)  Again, the counts do not identify any of the same people: Count One identifies Rajaratnam and Far; Count Seven identifies Chiesi and Kurland.  Nor do the counts refer to inside information regarding any of the same companies: Count One alleges trading in Atheros, Marvell, and "other

companies"; Count Seven alleges trading in IBM, AMD, Sun, and "other companies." Instead, the two counts merely describe two groups of different people conspiring to commit the same offense in different ways.  Counts One and Seven are therefore improperly joined.  *See Turoff*, 853 F.2d at 1042.

Count One has more in common with Count Six than with Count Five or Count Seven.  Count Six alleges that, from July to October 2008, Rajaratnam and Chiesi conspired with each other and others to trade on inside information regarding AMD and Akamai.  Count Six essentially alleges a *quid pro quo*: Rajaratnam gave Chiesi inside information regarding AMD from Anil Kumar; Chiesi gave Rajaratnam inside information regarding AMD and Akamai from CC-1 and the Akamai Source; and each traded on the information he or she received from the other.  (*See* Indictment at ¶38.) While Counts One and Six do not allege trading on information regarding any of the same companies, they do allege that Rajaratnam was involved in both conspiracies. Hence Counts One and Six share a common participant.

However, "the mere existence of similarities between some of the actors or some of the crimes committed will not suffice" under Rule 8(b).  *United States v. Carrozza*, 728 F. Supp. 266, 270 (S.D.N.Y. 1990).  Indeed, numerous courts in this district have held that charging one defendant in two conspiracy counts does not render the counts properly joined where only one of the counts charges a second defendant.  *See United States v. Kouzmine*, 921 F. Supp. 1131, 1133-34 (S.D.N.Y. 1996) (severing immigration fraud conspiracy count charging two defendants and others from immigration conspiracy count charging only the others); *United States v. Lech*, 161 F.R.D. 255 (S.D.N.Y. 1995)

(Sotomayor, J.) (severing bribery conspiracy count charging three defendants from two other bribery conspiracy counts charging only two of the three defendants); *United States v. Menashe*, 741 F. Supp. 1135 (S.D.N.Y. 1990) (severing conspiracy count charging three defendants with scheme to sell cargo planes to Iran from conspiracy count charging only one of the three defendants with scheme to sell anti-aircraft missiles to another country); *United States v. Giraldo*, 859 F. Supp. 52, 54-55 (E.D.N.Y. 1994) (severing drug conspiracy count charging three defendants and Giraldo from drug conspiracy count charging Giraldo alone); *Carrozza*, 728 F. Supp. at 270 (severing extortion conspiracy count charging three defendants and Carrozza from extortion conspiracy count charging Carrozza alone).

Counts One and Six have no more in common with each other than the pairs of conspiracy counts found improperly joined in the above-cited cases.   Rajaratnam allegedly participated in both the scheme charged in Count Six and the scheme charged in Count One, but that makes little difference considering the Indictment from Chiesi's perspective.  Count One does not even mention Chiesi.  Thus, on the face of the Indictment, Chiesi "had no involvement in the other scheme[] charged." *Lech*, 161 F.R.D. at 257.  In fact, nothing else in the Indictment alleges that Chiesi even knew anything about Count One; "at most, [s]he had cursory knowledge of the other criminal activities…." *Id.*  As noted, "[k]nowledge of the other conspiracy [may not be] required, but it is an indicator of whether or not there is a common scheme or purpose." *Ohle*, 678 F. Supp. 2d at 225 (severing indictment that charged defendant in connection with one scheme but did not allege that defendant had any knowledge of other charged schemes).

