UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

RAJ RAJARATNAM,

Defendant.

S2 09 Cr. 1184 (RJH)

**MEMORANDUM**
**OPINION AND ORDER**

Richard J. Holwell, District Judge:

Before the Court is a motion by defendant Raj Rajaratnam and third party Galleon Management LP ("Galleon") for an order denying the government's request for leave to issue a subpoena *duces tecum* to Galleon pursuant to Rule 17 of the Federal Rules of Criminal Procedure. Rajaratnam and Galleon in essence contend that the subpoena should not be issued because the government could have used grand jury subpoenas to obtain the documents it now seeks. For the reasons set forth below, the motion is denied.

**BACKGROUND**

Defendant Rajaratnam was arrested on October 16, 2009 pursuant to a criminal complaint that charged him with trading or conspiring to trade in securities on the basis of inside information. The criminal complaint identified seven issuers in whose securities Rajaratnam allegedly traded or conspired to trade. The criminal complaint also alleged that Rajaratnam conspired to trade in the securities of other unidentified issuers.

On October 22, December 4, and December 29, 2009, the government served Galleon with three grand jury subpoenas. Those subpoenas requested, *inter alia*, records of trading in the securities of ten issuers, documents reflecting all communications by

Rajaratnam, documents reflecting compensation to Galleon employees, including Rajaratnam, and documents reflecting payments to five alleged co-conspirators. According to a sworn affidavit filed by the government, counsel for Galleon and the government agreed to certain limits on the documents Galleon would produce in response to the subpoenas, including, for example, producing only documents containing certain search terms. The government made that agreement subject to the proviso that it could request supplemental production.

On December 15, 2009, a grand jury returned an indictment charging Rajaratnam with five counts of conspiracy to commit securities fraud and six counts of securities fraud related to an alleged insider trading scheme at Galleon. The indictment alleged that Rajaratnam traded or conspired to trade in the securities of nine identified issuers, including the seven issuers identified in the criminal complaint. The indictment also alleged that Rajaratnam conspired to trade in the securities of other, unspecified issuers. On February 9, 2010, the grand jury returned a Superseding Indictment alleging that Rajaratnam conspired to trade in the securities of three additional issuers. By letter dated March 22, 2010, the government identified twenty-two issuers in whose securities Rajaratnam allegedly conspired to trade but who were not identified in the Superseding Indictment.

On April 1, 2010, the government served a fourth grand jury subpoena on Galleon requesting communications to and from Galleon employees (other than Rajaratnam) regarding three issuers identified in the March 22, 2010 letter. The subpoena also requested personnel files, employment agreements, and compensation information.

Rajaratnam moved to quash the subpoena on the ground that it was issued for the purpose of obtaining evidence to be used at trial. The Court denied the motion.

On April 16, 2010, Rajaratnam filed a motion for a Bill of Particulars and a separate motion to dismiss Count One of the Superseding Indictment and to "strike" certain details indentified in the March 22, 2010 letter and others following it. In a July 13, 2010 memorandum opinion and order, the Court granted the motion for a Bill of Particulars in part. The government filed a Bill of Particulars on July 26, 2010. In an August 12, 2010 memorandum opinion and order, the Court denied Rajaratnam's motion to dismiss Count One and to strike.

According to the government's sworn affidavit, in November 2010 the government contacted counsel for Galleon to request OMS data for trading in securities of some twenty-two of the issuers identified in the Superseding Indictment and/or in the government's letters to Rajaratnam. OMS data is a form of electronic trading record that identifies the portfolio manager and trader responsible for executing a given trade. According to the government's affidavit, counsel for Galleon promised to begin compiling the data while determining whether the company would demand a subpoena to produce it. Counsel for Galleon later informed the government that Galleon would only produce the requested OMS data in response to a subpoena. At the same time, the government determined that certain e-mails responsive to its 2009 grand jury subpoenas had not been produced.

On January 13, 2011, the government filed an application for leave to issue a subpoena *duces tecum* on Galleon returnable prior to trial pursuant to Rule 17(c) of the

3

Federal Rules of Criminal Procedure. The application enclosed a subpoena signed by the Clerk of Court requesting the following:

    1. OMS data for trading in the securities of sixteen issuers;

    2. Documents regarding Rajaratnam's and three other Galleon employees' investments in and compensation by Galleon;

    3. Documents in which Rajaratnam and/or the three other Galleon employees acknowledged Galleon policies regarding insider trading;

    4. Any and all e-mails sent or received by Rajaratnam in May 2008 regarding Spansion;

    5. Any and all emails sent or received by two Galleon employees (other than Rajaratnam) in July 2007 regarding Hilton; and

