UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   v.

RAJ RAJARATNAM,

      Defendant.

S2 09 Cr. 1184 (RJH)

**MEMORANDUM**
**OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

  Before the Court is a motion by third party Richard Choo-Beng Lee ("Lee") to quash a subpoena *duces tecum* served upon him by defendant Raj Rajaratnam pursuant to Rule 17 of the Federal Rules of Criminal Procedure.  Lee argues that several of the requests in the subpoena are overbroad and/or call for certain tax records that are protected from disclosure pursuant to privileges under state law.  For the reasons set forth below, the motion is denied.

## LEGAL STANDARD

  A subpoena issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates."  Fed. R. Crim. P. 17(c)(1).  The Rule provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence."  *Id.*  The Rule further provides that, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(2).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974). Rather, "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id.* at 698-99. Consistent with that limited purpose, "in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699-700. In other words, under the test adopted by the Supreme Court in *Nixon*, the proponent of a subpoena returnable before trial "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700.[1]

---

[1] Rajaratnam suggests that the *Nixon* test applies only to subpoenas served on a party and that a different test should apply to subpoenas issued to third parties. For that proposition, Rajaratnam cites Judge Scheindlin's decision in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008).

In *Tucker*, in the course of ruling on a motion to quash a Rule 17 subpoena issued to the Bureau of Prisons, a third party, Judge Scheindlin noted that the Supreme Court in *Nixon* expressly reserved the question of whether the test adopted therein applied to subpoenas issued to third parties. *See id.* at 65 (citing *Nixon*, 418 U.S. at 699 n. 12 ("The Special Prosecutor suggests that the evidentiary requirement . . . does not apply in its full vigor when the subpoena duces tecum is issued to third parties rather than to government prosecutors. We need not decide whether a lower standard exists because we are satisfied that the relevance and evidentiary nature of the subpoenaed tapes were sufficiently shown as a preliminary matter to warrant the District Court's refusal to quash the subpoena.") (internal citation omitted)). Citing concerns about whether a restrictive test for a subpoena could impair a defendant's rights to compulsory process under the Sixth Amendment, Judge Scheindlin found that, in order to issue a Rule 17(c) subpoena *duces tecum* returnable prior to trial, a defendant "need only show that the request is (1)

2

reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond."  *Id.* at 66.

The Court is unaware of any other decision applying a test less restrictive than the *Nixon* test to a Rule 17(c) subpoena issued to a third party, and need not apply the test Judge Scheindlin applied in *Tucker* because it concludes that the subpoenas here satisfy the *Nixon* test.  But the compulsory process rights at stake merit some discussion.

For the proposition that Rule 17(c) "was not intended to provide a means of discovery for criminal cases," *Nixon*, 418 U.S. at 698, that forms the rationale for the *Nixon* test, the *Nixon* court cited *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951).  The *Bowman* court stated that "Rule 17(c) was not intended to provide an additional means of discovery.  Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."  *Id.* at 220.  Yet *Bowman* was a case regarding a subpoena by the defendant to the government, and the court's chief concern appeared to be distinguishing Rule 17 from Rule 16, which requires reciprocal disclosure of, *inter alia*, documents "material to preparing the defense" and materials the government and a defendant intend to use in their cases in chief.  Fed. R. Crim. P. 16(a)(1)(E).  With respect to such materials, "Rule 16 provides the only way the defendant can reach such materials so as to inform himself."  *Bowman Dairy Co.*, 341 U.S. at 219.

However, the *Bowman Dairy* court also recognized that

> if such materials or any part of them are not put in evidence by the Government, the defendant may subpoena them under Rule 17(c) and use them himself. It would be strange indeed if the defendant discovered some evidence by the use of Rule 16 which the Government was not going to introduce and yet could not require its production by Rule 17(c). There may be documents and other materials in the possession of the Government not subject to Rule 16.  No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary.

*Id.*  And the court added: "That is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a good-faith effort be made *to obtain evidence*."  *Id.* at 219-20 (emphasis added).  True, the *Bowman Dairy* court recognized that "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms," and "Rule 17(c) was not intended to provide an additional means of discovery."  *Id.* at 220.  But the court also noted that "the plain words of the Rule are not to be ignored" and "must be given their ordinary meaning to carry out the purpose of establishing *a more liberal policy* for the production, inspection and use of materials at the trial."  *Id.* (emphasis added).  The *Bowman Dairy* court added that "[t]here was no intention to exclude from the reach of process of the defendant any material that . . . could be used at the trial."  *Id.* at 221.

