UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

RAJ RAJARATNAM,

Defendant.

S2 09 Cr. 1184 (RJH)

**OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

Before the Court is the government's motion to compel defendant Raj Rajaratnam to immediately disclose (a) the names of any expert witness he intends to call at trial as well as any such expert's qualifications, opinions and the bases for those opinions; and (b) any wiretap or consensually recorded telephone calls that he intends to introduce into evidence at trial. For the reasons set forth below, the government's motion is granted.

## BACKGROUND

In January 2011, Rajaratnam and the government agreed that the government would produce to Rajaratnam on January 26, 2011 materials pursuant to the Jencks Act, 18 U.S.C. § 3500; a list and copies of exhibits; and expert disclosures. Rajaratnam and the government also agreed that Rajaratnam would produce to the government on February 9, 2011 a list and copies of exhibits as well as expert disclosures. The government appears to have produced its Jencks Act material and both parties appear in general to have produced lists and copies of exhibits as per their agreement. However, a dispute remains regarding Rajaratnam's expert disclosures and certain audio recordings.

On January 26, 2011, the government informed Rajaratnam that the government did not intend to call an expert witness in its case-in-chief. On February 10, 2011,

counsel for Rajaratnam wrote to the government indicating that "Rajaratnam declines at this time to produce a summary of expert testimony, as one is not required." (Letter from J. Dowd and T. Lynam to J. Streeter, R. Brodsky, and A. Michaelson, Feb. 9, 2011 (attached to Gov't Mot. as Ex. A) at 2.) Counsel for Rajaratnam stated that "[w]hen we reached our agreement regarding the schedule for disclosure of expert testimony, we did so with the understanding that the government would first 'comply'" within the meaning of Federal Rule of Civil Procedure 16(b)(1)(C)(i) "by producing its expert summary on January 26, 2011, which would trigger our production on February 9, 2011." (*Id.* at 1.) However, because the government informed Rajaratnam that "the government had no expert witness," counsel for Rajaratnam stated that "the government has not 'complied' under the Rule and the defendant is not obligated to provide expert disclosure under Rule 16(b)(1)(C)(i)." (*Id.* at 1.)

In the same February 10 letter, counsel for Rajaratnam stated that they had "not included any wiretapped conversations or consensually-recorded conversations on our exhibit list at this time" but added that they "reserve[d] the right to use any of those materials at trial, which materials are already in the government's possession." (*Id.*)

On February 14, 2011, the government moved [216] to compel Rajaratnam to immediately disclose (a) the names of any expert witness he intends to call at trial as well as any such expert's qualifications, opinions and the bases for those opinions; and (b) any wiretap or consensually recorded telephone calls that he intends to introduce into evidence at trial.

## DISCUSSION

### A. Expert Disclosures

Federal Rules of Evidence 702, 703, and 705 govern the use of expert testimony. Federal Rule of Criminal Procedure 16(b)(1)(C) provides that "[t]he defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies . . . ."  Fed. R. Crim. P. 16(b)(1)(C).  Rule 16(a)(1)(G) provides that, "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial" and that such a summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G).

There is no dispute here that, pursuant to Rule 16(a)(1)(G), Rajaratnam requested a summary of any expert testimony the government intended to offer at trial and that, pursuant to Rule 16(b)(1)(C), the government requested a summary of any expert testimony that Rajaratnam intended to offer at trial.  Nor is there any dispute that the government responded to Rajaratnam's request by stating that the government did not intend to introduce any expert testimony at trial.  The only dispute is whether by making that response, the government complied with Rajaratnam's request within the meaning of Rule 16(b)(1)(C) such that Rajaratnam must respond to the government's request.