Thus even if Rajaratnam planned both schemes, his "plan cannot be called 'common', since he [wa]s the only one alleged to be aware of it." *Menashe*, 741 F. Supp. at 1138; *see also Kouzmine*, 921 F. Supp. at 1133 (severing indictment where "there was no evidence that the defendants joined in the indictments were aware of or joined in all of the schemes alleged"). Absent "some substantial identity of facts or participants" or "a common plan or scheme", Counts One and Six are improperly joined.[3]

The government argues that joinder cannot turn on mutual awareness because the defendants in *Rittweger* were not aware of each other's conspiracies. (*See* Gov't Opp'n at 10-11, 14-15.) Perhaps so; yet the government itself acknowledges the relevance of knowledge in its unsuccessful effort to read the Indictment as actually charging two over-arching schemes in which both defendants participated and of which they were "necessarily" aware. (*See id.* at 6.) The government again recognizes the importance of this factor in arguing that the defendants in *Feryer* were properly joined because they "were aware of each other's participation in fraud." (Gov't Opp'n at 11 (citing *Feyrer*, 333 F.3d at 114).) Yet the government can point to no language in the Indictment that suggests that Counts One and Six have anything more in common than that they both charge Rajaratnam. That standard would expose a defendant to "the risks inherent in joinder of [multiple] alleged conspiracies simply because he had the misfortune of being charged with another defendant who was subject also to other accusations." *See*

---

[3] For the same reason that Count One is improperly joined with Counts Five, Six, and Seven, Count One is improperly joined with Counts Ten, Thirteen, and Fifteen (the substantive counts of insider trading regarding Akamai against both defendants) and improperly joined with Counts Eleven, Twelve, Fourteen, and Sixteen (the substantive counts of insider trading regarding Akamai against Chiesi alone).

*Kouzmine*, 921 F. Supp. at 1133.  Not surprisingly, the government does not advance that interpretation of the Rule. [4]

 *Rittweger* is not to the contrary.  In *Rittweger*, the indictment alleged two conspiracies: (1) an alleged Ponzi scheme to defraud investors in the "CBL Insured Credit Facility" and the "CBL Insured Securities Strategy" involving defendants Rittweger, Blech, Brandon and other co-defendants; and (2) a scheme involving defendants Rittweger, Blech, and Wexler—but not defendant Brandon—to defraud investors in the CBL Insured Credit Facility who were solicited by other co-defendants, none of whom were named in the first scheme.  *See Rittweger*, 524 F.3d at 175-76. Hence the "indictment allege[d] that both [schemes] were efforts to induce CBL customers to invest cash, securities and other assets" in the same Ponzi scheme, resulting in a substantial overlap of participants and facts relating to that scheme. *Id.* at 177. Accordingly, the Second Circuit held that Brandon and Wexler were properly joined even though neither was alleged to have been involved in both schemes.  *See id.* at 178.  The

---

[4] *But see United States v. Guttenberg*, 07 Cr. 141, 2007 WL 4115810 (S.D.N.Y. Nov. 14, 2007), in which the court held that charges against a tippee for allegedly conspiring with an investment banker to trade on the basis of inside information were properly joined with charges against the investment banker for conspiring with a different tippee.  Judge Batts concluded that "[b]ecause [the tippee and the banker] [we]re alleged to have conspired together to violate federal securities law, their joinder as Defendants [wa]s proper."  *Id.* at *7.  That reasoning is unpersuasive for the reasons discussed above. Rather, the Court will follow the numerous other decisions in this Circuit that have analyzed the relationship between the offenses in which a defendant is charged with a co-defendant and the offenses with which only the co-defendant is charged.  *See, e.g.*, *United States v. Reale*, No. 96 Cr. 1068, 1997 WL 580778, at * 11 (S.D.N.Y. Sept. 17, 1997) (finding joinder improper where co-conspirators "committed separate acts that did not share a common aim with the *other charges* alleged in the Indictment") (emphasis added).

same cannot be said for the schemes alleged in Counts One and Six that involve different co-participants trading on inside information on different stocks.  Hence the government's argument that "members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching [conspiracy]" is wide of the mark.   (Gov't Opp'n at 12 (quoting *Rittweger*, 524 F.3d at 178)).  While the indictment need not allege that Rajaratnam and Chiesi participated in "one overarching insider trading conspiracy", it must allege that the separate conspiracies evince a common plan with a substantial overlap of participants and facts.  The indictment in *Rittweger* did so; the Indictment here does not.