    6. Any and all e-mails sent or received by Rajaratnam from January 2005 through June 2005 regarding Integrated Circuits.

On January 21, 2011, Rajaratnam moved [163] for an order denying the government's application. In his memorandum of law in support of the motion, Rajaratnam stated that counsel for Galleon had authorized counsel for Rajaratnam to represent Galleon for purposes of the motion and that Galleon joined in the motion. (Rajaratnam Br. at 1 n.1.)[1]

---

[1] The government appears to suggest that, as a third party, Rajaratnam lacks standing to challenge a subpoena to Galleon. Indeed, "[a] party generally lacks standing to challenge a subpoena issued to a non-party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *United States v. Tucker*, 249 F.R.D. 58, 60 n. 3 (S.D.N.Y. 2008); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."). But the Court need not decide whether Rajaratnam has standing because Galleon, which plainly has standing with respect to a putative subpoena to it, has joined in the motion to quash. Accordingly, the Court will treat the motion as if it were filed by Galleon and will refer to arguments made in support thereof as having been made by Rajaratnam and Galleon.

**LEGAL STANDARD**

A subpoena issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). The Rule provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." *Id.* The Rule further provides that, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974). Rather, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.* at 698-99. Consistent with that limited purpose, "in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699-700. In other words, under the test adopted by the Supreme Court in *Nixon*, the proponent of a subpoena returnable before trial "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700.

## DISCUSSION

Rajaratnam and Galleon do not seriously contest that the proposed subpoena requests documents that are "evidentiary and relevant."  And for good reason: the proposed subpoena requests trading data for trades in furtherance of the alleged conspiracies; documents regarding compensation and investments in Galleon funds that appear relevant to motive; certifications of company policy regarding inside information that seem relevant to scienter; and communications regarding three issuers from time periods when Rajaratnam was allegedly tipped about major events involving those companies.  The requests appear tailored to documents admissible for those purposes.  Thus it is apparent that the government's "application is made in good faith and is not intended as a general 'fishing expedition.'"  *Id.* at 699-700.

Rajaratnam and Galleon argue that the materials sought by the new subpoena were, in fact, "otherwise procurable reasonably in advance of trial by exercise of due diligence," *id.* at 699, because "[t]he government could have requested and obtained these materials from Galleon at any time" but the government "simply never bothered to do so."  (Rajaratnam Br. at 5.)  Accordingly, the second prong of the *Nixon* test is purportedly not satisfied.  Rajaratnam and Galleon contend that, at the time the government served Galleon with three grand jury subpoenas in 2009, the government knew the identities of the issuers later identified in the Superseding Indictment and the March 22, 2010 letter.  Rajaratnam and Galleon also argue that the government knew the identities of those issuers on April 1, 2010 when the government served Galleon with a fourth grand jury subpoena.  In short, Rajaratnam and Galleon contend that the government has forfeited its chance to subpoena the documents it now requests.

6

That argument is at odds with the most logical meaning of the *Nixon* test.  That test requires a showing that the documents to be returned before trial "are not otherwise procurable reasonably in advance of trial by exercise of due diligence."  *Nixon*, 418 U.S. at 699.  As the government contends, the phrase "are otherwise procurable" suggests an inquiry into what else the government could presently do to obtain the requested documents, not what the government could have done before the grand jury.

Measuring Rajaratnam and Galleon's contrary reading against background principles governing grand jury and trial subpoenas confirms that the government's interpretation is the correct one.  "A grand jury subpoena is . . . much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged."  *United States v. R. Enter., Inc.*, 498 U.S. 292, 297 (1991).  "In the grand jury context, the decision as to what offense will be charged is routinely not made until after the grand jury has concluded its investigation."  *Id.* at 300.  For that reason, the Supreme Court has held that the *Nixon* standard does not apply to grand jury subpoenas.  *See id.* at 299.   True, the Supreme Court has not held that the grand jury process is irrelevant to whether the government has exercised due diligence under *Nixon*.  But there is little foundation for a contrary rule where the basis for treating grand jury and trial subpoenas differently is that "[o]ne simply cannot know in advance whether information sought during the investigation will be relevant and admissible in a prosecution for a particular offense."  *Id.*  That fact has led the Supreme Court to eschew "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and

frustrate the public's interest in the fair and expeditious administration of the criminal laws." *Id.* at 297.