3

Moreover, in a footnote to the above passage, the *Bowman Dairy* court quoted a statement of the Advisory Committee on the Federal Rules of Criminal Procedure describing the Rule as "a provision . . . that the court may, in the proper case, direct that [documents] be brought into court in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose of course of enabling the party to see *whether he can use it or whether he wants to use it.*'" *Id.* at 220 n.5 (emphasis added); *see also Nixon*, 418 U.S. at 699 n.11 (quoting the same).

This context suggests that the *Bowman Dairy* court interpreted Rule 17 as neither a discovery device to examine documents for whatever might turn up, nor as a mechanism to obtain documents that a defendant can identify in advance, but rather a way for a defendant to examine documents he believes to exist that would be relevant to, and therefore presumptively admissible in, his defense. *Cf.* Fed. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided . . . ."). The "admissibility" prong of the *Nixon* test seems consistent with that interpretation, since the *Nixon* court referred to "potential evidentiary uses" in applying the "admissibility" requirement. *Id.* But the "specificity" prong of the *Nixon* test is somewhat more complicated if Rule 17 is a way for a defendant to obtain documents relevant to his defense without knowing exactly what the documents are. In the context of a subpoena to the government, whom Rule 16 already requires to turn over any "item [that] is material to preparing the defense," Fed. R. Crim. P. 16(a)(1)(E)(i), the "specificity" prong makes sense because "its function is to prevent the 'exception' (i.e., the broad language of Rule 17(c)) from swallowing the 'rule' (i.e., the Rule 16 limitations on the discovery available to criminal defendants)." *United State v. Stein*, 488 F. Supp. 2d 350, 366 (S.D.N.Y. 2007) (Kaplan, J.)  Indeed, the "*Nixon* standard exists to reconcile the broad language of Rule 17(c) with the limitations on pretrial discovery inherent in the far narrower language of Rule 16." *Id*.

But "it is vitally important never to let the frequent repetition of a familiar principle obscure its origins and thus lead to mindless application in circumstances to which the principle never was intended to apply." *Id.* at 365.  So, too, "*Nixon* should not so readily be divorced from the concerns that produced it." *Id.*  Yet in the context of a subpoena to a third party to whom Rule 16 does not apply, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity. *Cf.* Robert G. Morvillo *et al., Motion Denied: Systematic Impediments to White Collar Criminal Defendants' Trial Preparation,* 42 Am. Crim. L. Rev. 157, 160 n. 12 (2005) ("[C]ourts have interpreted 17(c) so narrowly that it is rarely useful to criminal defendants, and instead serves as an additional tool for the prosecution."). "It is extraordinarily difficult for a defendant, who has limited ability to investigate, to know enough about the discovery he is seeking such that he can comply with the *Nixon* requirements." *Id.*  Judge Schiendlin's "material to the defense" would insure that the defendant has a right to obtain evidentiary material from a third party that is no broader— but also no narrower—than the defendant's right to obtain such material from the government.  *Cf.* Fed. R. Crim. P. 16(a)(1)(E) (requiring government to turn over to defendant all documents  "material to preparing the defense").

4

**DISCUSSION**

Lee objects to several requests on the ground that, in some respects, the requests do not call for "documents [that] are evidentiary and relevant" but are instead "intended as a general fishing expedition." *Id.* at 699-700.  First, Lee objects to Request Number 2 which calls for "[a]ll documents reflecting communications between [Lee] and Raj Rajaratnam, Danielle Chiesi, any agent or employee of Galleon, Ali Hariri, Sam Miri, Mohammed Reza Eltejaein, Eric Rothdeutsch, Ali Foughi, or Mansour Izidinia . . . ."  Lee argues that application of the request to documents reflecting communications between Lee and "any agent or employee of Galleon . . . . takes it out of the realm of what is relevant and into the ambit of an improper fishing expedition for discovery purposes."  (Lee Br. 2.)  That is not so.  The Second Superseding Indictment in this action alleges that Rajaratnam, "certain then-current Galleon employees, certain former Galleon employees, and others known and unknown" conspired to trade on the basis of inside information." (2d Superseding Indictment ¶ 3.)

---

At bottom, a "material to the defense" standard would also make it far easier to reconcile the article of faith that parties in civil actions may resort to nearly unbounded discovery with the oft-quoted statement that Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698.  While the procedures are of course distinct, it remains ironic that a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), while a defendant on trial for his life or liberty does not even have the right to obtain documents "material to his defense" from those same third-parties.  Applying a materiality standard to subpoenas *duces tecum* issued to third parties under Federal Rule of Criminal Procedure 17(c) would resolve that puzzle at great benefit to the rights of defendants to compulsory process and at little cost to the enforcement of the criminal law, since Rule 17(c) permits the government to issue subpoenas as well.