In arguing that no response is required, Rajaratnam relies on *United States v. Young*, No. CR-09-140-B-W, 2010 WL 1418748 (D. Me. 2010).  In that case, the

3

defendant requested a summary of any expert testimony that the government intended to introduce at trial. The "Government indicated it had none." *Id.* at * 2. On the day before trial, the defendant notified the government of his intention to call an expert witness at trial. *See id.* at *1. The government moved *in limine* to preclude the defendant from introducing expert testimony on the ground that the defendant had not complied with his obligation under Rule 16(b)(1)(C) to disclose a summary of any expert testimony that he intended to introduce at trial. Reasoning from the premise that "[t]he spirit of Rule 16 . . . is that the discovery is reciprocal," the court concluded that "[i]f the Government has elected not to call an expert witness, the discovery is no longer reciprocal." *Id.* at *2. Instead, disclosure would be "one-sided" and cast "a shadow over the defendant's right against self-incrimination, his right to counsel, and work product doctrine." *Id.* at *2.

      That reasoning is unpersuasive for three reasons. The first is apparent from the face of the text of Rule 16. As the government points out, Rule 16 provides that the court may impose sanctions where "a party fails to comply with th[e] rule." Fed. R. Crim. P. 16(d)(2). Therefore, if the government has failed to comply under Rule 16(b)(1)(C) by declaring that it does not intend to introduce expert testimony, then either (a) the government has engaged in sanctionable conduct; or (b) "comply" must mean one thing in one part of Rule 16 and something different in another part of the same Rule. Neither possibility makes sense as a matter of statutory construction. As to the former possibility, "[a] statute should be interpreted in a way that avoids absurd results," *United States v. Dauray,* 215 F.3d 257, 264 (2d Cir. 2000), such as subjecting the government to sanctions for providing an honest answer to Rajaratnam's request.

4

The latter possibility is disfavored because courts "generally presume that 'identical words used in different parts of the same act are intended to have the same meaning.'" *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213 (2001) (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)). If Rajaratnam's reading is the correct one, "comply" in Rule 16(d)(2) must mean either that the government actually discloses expert testimony *or* that the government represents that it has no experts, whereas "complies" in Rule 16(b)(1)(C) must mean only that the government actually discloses expert testimony. It seems very strange that Congress would have used the same word to refer to each of those situations, particularly where a truthful representation seems far from the plain meaning of a failure to "comply." What seems more likely is that Congress used the word "comply" in two different parts of the Rule to make clear that the government automatically forfeits its right to reciprocal disclosures by failing to completely disclose its own experts. It makes sense that Congress would have wanted to specify that particular consequence to preserve reciprocity because Rule 16(d)(2) generally gives courts broad discretion as to whether to impose sanctions for failures to comply with the disclosure requirements. Thus there is little reason why the presumption that the same words should have the same meaning does not apply, and indeed Rajaratnam suggests none. Rather, the more logical conclusion is that Rajaratnam's interpretation of "comply" is erroneous.

Second, that conclusion is consonant with the purpose of Rule 16. While it is true that "[t]he spirit of Rule 16 . . . is that the discovery is reciprocal," *Young*, 2010 WL 1418748, at *2, reciprocity is not a talisman. Rather, the purpose of reciprocal expert disclosures is "to minimize surprise that often results from unexpected expert testimony,

5

reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, 1993 Amendment, Adv. Comm. Note.  Considered in that light, Rajaratnam's argument ignores that the government's disclaimer of any intent to offer expert testimony at trial has given Rajaratnam a valuable insight into the government's trial strategy.  Indeed, the legislative history of the Rule recognizes that "one of counsel's most basic discovery needs is to learn *that* an expert is expected to testify."  *Id.* (emphasis added).  Hence it is not the case that requiring Rajaratnam to disclose his intent regarding expert witnesses would unfairly compel him to reveal his cards while the government keeps its hand close to its chest.[1]

Third, neither the *Young* court nor Rajaratnam cite any authority for the proposition that requiring a defendant to make pre-trial disclosures implicates the right against self-incrimination or the right to counsel.  On the contrary, the Supreme Court has held that the Fifth Amendment does not prevent the government from compelling disclosures by the defendant before the government has made any.  In *Williams v. Florida*, 399 U.S. 78 (1970), the Supreme Court upheld a rule requiring a defendant to disclose any alibi defense and the names of alibi witnesses before the government had made any disclosure.  *See id.* at 83-86.  The Supreme Court reasoned that "[n]othing in such a rule requires the defendant to rely on an alibi or prevents him from abandoning the defense; these matters are left to his unfettered choice" and "the pressures that bear on his