That also renders *Feyrer* inapposite.  In *Feyrer*, the indictment alleged two conspiracies: (1) a scheme by defendant Yost, the president of Banyan Corporation, to inflate the price of Banyan stock by paying bribes to brokers at the Symons Financial Group to promote the stock; and (2) a scheme by defendant Goldenberg, the principal of First Colonial Ventures, Ltd., to inflate the price of First Colonial stock by paying bribes to brokers at Symons to promote the stock.  *See* 333 F.3d at 112.   Both defendants attended a meeting in Las Vegas with Symons executives to discuss their plans to bribe brokers and both wired money to the same Symons executive middleman in furtherance of their schemes.  *See id.* at 113.  Accordingly, the Second Circuit held that there was "no doubt that the charges against Yost and Goldenberg were united by overlapping facts and participants and a common plan."  *Id.* at 114.  But no such coordination is present between Count One and Counts Five and Seven, or even Count Six.  These counts allege nothing akin to the Las Vegas kickoff meeting in *Feyrer*.  Rather, the Indictment alleges

that, by the time that Chiesi allegedly launched the scheme alleged in Counts Five, Six, and Seven in 2008, Rajaratnam had already been pursuing his scheme with Ali Far for five years.

United States v. Attanasio, 870 F.2d 809 (2d Cir. 1989), and United States v. Saad, 380 F. Supp. 2d 286 (S.D.N.Y. 2005), are also distinguishable. The indictments in those cases charged defendants with offenses in furtherance of a specific common purpose. See Attanasio, 870 F.2d at 815 (various schemes that shared a "common purpose" of hiding co-defendant's income from illegal acts properly joined even though each defendant did not participate in all offenses charged); Saad, 380 F. Supp. 2d at 287-88 (securities fraud charges against CEO and CFO for falsely inflating company's revenues properly joined with charges against CEO alone for underreporting her compensation in SEC filings). Putting aside that a "plan cannot be called 'common' [if one defendant] is the only one alleged to be aware of it", Menashe, 741 F. Supp. at 1138, Counts One and Six allege no more than that both Rajaratnam and Chiesi sought to enrich themselves by trading on inside information. That allegation amounts to little more than that both defendants separately conspired to commit the same offense. This is not a case where the two counts allege a plan to hide specific assets, see Attanasio, 870 F.2d at 815, or inflate the profits of a particular company, see Saad, 380 F. Supp. 2d at 287-88. [5]

---

[5] United States v. Cervone, 907 F.2d 332 (2d Cir. 1990) is also inapposite. The indictment in Cervone alleged a 102-count RICO conspiracy involving bribery of construction union officials by construction company officials. One defendant, Perna, was charged alone with two counts of labor bribery for making payments to a union

## 2. Counts Two and Three

Counts Two and Three have no more in common with Count Five, Count Six or Count Seven than Count One does.  As noted, Count Two alleges that, from January 2006 to July 2007, Rajaratnam conspired with Roomy Khan to trade on the basis of inside information regarding Polycom, Hilton, and Google.  (*See* Indictment at ¶11.)  Count Three alleges that, from 2007 to some time in 2009, Rajaratnam conspired with Rajiv Goel to trade on the basis of inside information regarding Intel.  (*See id.* at ¶ 18.)

Counts Two and Three are improperly joined with Count Five.  Neither Count Two nor Count Three identifies any of the same people as Count Five: Count Two identifies Rajaratnam and Khan and Count Three identifies Rajaratnam and Goel, but Count Five identifies Chiesi and CC-1.  Both Count Two and Count Three involve information about different companies than the companies whose information is at issue

---

official whose acceptance of the payments was charged as one of the predicate acts in the RICO conspiracy.  Though this "link between Perna and the rest of the defendants [wa]s somewhat tenuous," the Second Circuit affirmed joinder.  *Cervone*, 907 F.2d at 341.