Yet saddling the government here with the burden of requesting all documents during the grand jury investigation or losing the chance to subpoena them under Rule 17(c) would be just such a holding.  As Rajaratnam argued in moving to quash the government's April 1, 2010 subpoena, "[i]t is . . . improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial under a pending indictment."  *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994).  Thus Rajaratnam's rule would put the government between a rock and a hard place with respect to grand jury subpoenas:  the government would have to request enough documents that it might want to use at trial to avoid forfeiting the chance to obtain them under Rule 17(c), but not so many documents as to turn a grand jury subpoena into a trial subpoena.  And the government would have to strike that delicate balance before it knows what defendants will be tried for what offenses.  Requiring such calculations would surely hamper the grand jury, "the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation," and whose "investigative power must be broad if its public responsibility is adequately to be discharged."  *United States v. Calandra*, 414 U.S. 338, 343-44 (1974).

Rajaratnam and Galleon also argue that the government has not shown that it "cannot properly prepare for trial without . . . production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial."  They contend that, in responding to Rajaratnam's motion for a Bill of Particulars, the government argued that it did not need to identify particular trades in order to

prosecute Rajaratnam for conspiring to trade. (Rajaratnam Br. at 6.) Rajaratnam and Galleon again accuse the government of sitting on its hands when the government has been aware since at least July 2010, when it filed a Bill of Particulars, that it did not know whether Rajaratnam had actually traded securities of the issuers in whose securities he allegedly conspired to trade. (*See id.*)

These arguments are misplaced. Each of the indictments in this action has charged certain trades by Galleon as overt acts in furtherance of the alleged conspiracies. (*See* Indictment ¶¶ 15, 22, 29; 1st Superseding Indictment ¶¶ 15, 22, 29; 2nd Superseding Indictment ¶¶ 14, 21, 28, 35.) The government has not disclaimed any intention to prove those trades. What the government argued in response to Rajaratnam's motion for a Bill of Particulars was that it was not required to detail every trade at that time, not that evidence of trading was irrelevant to proving the alleged conspiracies to trade. Indeed, Rajaratnam implicitly recognizes that evidence of trading is relevant when he argues in motions *in limine* that such evidence is *required* to prove conspiracy to trade. (*See* Mem. in Supp. of Trial Obj. to Certain Anticipated Evid. Regarding Information Allegedly Conveyed to Def., Jan. 26, 2011, at 13-16.)[2]

Yet even if the government had disclaimed any intention to offer evidence of trading, treating such a disclaimer as a concession that the government *could* proceed to trial without evidence of trading would not be a reason to deny the government's application. With respect to the third *Nixon* requirement, "the issue the Supreme Court there addressed was not whether a party could go to trial without the evidence . . . but whether pretrial enforcement is appropriate in order to avoid unreasonable delay in the

---

[2] The Court expresses no opinion on the merits of that argument.

9

trial." *United States v. Scala*, 432 F. Supp. 2d 395, 402 (S.D.N.Y. 2006) (Kaplan, J.). Accordingly, "the issue is whether the government would be prepared 'properly' absent enforcement of the subpoena." *Id.* In addressing that issue, it cannot be gainsaid that "[t]here is a powerful public interest in the trial jury having all relevant evidence in order to determine whether [the defendant] has committed the serious crimes with which he is charged." *Id.* Against that background, where OMS data is relevant to proving trading in furtherance of the alleged conspiracies, and using that data will expedite the trial by more clearly presenting evidence of trading, the third *Nixon* requirement is satisfied.[3]

---

[3] Rajaratnam and Galleon raise two other points. First, they argue that, because the proposed subpoena generally requests documents regarding issuers that are not identified in the Second Superseding Indictment, the government has subverted the grand jury process. Rajaratnam made a similar argument in his motion [75] to strike and to dismiss Count One of the indictment. For the reasons set forth in the Court's Memorandum Opinion and Order [131] dated August 12, 2010 denying the motion, the same argument lacks merit here.

Rajaratnam and Galleon also contend that if the government needs trading data to prepare for trial, it cannot have been true that, as the government argued at a hearing on Rajaratnam's motion to suppress Title III material, trading data was not likely to succeed in building a case against Rajaratnam. That argument, too, lacks merit. There is no inconsistency between arguing, on the one hand, that trading data had not revealed the full scope of the alleged insider trading conspiracy and, on the other, that trading data is further proof of a conspiracy whose full scope has been revealed.

## CONCLUSION

For the reasons stated above, defendant Rajaratnam's motion [163] for an order denying the government's application to issue a subpoena *duces tecum* to Galleon is DENIED. The government's application for leave to issue the subpoena enclosed in its January 13, 2011 letter is GRANTED.

SO ORDERED.

Dated: New York, New York
February 2, 2011

Richard J. Holwell
United States District Judge