Second, Lee objects to Request Number 8 which calls for "[a]ll documents or other communications reflecting the payment of money or anything of value, in any form, made by or directed by [Lee] directly or indirectly to or for the benefit of Ali Hariri, Sam Miri, Mohammed Reza Eltejaein, Ali Foughi, Mansour Izidinia, Behrouz Zali, Farshad Shakib, or Timothy O'Neil, and any documents related to such payment." Lee argues that "[t]he language of the request itself makes clear that it is being used as a discovery device." (Lee Br. 2.) Again, not so. In this case, the government alleges that Lee was an "intermediate tipper" of information he received from inside sources and passed to Rajaratnam. In such a situation, "the initial inquiry is whether there has been a breach of duty by the insider" and "[t]his requires courts to focus on objective criteria, *i.e.,* whether the insider receives a direct or indirect personal benefit from the disclosure, such as a pecuniary gain or a reputational benefit that will translate into future earnings." *Dirks v. SEC*, 463 U.S. 646, 663 (1983). Thus there are "potential evidentiary uses" to documents showing whether Lee compensated any persons that Rajaratnam may believe were his sources of information.

The same is true with respect to three other requests to which Lee objects. Request Number 4 calls for "[d]ocuments sufficient to show [Lee's] compensation from Spherix Capital, including base salary and any bonuses." Request Number 5 calls for Lee's federal, state, and foreign tax returns that "reflect any benefit, direct or indirect, made or directed to [Lee] by Raj Rajaratnam, Galleon or any agent thereof."[2] And, similarly, Request Number 6 calls for Lee's financial records regarding such benefits. These documents seem directly relevant to show whether Lee received a benefit for

---

[2] To the extent that a tax return does not reflect any such benefit, that return would not be responsive.

tipping Rajaratnam, a fact that is in turn relevant to whether Lee himself violated any fiduciary duty to the extent he was a source of inside information.

Citing cases holding that tax returns are privileged under state law, Lee also argues that "[t]o the extent that the Subpoena seeks financial information including tax returns, it violates [his] right to privacy" under California and New York law.  (Lee Br. 3.)  That argument is misplaced.

Under Rule 501, "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."  Fed. R. Evid. 501.  "In criminal cases, Rule 501 plainly requires that we apply the federal law of privilege."  *In re Grand Jury Investigation*, 399 F.3d 527, 530 (2d Cir. 2005).  Yet the Supreme Court has noted that "although tax returns . . . are made confidential within the government bureau, copies in the hands of the taxpayer are held subject to discovery."  *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218-19 (1961).  Indeed, "the district courts have held in numerous cases that tax returns are subject to discovery in appropriate circumstances."  *Heathman* v. *United States Dist. Court for Central Dist. of California*, 503 F.2d 1032, 1035 (9th Cir. 1974) (affirming order to produce tax returns).  *See also, e.g.*, *Maggio v. Hynes*, 423 F. Supp. 144, 145 (S.D.N.Y. 1976) (citing *Heathman* and concluding that "the copy of plaintiffs' tax return in the possession of their accountant is not privileged"); *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556, 557 (S.D.N.Y. 1964) ("There is no privilege for income tax returns. . . ."); *Conn. Mut. Life Ins. Co. v. Shields*, 18 F.R.D. 448, 451-52 (S.D.N.Y. 1955) (ordering production of tax returns).

Nevertheless, "[a]lthough there is no privilege protecting the production of tax returns, the courts have been reluctant to order routinely their discovery. This historic trend seems to stem in part from the private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns." *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979); *see also United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) (Gleeson, J.) ("[J]udicial consensus is that, while tax returns are not privileged, courts, as a matter of policy, should be cautious in ordering their disclosure."); *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985) (same).

In the civil context, "courts in the past have concluded that the production of tax returns should not be ordered unless it appears they are relevant to the subject matter of the action, and that there is a compelling need therefor because the information contained therein is not otherwise readily obtainable." *Smith*, 83 F.R.D. at 438; *see also Bonanno*, 119 F.R.D. at 627. True, this two-part test reflects a "'balancing of the policy of liberal discovery against the policy of maintaining confidentiality of tax returns,'" *id.* (quoting *Cymaticolor Corp.*, 106 F.R.D. at 547), and Rule 17(c) " was not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698. But discarding the two-part test for that reason would overlook the larger point that tax returns are not protected from discovery where the subpoenaing party can show (1) that the documents requested are important to the case; and (2) the documents are not otherwise obtainable. Here, the Court has already concluded that the requested documents satisfy the more demanding standards of relevance imposed by the *Nixon* test. And the parties do not appear to contest that the documents are "not otherwise procurable reasonably in advance of trial

by exercise of due diligence," a standard that appears at least as stringent as the requirement that documents are "not otherwise readily obtainable." *Smith*, 83 F.R.D. at 438. Accordingly, there is little reason to conclude that Lee's tax returns are privileged under the federal law of privilege.