---

[1] Rajaratnam argues that "[t]he plain purpose of the reciprocal discovery rule . . . is to preserve the normal burden of proof in criminal cases. . . ." (Rajaratnam Opp'n at 4.)  Perhaps so, though it is hard to square that claim with Rajaratnam's reliance on *Young* for the proposition that "[t]he spirit of Rule 16 . . . is that the discovery is reciprocal," *Young*, 2010 WL 1418748, at *2.  In any event, nothing about Rule 16 affects the burden of proof.

6

pretrial decision are of the same nature as those that would induce him to call alibi witnesses at the trial: the force of historical fact beyond both his and the [government]'s control and the strength of the [government]'s case built on these facts." *Id.* at 84-85.

Since requiring a defendant to make disclosures even where the government has made none does not violate the Fifth Amendment, even if Rajaratnam is correct that requiring disclosure in the circumstances here would not be truly reciprocal because it would require Rajaratnam to disclose something the government has not, requiring disclosure would not violate Rajaratnam's Fifth Amendment rights. *Cf. United States v. Nobles*, 422 U.S. 225, 234 (1975) ("We thus conclude that the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial."); *United States v. Bump*, 605 F.2d 548, 552 (10th Cir. 1979) ("[W]e find Rule 16 is not invalid as an unlawful interference with defendant's constitutional rights against self-incrimination or to effective assistance of counsel."); *United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y. 1978) ("While the refusal to testify is constitutionally protected, the trial strategy determination is not so protected. Since the defendant has availed himself of the strategy to obtain discovery of the government, he must comply with the requirement for reciprocal discovery.").

Looking beyond Rule 16's provision for expert disclosures, Rajaratnam also argues that disclosure is not required because "the defense simply does not know what expert testimony it 'intends to use' in its case-in-chief because the government's case remains unfixed and unpredictable." (Rajaratnam Opp'n at 4.) Notably, this contention—which was made for the first time in responding to the government's

7

motions—is not an argument that Rajaratnam is not required to disclose his experts because the government has not reciprocated. Rather, the argument is that expert disclosure is not required because the government delayed or has not made disclosures regarding *other* aspects of its case.

That argument lacks merit. In the first place, the argument lacks any constitutional foundation: "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the [government]'s case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the [government]'s case-in-chief before deciding whether or not to take the stand himself." *Williams*, 399 U.S. at 85. Nor is there a basis in Rule 16 for such a claim. At least one Court in this district has rejected the argument "that the defendant is under no obligation to provide any discovery or a written summary regarding [an expert's] testimony until defendant's counsel decides that . . . an expert witness [will be] testifying at trial." *United States v. Jasper*, No. 00-CR-825, 2003 WL 223212, at *4 (S.D.N.Y. Jan. 31, 2003). Noting "the objectives behind Rule 16's provision for reciprocal discovery obligations—i.e. 'to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross-examination' and 'to permit more complete pretrial preparation'—in determining the nature of defendant's discovery obligations under Rule 16(b)(1)(C)," the *Jasper* court found that "[a]llowing defendant to defer the provision of such discovery until a final determination regarding

whether or not put an expert witness on the stand would seem to frustrate the achievement of these two goals." *Id.*[2]