*Cervone*, however, is distinguishable on the ground that, almost by definition, a RICO organization is one whose members share a common criminal purpose; the organization is one grand conspiracy.  As such, Perna's combination with a top union official necessarily associated Perna with a common plan.  *Cf. United States v. Garcia,* 848 F.2d 1324, 1333 (2d Cir. 1988), *rev'd on other grounds*, *Gomez v. United States*, 490 U.S. 858 (1989) ("[A]ll of the counts in the indictment concerning the non-RICO appellants were charged also in the RICO count as predicate racketeering acts against [other defendants].  Joinder of these defendants in the same indictment was therefore proper under Fed. R. Crim. P. 8(b), even though multiple conspiracies were charged and even though some defendants were not named in all the conspiracy counts, which also constituted RICO predicate offenses, or in the overarching RICO count.")  "Indeed, a construction of Rule 8(b) that required a closer relationship between transactions than that necessary to establish a 'pattern of racketeering activity' under RICO might possibly prohibit joinder in circumstances where Congress clearly envisioned a single trial." *United States v. Weisman*, 624 F.2d 1118, 1129 (2d Cir. 1980), *cert. denied*, 449 U.S. 871 (1980).

in Count Five: Count Two relates to trading in Polycom, Hilton, and Google and Count

Three relates to trading in Intel, but Count Five alleges trading in IMB, AMD, Sun, and

"other companies."  No other count in the Indictment describes any other similarity

between either Count Two or Count Three, on the one hand, and Count Five on the other.

In fact, Counts Three and Five do not even overlap in time.  Count Three alleges that the

Rajaratnam-Goel scheme ended in 2007—before the scheme involving Chiesi and CC-1

alleged in Count Five even began.   That is further evidence that joinder is improper.  *See*

*Giraldo*, 859 F. Supp. at 54.

  Counts Two and Three are also improperly joined with Count Seven.  Count

Seven involves Chiesi and Kurland, but not Rajaratnam, Khan or Goel.  Count Seven

alleges insider trading regarding IMB, AMD, Sun Microsystems, and "other companies";

Count Two alleges insider trading regarding Polycom, Hilton, and Google and Count

Three alleges insider trading regarding Intel.  Again, the fact that all three counts charge

insider trading conspiracies is not a basis for joinder under Rule 8(b), *see Turoff*, 853

F.2d at 1042, particularly where Count Seven alleges that the Chiesi-Kurland Scheme did

not begin until after the scheme alleged in Count Three had ended.   *See Giraldo*, 859 F.

Supp. at 54.

  Finally, Counts Two and Three are also improperly joined with Count Six.  All

three counts charge conspiracies involving Rajaratnam, but "the mere existence of

similarities between some of the actors or some of the crimes committed will not suffice"

for joinder under Rule 8(b).  *Carrozza*, 728 F. Supp. at 270.  Neither Count Two nor

Count Three even mentions Chiesi, so, on the face of the indictment, Chiesi "had no

involvement in the other schemes charged" for purposes of a comparison with Count Six. *Lech*, 161 F.R.D. at 257.  Nothing elsewhere in the Indictment alleges that Chiesi even knew anything about Counts Two or Three.  Hence any plan Rajaratnam may have had with respect to these counts "cannot be called 'common', since he is the only one alleged to be aware of it."  *Menashe*, 741 F. Supp. at 1138; *see also Kouzmine*, 921 F. Supp. at 1133.  Moreover, Count Six alleges that the Chiesi-Rajaratnam scheme did not begin until 2008—a year after the Rajaratnam-Goel scheme had ended.  Since the Indictment does not indicate any "substantial identity of facts or participants" or "a common plan or scheme", Counts Two and Three and improperly joined with Count Six.[6]