Still, "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." *Jaffee v. Redmond*, 518 U.S. 1, 12-13 (1996). As Judge Weinstein has put it, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *United States v. King*, 73 F.R.D. 103, 105 (S.D.N.Y. 1976). Nevertheless, "[w]hile as a matter of comity federal courts accord deference to state-created privileges, such privileges are construed narrowly, and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact." *United States v. One Parcel of Property Located at 31-33 York Street, Hartford, Conn.*, 930 F.2d 139, 141 (2d Cir. 1991) (internal quotation marks and citations omitted).

In this case, it is not even clear that either California or New York privilege law must yield. Lee cites no criminal case in which a California or New York court has quashed a subpoena for tax returns. On the contrary, courts in both states have discussed the discoverability of tax returns in terms that suggest returns are not immune from discovery in criminal proceedings. In reaffirming a "privilege against forced disclosure of tax returns," the California Supreme Court has recognized that "[t]he privilege is not absolute" where "a public policy greater than that of confidentiality of tax returns is involved." *Schnabel v. Superior Court*, 5 Cal.4th 704, 720-21 (1993). Citing *Schnabel*

9

and applying that exception, one California has court upheld the admission of a defendant's tax returns where "the trial court ruled that defendant's income was relevant . . . and it is in the public interest to allow the tax return [into] evidence" on the ground that, "[w]hile the tax return privilege is implied in statute, it is subject to public policy exceptions, and full admissibility of relevant evidence in criminal proceedings is the public policy of this state." *People v. Franklin*, Super. Ct. No. 99-25326, 2003 WL 21518916, at *30 (Cal. Ct. App. July 7, 2003) (internal citations and quotation marks omitted). Similarly, another California court considering defendants' subpoena for a third party's tax returns had "no doubt the [defendants'] constitutional rights to due process, a fair trial and confrontation of witnesses are compelling public interests" and concluded that "determination of [the] matter turn[ed] on whether the [defendants] demonstrated the tax returns were directly relevant." *People v. Arana*, Super. Ct. No. BA184426, 2003 WL 21101509, at *4 (Cal. Ct. App. May 15, 2003). Though the court in that case ultimately found that the defendants could not make the required showing, the Court has already concluded that Rajaratnam has made that showing here.

These cases demonstrate that the very body of state law on which Lee relies recognizes a potential exception to the tax return privilege where, as here, the interests in truth and a criminal defendant's rights are both implicated. And the same is true in New York. Under New York law, "tax returns are generally not discoverable in the absence of a strong showing that the information is indispensable to the claim and cannot be obtained from other sources." *DG & A Mgm't Serv., LLC v. Sec. Indus. Ass'n Compliance and Legal Div.*, 910 N.Y.S.2d 242, 245 (3d Dep't 2010); *see also Benfeld v. Fleming Properties, LLC*, 843 N.Y.S.2d 351, 352 (2d Dep't 2007) (same). *Cf. People v.*

10

*Ellman*, 523 N.Y.S.2d 13, 15 (N.Y. City Crim. Ct. 1987) ("[A] defendant need [not] make a showing that the tax records *actually contain* relevant information, but must merely set forth some factual predicate which would make it *reasonably likely* that the income tax returns will provide exculpatory material.") (emphasis added).

In sum, there is no basis to conclude that Lee's tax returns are privileged under either the federal law of privilege or state law.  Since those returns meet the requirements of the *Nixon* test, the returns have been properly subpoenaed.  Nevertheless, given the "policy of maintaining confidentiality of tax returns," *Bonanno*, 119 F.R.D. at 627, Rajaratnam and Lee shall submit a protective order to preserve the confidentiality of Lee's returns.  In addition, the Court shall separately consider any request by Lee for leave to produce redacted returns.

## CONCLUSION

For the reasons stated above, third-party Lee's motion **[190]** to quash the subpoena *duces tecum* served upon him by defendant Rajaratnam is DENIED. Rajaratnam and Lee shall submit a protective order and Lee shall produce all documents requested by the subpoena to the Court and inform the Court when all such documents have been produced.

SO ORDERED.

Dated: New York, New York
       February 15, 2011

                                        _____
                                        Richard J. Holwell
                                        United States District Judge

12