Thus, to the extent that Rajaratnam argues that he lacks sufficient information about the government's case to decide whether he will in fact call an expert, that argument is misplaced. Rajaratnam contends that he cannot decide whether to use an expert until the government clarifies whether it will call Roomy Khan—which the government has no obligation to disclose, *see United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990)—or whether it will offer evidence of actual trading by Rajaratnam "in connection with the conspiracy counts"—which the government has no obligation to prove. (Rajaratnam Opp'n at 5.) These contentions border on the frivolous. There is simply no support for an argument that a defendant's experts are protected until the government reveals more than Rule 16 requires. A defendant would always like more information about the government's case before revealing anything about his or her own, but Rule 16 conditions a defendant's disclosure obligations on the government's having made certain specified disclosures, not on the government's laying open its entire case or the defendant's satisfaction. Specifically, under Rule 16, a defendant's obligation to make expert disclosures does not turn on whether the government will call a certain witness or prove certain overt acts in furtherance of a conspiracy—disclosures mentioned nowhere in the Rule—but on whether the government has made its own expert disclosures. The government has done so by disclosing that it has no expert for its direct

---

[2] The fact that *Jasper* was a case where the government did intend to use experts at trial and turned over materials regarding those experts does not change the applicability of *Jasper* because Rajaratnam appears to argue that disclosure is unnecessary not because the government has not made its own expert disclosures but because the government has not disclosed *other* details of its case.

9

case, has no rebuttal expert waiting in the wings, and has not even consulted with an expert.  (Gov't Reply at 4.)  As Rajaratnam himself emphasizes, the Rule requires reciprocity; it makes no provision for a holistic comparison of what each side has or has not disclosed.

The same is true of Rajaratnam's argument that he cannot decide whether to call an expert without additional particulars.  The Court has ordered the government to provide certain particulars, the government has done so, and the Court has rejected Rajaratnam's argument that additional particulars are required to enable Rajaratnam to prepare his defense.  There is no reason why the same is not true of Rajaratnam's determination as to whether to call an expert.

Rajaratnam also argues that the government's recent disclosures that Ali Far allegedly fabricated some alleged tips he made to Rajaratnam "[o]bviously . . . affect the defense's ability to decide whether it intends to use expert testimony to rebut the government's evidence and on what subjects."  (Rajaratnam Opp'n at 5.)  That is far from obvious.  In fact, the Court cannot think of any reason why expert testimony would be necessary on any issue raised by these disclosures.  In any event, to the extent that expert testimony would be helpful with respect to fabricated tips, Rajaratnam was hardly unaware of the need for such testimony:  he raised the issue of fabricated tips in his motion *in limine* on February 2, 2011—*before* February 9, 2011 when the government made the disclosures regarding Far and the agreed upon date to provide Rajaratnam's expert disclosures.

Finally, Rajaratnam argues that the government only recently added new allegations to the case and that he "is still in the process of analyzing and investigating

10

those new allegations . . . ." (Rajaratnam Opp'n at 5.)  Perhaps so, but Rajaratnam learned of the new allegations almost three weeks—and in some cases more than two months—before the date on which he agreed to provide expert disclosures.  Rajaratnam does not appear to have raised the need for additional time and has expressly declined a continuance to prepare a defense to these new allegations.  (*See* Tr. of Hr'g, Feb. 16, 2011, at 5:1.)  Nor does Rajaratnam point to any issue unique to these new allegations that would affect his decision as to whether to call an expert.

Nevertheless, out of an abundance of caution to avoid any prejudice to Rajaratnam, the Court makes the following ruling.  Rajaratnam shall immediately provide the government with the expert disclosures specified by Rule 16(b)(1)(C) and Rule 16(a)(1)(G).  However, with respect to experts whose testimony will *solely* concern Vishay, Proctor & Gamble, Intersil, NVIDIA, or Cisco's purchase of Starent, Rajaratnam shall provide such disclosures by March 22, 2011.   Any disclosures with respect to experts whose testimony will concern general issues related to both the just listed subjects *and* any other allegation in the case shall be made immediately.  In other words, Rajaratnam may not wait until March 22, 2011 to disclose an expert he knows about now on the ground that he needed to decide whether to call the expert to defend against the "new" allegations.  Of course, should developments at trial cause Rajaratnam to modify or supplement any expert's testimony, those issues may be addressed at that time.

### B.  Audio Recordings

The government also moves to compel Rajaratnam to disclose wiretap and consensually recorded conversations that he intends to introduce at trial.   The government argues that "Rajaratnam's failure to identify his audio trial exhibits . . .