### 3.  Count Four

Whether Count Four is properly joined with any of the counts charging Chiesi presents a closer question.  Count Four alleges that, from some time in 2003 to October 2009, Rajaratnam conspired with Anil Kumar to trade on the basis of inside information regarding AMD, ATI and eBay.  (*See* Indictment at ¶ 25.)  Count Four has something more in common with Count Six than any of Counts One, Two, or Three because both Count Four and Count Six allege that Kumar passed inside information regarding AMD to Rajaratnam.  Count Six adds the allegation that Rajaratnam passed some information regarding AMD he had received from Kumar on to Chiesi and that Chiesi traded on that

---

[6] For the same reason that Counts Two and Three are improperly joined with Counts Five, Six, and Seven, Counts Two and Three are improperly joined with Counts Ten, Thirteen, and Fifteen and also improperly joined with Counts Eleven, Twelve, Fourteen, and Sixteen.  Likewise, those counts are improperly joined with Counts Eight, Nine, Seventeen and Nineteen, the substantive counts of insider trading in Intel, Clearwire, and PeopleSupport associated with Count Three.

information.  (*See id.* at ¶ 38.)  Hence in order to prove both Counts Four and Six against

Rajaratnam and Count Six against Chiesi, the government will introduce evidence that

Kumar had duties of trust and confidence to AMD and that Kumar violated those duties

by passing inside information to Rajaratnam.  That is, evidence at the trial of one offense

in some part "would essentially duplicate the evidence at the other."  *Feyrer*, 33 F.3d at

114.  Moreover, in proving Count Six, the government will introduce evidence that

Chiesi traded on information that she received from Rajaratnam by way of Kumar that

she "knew had been misappropriated in breach of the duties of confidentiality."

(Indictment at ¶ 41.)  Therefore, this is not a case where "at most, [s]he had cursory

knowledge of the other criminal activities…."  *Lech*, 161 F.R.D. at 257.  Rather, given

that "[a] *quid pro quo* was exchanged between the[] participants" in Counts Four and Six,

it seems more likely that "one scheme stemmed from the other" or was "part and parcel"

of the other.  *Turoff*,  853 F.2d at 1044.

Rajaratnam argues that there is no allegation in the Indictment that the

information Rajaratnam allegedly passed to Chiesi in Count Six was among the

information that Count Four alleges Rajaratnam received from Kumar.  (*See* Rajaratnam

Reply Br. at 4.)  It is, of course, possible that Count Four charges Rajaratnam with

receiving different information than he is charged with receiving and passing on in Count

Six.  But insisting on that level of specificity loses sight of the balance implicit in Rule

8(b).  The test for joinder "[can]not [be] so all-encompassing as substantially to prejudice

the accused" but it also "must be broad enough to maintain 'efficient' justice…."  *Turoff*,

853 F.2d at 1039.  Hence courts do not ask whether two counts charge identical conduct

but instead apply "a common sense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice…." *Rittweger*, 524 F.3d at 177 (internal quotation marks omitted).  Joinder of Counts Four and Six properly strikes that balance.[7]

It follows that Counts Four and Five are also properly joined.  That might not be apparent on the face of these counts considered in isolation.  Indeed, Counts Four and Five do not identify any of the same people: Count Four identifies Rajaratnam and Kumar; Count Five identifies Chiesi and CC-1.  The two counts also involve different companies: Count Four involves ATI and eBay while the scheme alleged in Count Five does not and that scheme also involves Akamai, IBM, and Sun while the scheme alleged in Count For does not.  Both Counts Four and Five do at least in part allege schemes to trade on inside information regarding AMD, but that fact alone does not mean that Counts Four and Five are properly joined.   Had Counts Four and Five charged conspiracies to sell cocaine rather than inside information, there would be no case for joinder on the ground that both charged defendants were selling the same illegal drug, even if the conspiracies allegedly involved one common individual.  *See Giraldo*, 859 F. Supp. at 54.  But Counts Four and Five do not even share that much and severance cannot turn on whether the indictment charges schemes to sell information or drugs.