11

breaches his agreement with the Government and violates the spirit of reciprocal discovery." (Gov't Br. at 20.)  Rajaratnam contends that the issue is moot because the Court adopted a procedure for disclosing audio exhibits at the final pre-trial conference on February 16, 2011.  (Rajaratnam Opp'n at 1 n.1.)  That is not so.

At the final pre-trial conference, the Court asked the government to "address the issue of how the government sees the procedure for introducing [the] 173 transcripts" of audio recordings that the government listed as exhibits. (Tr. of Hr'g, Feb. 16, 2011 at 8:15-17.)  The Court raised the issue in an effort to "avoid a lengthy hearing every morning as to a recording [to be] play[ed] that day, as to what needs to be added to it to be complete, whether or not the transcription is accurate and whether some aspects of the tape are hearsay or being offered for limited purposes."  (*Id.* 8:5-9.)  The government proposed that, one week before the government intended to offer portions of the recordings it has already identified as exhibits, the government would identify those portions for the defense.  (*See id.* at 8:24-9:16.)  The Court found that "in general, [that was] an acceptable and workable procedure."  (*Id.* 9:17-19.)

As the foregoing makes clear, the procedure discussed at the hearing was directed to addressing evidentiary objections *at trial* to the portions of the recordings *the government* has already identified as exhibits.  It was not directed as a substitute for *pre-trial* disclosures of the *defendant's* exhibits.  True, Rajaratnam's counsel indicated that "the more the government can give us ahead of time, the more we can study the tapes because there's a lot of conversations . . . [and] the better we will be [able] to identify what we would like to play and work out as much ahead of time as possible."  (*Id.* 10:19-24.)  But the Court did not give Rajaratnam leave to withhold disclosure of exhibits until

12

the government identified the portions of the exhibits that it actually intended to introduce into evidence.  Indeed, Rajaratnam's counsel seem to have understood as much, since when the Court raised the instant motion later in the hearing, counsel asked to submit "a written response by Friday on that."  (*Id.* at 44:7-8.)

On the merits, Rajaratnam does not appear to dispute that the parties agreed to reciprocal disclosures of audio-recordings they intended to introduce into evidence at trial.  Rajaratnam does dispute that his decision not to disclose recordings violates his agreement with the government.  He contends that "the exhibit lists that the parties have exchanged are necessarily preliminary and subject to change" and that "the government has already supplemented its own initial exhibit list with nearly 200 additional exhibits, including audio recordings not included in its initial exhibit list."  (Rajaratnam Surreply at 2.)  Hence Rajaratnam argues that he "does not concede that he violated his agreement with the government by reserving his right to later specify audio exhibits any more than the government concedes it violated the agreement by failing to designate all of its trial exhibits at the agreed upon date."  (*Id.*).  But all this shows is that the government has made an effort to comb through thousands of recorded calls and make timely disclosures to comply with the agreement whereas Rajaratnam has made no such effort.  Perhaps the exhibits will change, but that does not absolve Rajaratnam of making the effort to disclose what he knows now.  Accordingly, Rajaratnam should immediately disclose those audio recordings that he presently intends to introduce into evidence at trial.

## CONCLUSION

For the reasons stated above, the government's motion [216] to compel defendant Rajaratnam to immediately disclose the names of any expert witnesses he intends to call at trial as well as any such experts' qualifications, opinions and the bases for their opinions is GRANTED in part and DENIED in part. Rajaratnam shall immediately identify any wiretap or consensually recorded telephone calls that he presently intends to introduce into evidence at trial and provide the government with the expert disclosures specified by Rule 16(b)(1)(C) and Rule 16(a)(1)(G). However, with respect to experts whose testimony will *solely* concern Vishay, Proctor & Gamble, Intersil, NVIDIA, or Cisco's purchase of Starent, Rajaratnam shall provide such disclosures by March 22, 2011.

SO ORDERED.

Dated: New York, New York
February 25, 2011

_____
Richard J. Holwell
United States District Judge