---

[7] For the same reason, Count Eighteen is properly joined with Counts Ten, Thirteen, and Fifteen.

However, where Counts Four and Six are properly joined, looking at Counts Four and Five alone defies "common sense." *Feyrer*, 333 F.3d at 114. With respect to Counts One, Two, and Three, nothing elsewhere on the face of the Indictment referred to any of the allegations made in those counts. Accordingly, comparing those counts to others in isolation was no different than reading the indictment as a whole. That is not the case with respect to Counts Four, Five, and Six. Count Six alleges that Chiesi received some information regarding AMD from CC-1; that Chiesi passed that information to Rajaratnam; and that Rajaratnam traded on the basis of that information which he "knew had been misappropriated in breach of the duties of confidentiality." (Indictment at ¶ 41.) Thus, language on the face of the Indictment alleges that Rajaratnam knew about a scheme identical to the one charged in Count Five.

That distinguishes the comparison between Count Four and Count Five from the above comparisons of Counts One, Two, and Three to Count Five. Nothing in the Indictment alleged that Chiesi knew anything about those counts. Where the government can try Rajaratnam and Chiesi together for Counts Four and Six, and Count Six alleges that Rajaratnam knew about and benefitted from either the conspiracy alleged in Count Five or one identical to it, "joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice…." *Rittweger*, 524 F.3d at 177.

The same is true for Counts Four and Seven.[8]  To prove Count Seven, the government will introduce much of the same evidence to prove Counts Five and Six, namely, evidence that Chiesi received some information regarding AMD from CC-1 and some information from the Akamai Source.  Count Six alleges that Rajaratnam knew those facts and received information from the same sources.  Of course, proving Count Seven would also involve showing that Chiesi passed information to Kurland as well as to Rajaratnam—facts that are hardly on all fours with a Rajaratnam-Kumar scheme involving AMD, ATI, and eBay.  Nor is there any allegation in the Indictment that Rajaratnam knew that Chiesi tipped Kurland as well as himself.   And it is a fine distinction between concluding, on the one hand, that Chiesi's ignorance that Rajaratnam also had other tippers *is* fatal to severance, and, on the other, that Rajaratnam's ignorance that Chiesi also tipped others *is not* fatal to severance.

But the test for joinder in this Circuit requires "a *substantial* identity of facts" not a perfect identity of facts.  *Cervone*, 907 F.2d at 341 (emphasis added).  That is because the standard "must be broad enough to maintain 'efficient' justice…."  *Turoff*, 853 F.2d at 1039.  Hence joinder is proper where "[p]roof of one scheme [i]s helpful to a full understanding of the other."  *Biaggi*, 909 F.2d at 676.  Since Counts Five and Six allege essentially the same schemes involving Chiesi and CC-1 and the Akamai Source, proving those schemes would be helpful in understanding what is at least an identical if not the same scheme alleged in Count Seven.   And given that the government can try counts

---

[8] For the same reasons discussed below, Count Eighteen is properly joined with Counts Eleven, Twelve, Fourteen, and Sixteen.

Five and Six with Count Four, severing Count Seven from Count Four would require the government to prove most of Count Seven twice: once at a trial of Counts Four, Five, and Six and again at a trial of Count Seven alone. But "[t]he government should not be put to the task of proving what is essentially the same set of facts more than once." *Halper*, 590 F.2d at 430.

That distinguishes joinder of Count Four with Count Seven from joinder of Counts One, Two, and Three with Count Five, Six, or Seven. The fact that Counts Four, Five, and Six are properly joined does not make adding Count One, Two, or Three any more efficient. Given that those counts involve sources and companies that have nothing in common with any of the other charges, the government would prove virtually the entirety of those charges separately. Severing Counts One, Two, and Three from the others therefore reflects that Rajaratnam "performed the overwhelming majority of his illegal transactions independently", *Carrozza*, 728 F. Supp. at 271, whereas Chiesi's solo tipping of Kurland is only a fraction of the allegations against her with which Rajaratnam is connected. Since the "core" of the properly joined charges here involves allegations regarding tipping by two sources, Rule 8(b) does not require severance of a count that includes those allegations merely because it also makes other allegations. *See Biaggi*, 909 F.2d at 676 (affirming joinder of tax charges related to extortion and bribery conspiracy involving co-defendants with tax charges against only one defendant unrelated to the same extortion conspiracy).

### 4. Count Five

As discussed above, Count Five is properly joined with Count Four and defendants do not contest that Count Five is properly joined with Count Seven.  As also discussed above, Count Five is not properly joined with Counts One, Two and Three.  It remains to be determined whether Count Five is properly joined with Count Six.

Count Five is properly joined with Count Six for the same reason that Count Four is properly joined with Count Six.  Count Five alleges that, from August 2008 to April 2009, Chiesi conspired with CC-1, a former employee of IBM, and others, to trade on inside information regarding IBM, AMD, Sun, and "other companies." (Indictment at ¶¶ 31-32.)  Count Six also makes this allegation and adds the allegation that Chiesi passed some information regarding AMD to Rajaratnam and that Rajaratnam traded on that information.  (*See id.* at ¶ 38.)  Hence in order to prove both Count Five against Chiesi and Count Six against Rajaratnam, the government will introduce evidence that CC-1 had duties of trust and confidence to AMD and that CC-1 violated those duties by passing inside information to Chiesi.  And, as noted above, in proving Count Six, the government will introduce evidence that Rajaratnam traded on information that he received from Chiesi via CC-1 that he "knew had been misappropriated in breach of the duties of confidentiality." (Indictment at ¶ 41.)  Therefore, this is not a case where "at most, he had cursory knowledge of the other criminal activities…." *Lech*, 161 F.R.D. at 257.  Rather, both counts share "a substantial identity of facts or participants" and are properly joined.

### 5.   Count Six

As noted above, Count Six is properly joined with Counts Four and Five but not properly joined with Counts One, Two, and Three.  It remains to be determined whether Count Six is properly joined with Count Seven.  The answer to that question is yes because those counts have even more in common than Counts Five and Six.  Not only do they both allege that Chiesi received information from CC-1 regarding AMD in violation of a duty of trust and confidence, but both allege that Chiesi received information from the Akamai Source in violation of a duty of trust and confidence.  If the fact that Count Seven also alleges that Chiesi tipped Kurland and also involves IBM and Sun is not fatal to joinder of Counts Five and Seven, it is not fatal to joinder of Counts Six and Seven that have more in common.  Again, Rule 8(b) does not require a perfect identity of allegations but instead embodies a balance between efficient justice and minimal prejudice.  Where Counts Five and Seven share a common core of allegations regarding tipping by the same two sources regarding the same companies, joinder strikes the required balance.

### 6.   Count Seven

As discussed above, Count Seven is improperly joined with Counts One, Two, and Three but properly joined with Counts Four, Five and Six.

### B.  Rule 14

Joinder of Counts Four, Five, Six and Seven (and their associated substantive counts) is nevertheless improper "[if] it appears that a defendant or the government is prejudiced by joinder."  Fed. R. Crim. P. 14(a).   That assessment necessarily depends on the evidence likely to be introduced at trial.   However, neither Rajaratnam nor Chiesi has

demonstrated "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Both Rajaratnam and Chiesi argue that they will be prejudiced by the admission of so-called "spillover" evidence, that is, evidence admissible against one defendant but not the other. They argue that the danger is particularly acute given the size and scope of the evidence the government intends to introduce against Rajaratnam. (*See, e.g.*, Chiesi Br. at 13.) Having concluded that Rule 8(b) requires severance of Counts One, Two, and Three, the Court need not address their joinder under Rule 14. But it is worth noting that defendants' Rule 14 arguments are well taken with respect to Counts One, Two, and Three. Those charges have nothing to do with Chiesi and involve dozens of different stocks and multiple other sources. Trying those charges with the others would create the risk that "[t]he jury is subjected to weeks of trial dealing with dozens of incidents of criminal misconduct which do not involve [Chiesi] in any way" such that "mounting proof of the guilt of one is likely to affect another." *United States v. Branker*, 395 F.2d 881, 888 (2d Cir. 1968) (quotation marks omitted).

However, the same arguments are misplaced where "much of the evidence about [one defendant's] crimes would have been admissible at a separate trial of [the other], since it was relevant to proving the nature and scope of the conspiracy in which both were, to differing degrees, involved." *United States v. Spinelli*, 352 F.3d 48, 55-56 (2d Cir. 2003); *see also United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) ("A defendant's claim that he was prejudiced by the admission of evidence at a joint

conspiracy trial is insupportable when the evidence would have been admissible against him in a separate trial alone as a member of the conspiracy.").   That is the case with respect to Counts Four, Five, Six, and Seven.  Evidence that (a) Kumar obtained information regarding AMD in violation of a duty of trust and confidence and (b) passed that information to Rajaratnam appears probative of both the charges against Rajaratnam in Count Four and the charges against Chiesi in Count Six.  Similarly, evidence that (a) CC-1 and the Akamai Source obtained information regarding AMD and Akamai in violation of duties of trust and confidence and (b) passed that information to Chiesi appears probative of both the charges against Chiesi in Counts Five, Six and Seven and the charges against Rajaratnam in Count Six.  Presenting this evidence at a joint trial is unlikely to prejudice either defendant.  *See Rosa*, 11 F.3d at 341.

That is not to say that *all* the evidence against one defendant will be admissible against the other.  But "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *Carson,* 702 F.2d at 367.  As noted, limiting instructions may be sufficient to address any prejudicial spillover that may result from a multi-defendant, multi-count trial.  *See Santiago*, 174 F. Supp. 2d at 22.

A limiting instruction is particularly likely to prevent any prejudice where much of the evidence that Kumar tipped Rajaratnam and/or that CC-1 or the Akamai Source tipped Chiesi will be presented in the form of wiretaps.  *See Cervone*, 907 F.3d at 342 (finding that indictment where charges "were based largely on recorded phone calls…was not a case…in which spillover might influence a jury to attribute criminal intent to ambiguous conduct associating a particular defendant with a conspiracy").

What is more, proof that Rajaratnam and/or Chiesi actually traded or caused others to trade on the basis of inside information should consist largely of trading records.  Those records themselves should distinguish between the stocks and persons involved.   While some risk of prejudice exists in the joint trial of any defendants charged, in part, with separate crimes, the Court is not persuaded here that there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

*      *      *      *

In a joint trial of Rajaratnam and Chiesi, conspiracy Counts One, Two, and Three can be joined with each other but are improperly joined with conspiracy Counts Four, Five, Six, and Seven, all of which may be tried together.  As a result, Counts One, Two, and Three (as well as substantive Counts Eight, Nine, Seventeen, and Nineteen) must be severed from Counts Four, Five, Six and Seven (and substantive Counts Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Eighteen).  In the alternative, the government could separately try Rajaratnam on Counts One, Two, Three, Four and Six (and related substantive counts), while trying Chiesi separately on Counts Five, Six, and Seven (and related substantive counts).  The Court therefore invites the parties to promptly submit their views on which course to choose for the trial of the charges in this case.

**CONCLUSION**

For the reasons above, defendants' motions **[50, 55]** to sever the Indictment are

GRANTED in part and DENIED in part.

SO ORDERED.

Dated: New York, New York

November **24**, 2010

Richard J. Holwell

United States District Judge