UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                  :

UNITED STATES OF AMERICA,          :
                                    :

      -v-                               :            S2 09 Cr. 1184 (RJH)

RAJ RAJARATNAM,                 :

                  Defendant.        :

-------------------------------------------------------------x

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION TO PRECLUDE EXPERT TESTIMONY AND FOR ADDITIONAL EXPERT DISCLOSURES

### I.  INTRODUCTION

Mr. Rajaratnam provided pre-trial notice to the government that he intended to call Professor Gregg Jarrell as an expert witness. Professor Jarrell is a Professor of Economics and Finance at the University of Rochester and the former Chief Economist at the SEC from 1984-87. He has qualified as an expert in securities fraud cases numerous times. Professor Jarrell has reviewed the stocks at issue in this case and the allegations pertaining thereto. He has analyzed the price movement of the stocks and events at issue, reviewed the publicly available information concerning those events, and formed opinions about whether the events were already in the public domain and reflected in the stock price prior to their public announcement. He has also formed opinions about whether, based on this information, it would have been reasonable for a well-informed, professional investor to trade in the stock in the manner that occurred here.

The government's Motion to Preclude Expert Testimony does not challenge Professor Jarrell's qualifications, his methodology, or the helpfulness of his opinions to the jury, which are the three requirements for admissibility set forth by the Supreme Court in *Daubert v. Merrell*

*Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Rather, the government simply disagrees with what Professor Jarrell has to say.  The government raises straw-man arguments and mischaracterizes Professor Jarrell's proffered testimony as legal conclusions—all for the purpose of seeking to exclude all evidence that would permit the jury to draw any inference contrary to the inference that the government wants it to draw.  Indeed, the government's position is also inconsistent: it argues on the one hand that Professor Jarrell's testimony should be excluded because he is testifying to "legal and factual conclusions" (Mot. at 1), such as whether information was "non public," but on the other, it concedes that testimony would be proper on whether "information was reflected in the price of certain stocks at particular points in time" or "impounded" into the stock price.  Mot. at 1, 18.  In that regard, the government does not argue with the obvious fact that impoundment occurs because the information was already in the public domain.  The government also mischaracterizes prior cases in which Professor Jarrell has testified as an expert, suggesting that he was not permitted to offer expert opinions in those cases, when in fact he was. Finally, the government argues that expert testimony on materiality should not be permitted even though the law clearly permits such testimony and when, in other cases, the government has presented such expert testimony itself.

## II. **APPLICABLE LAW**

Expert testimony is admissible when it "will assist the trier of fact to understand evidence or to determine a fact at issue."  Fed. R. Evid. 702.  As the government concedes through the cases it cites, this is particularly true when the subject matter of the testimony is "beyond the ken of the average juror."  *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1993).  Moreover, "[a]n intelligent evaluation of the facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702, Advisory

Committee Note.  Indeed, "[e]xpert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts.  Because of their specialized knowledge, their testimony can be extremely valuable and probative." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

There is no dispute that expert testimony must also satisfy *Daubert* in that it must be reliable and not based on faulty methodology or junk science.  *See Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert's* gatekeeping function is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").  Professor Jarrell's expected testimony meets all of these requirements and should be admitted.

**A.  The Event Study Method is a Reliable and Established Means for Determining Market Responsiveness to Certain Events or Information.**

Professor Jarrell utilized the event study method, with which the Court is already familiar.  *In Re Vivendi Universal, S.A. Securities Litig.*, 605 F. Supp.2d 586, 599 (SDNY 2009) (Holwell, J.).  Event studies are often recognized as the appropriate means of analyzing the stock price impact of allegedly material information and securities trading.  *In Re Northern Telecom Ltd. Securities Litig.*, 116 F.Supp. 2d 446, 460-61 (S.D.N.Y. 2000) (finding proposed expert testimony "fatally deficient" in a securities case when it did not include an event study); *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 245 F.R.D. 147, 170 (S.D.N.Y. 2007) (vacated in part on other grounds by *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29 (2d Cir. 2009)) (noting that "numerous courts have held that an event study is a reliable method for determining market efficiency and the market's responsiveness to certain events or information.").  As such, the government does not challenge the reliability of Professor Jarrell's

methodology, but instead challenges the conclusions he reached based upon application of that methodology, including his conclusions about the economic materiality and/or public nature of certain information.  Expert testimony on those subjects, however, is permissible.

### B.  Materiality is a Proper Area of Expert Testimony.

The Second Circuit has repeatedly approved of expert testimony concerning materiality, especially in complex cases like this one where concepts at issue may be unfamiliar to the average juror.  Because materiality in a securities case is a mixed question of law and fact, Professor Jarrell may opine to the jury on the fact aspect of the materiality inquiry.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (determination of materiality requires "delicate assessments" that are "peculiarly ones for the trier of fact");  *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999) (whether information is material is a mixed question of law and fact that generally should be presented to a jury); *SEC v. Mayhew*, 121 F.3d 44, 51 (1997) ("The materiality of information is a mixed question of law and fact."); *RMED Intern., Inc. v. Sloan's Supermarkets, Inc.*, 185 F. Supp. 2d 389, 400 (S.D.N.Y. 2002) (same).

In *United States v. Russo*, 74 F.3d 1383 (2d Cir 1996), the Second Circuit affirmed convictions for securities fraud against three employees of a broker-dealer.  In that case, which involved allegedly fraudulent "stock parking," the government called an expert witness who testified to, among other things, his opinion of materiality.  Specifically, he testified about "how the prices of [certain] shares would have significantly declined" had the manipulated stock reached the market and whether certain transactions were "stock parking" transactions. *Id.* at 1389, 1395.  On appeal, the defendants challenged the materiality testimony and also asserted that the expert's testimony amounted to impermissible legal conclusions about "parking."  The

Second Circuit rejected those challenges, holding that "particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts." *Id.* at 1395. The court concluded that the expert's testimony "had an adequate basis in fact" and "provided the groundwork in the form of an opinion to enable the jury to make its own informed determination," and that the expert did not make any statements about the defendants' intent, but rather had "simply described certain stock transactions and his opinion on *their effect on the market.*" *Id.* at 1394-95 (emphasis added).

In *United States v. Schlisser*, 168 Fed. Appx. 483, 2006 WL 452005 (2d Cir. 2006), the defendant was convicted of securities fraud and wire fraud. On appeal, the defendant raised a *Crawford* confrontation challenge to the admission of testimony from his one-time business partner. The testimony bore "on the materiality of Schlisser's misrepresentations to the investors." *Id.* at 3. The court rejected the confrontation challenge, noting that *the government* offered other evidence on this point, including "an expert witness [who] testified that information on Schlissser's background would have been considered material to investors." *Id.* (emphasis added).

In *United States v. Cohen*, 518 F.2d 727 (2d Cir. 1975), the Second Circuit found that expert testimony from an SEC branch chief concerning the concept of materiality was properly admitted. The court found the testimony desirable in the context of a "long and protracted" trial dealing with "complex questions involving the securities laws." *Id.* at 737. Admission of the testimony was a proper exercise of the trial judge's discretionary power and "was helpful to an

understanding of the contested controversial issues requiring factual resolution" by the jury. *Id.*[1] *See also RMED Inter., Inc. v. Sloan's Supermarkets, Inc.*, No., 2000 WL 310352 at *10 (S.D.N.Y. March 24, 2000) (permitting expert to testify on materiality in a Section 10(b) case).

Other courts permit expert testimony concerning materiality, as well. For example, in a recent case, *United States v. Schiff*, the Third Circuit acknowledged that use of an expert on materiality is appropriate. 602 F.3d 152, 171 (3d Cir. 2010). In *Schiff*, the government introduced expert testimony concerning a drop in a relevant stock price in the days following a company announcement. *Id.* In deciding that this expert testimony was admissible, the district court noted that "courts often turn to economic experts to determine whether a particular announcement had an appreciable effect on the stock price." *Id.* at 172 (citing *United States v. Schiff*, 538 F. Supp. 2d 818, 835 (D.N.J. 2008)). *See also United States v. Nacchio*, 519 F.3d 1140, 1155 (10th Cir. 2008) (vacated in part on other grounds by *United States v. Nacchio*, 555 F.3d 1234 (10th Cir. 2009) ("expert economic testimony is routine when a materiality determination requires the jury to decide the effect of information on the market"); *SEC v. Koenig*, 557 F.3d 736, 743 (7th Cir. 2009) (SEC presented event study-based testimony of an economic expert on the question of materiality); *Harmsen v. Smith*, 693 F.2d 932, 941 (9th Cir.

---

[1] Other cases in the Second Circuit, including those cited by the government, also recognize the helpfulness of expert testimony on complex concepts. *See, e.g., United States v. Castillo*, 924 F.2d 1227, 1231 (2d Cir. 1991) (recognizing that expert testimony is appropriate where the subject matter is "beyond the ken" of the average juror); *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985) (expert testimony was appropriate where the expert knew "a good deal more" about the subject matter than did the jurors); *United States v. Nersesian*, 824 F.2d 1294, 1308 (2d. Cir. 1987) (no error in district court's decision to admit expert testimony regarding the parlance and meaning of code words on intercepted calls that would not otherwise be apparent to the jury); *United States v. Carson*, 702 F.2d 351, 369 (2d Cir. 1983) (approving of decision to admit expert testimony concerning matters "unlikely to be within the knowledge of the average layman.").

1982) (finding jury verdict supported by expert's testimony on materiality); *Eliasen v. Hamilton*,

No. 81 C 123, 1987 WL 7815 at *5 (N.D. Ill. March 9, 1987) ("It appears that much of the proof

concerning materiality will be through expert testimony.").[2]

Despite the government's assertion to the contrary, Professor Jarrell has previously

provided expert testimony concerning complex securities matters, including the materiality of

information as determined by event study analysis.  In suggesting that Professor Jarrell's

testimony has been excluded in the past, the government relies on the district court's decision in

*In Re Countrywide Financial Corp. Sec. Litig.*, 2009 WL 7322254 (C.D. Cal. Dec. 9, 2009).

That case involved trading in common stock, capital securities, and several bonds.  Professor

Jarrell was an expert for the plaintiffs and offered opinions that these securities traded in an

efficient market.  The court agreed that he could so testify regarding the common stock, options,

capital securities and some of the debt securities, finding that "Dr. Jarrell defined the events for

study as every quarterly earnings release dated during the class period where earnings differed

from analysts' consensus estimates. This is a fairly objective criterion.  None of the three defense

experts has any objection to the methodology used in Dr. Jarrell's event study on the common, at

least 'in principle.'" *Id.* at *29.  The court added: "Of course, many decision points in designing

---

[2] *See also*, 3 Alan R. Bromberg & Lewis D. Lowenfels, Bromberg & Lowenfels on
Securities Fraud & Commodities Fraud § 6:153 (2d ed. 2007) ("Opinion evidence, *e.g.*, by
experts...is admissible on whether information would have a substantial market impact."); *Id.* at
§ 6:159 ("Experts...should be able to testify that the information would have had a substantial
effect on the market price or that reasonable investors would have considered it important."); 5
Business & Commercial Litigation in Federal Courts § 62:77 (Robert L. Haig ed. 2005) (In
securities cases, "economic experts often play the most significant role of any witness"
especially "whether the disclosure of certain information would have an effect on the market price and, if
so, what amount" and whether it "was material."); 7-107 E. Michael Bradley & Anthony L.
Paccione, Securities Law Techniques § 107.03 (Matthew Bender ed. 2007) ("In securities
litigation, expert testimony has been found helpful and been admitted with respect to a wide
variety of matters," including "to demonstrate materiality.").

an event study require some subjectivity: identifying news, categorizing which news is 'material,' and determining whether news should have a certain (albeit rough) magnitude of positive or negative influence on price are all subjective determinations. But such subjectivity should be minimized. Dr. Jarrell's earning surprise event study must be given due consideration on this motion. He has a reasonable number of observations (due to the long class period) and has defined his 'new' information relatively objectively – as a significant deviation from the analyst consensus." *Id.*

## C.  The Public Nature of Information is Part of a Reliable Event Study Analysis and a Proper Area of Expert Testimony.

The government agrees that whether particular events have been "impounded" into a stock price is a proper area for expert testimony. Mot. at 2. As discussed above, Professor Jarrell conducted event studies to determine whether particular events had an economically material impact on relevant stock prices. An event study, by its very nature, takes into account information already in the market about a relevant event and the market's view of it, making testimony about public information concerning that event both relevant and necessary. *In re Alstom SA Securities Litig.*, 253 F.R.D. 266, 280 (S.D.N.Y. 2008) (accepting Professor Jarrell's event study comparing day-to-day percentage changes in relevant share prices resulting from disclosures of new information).

In other words, it is appropriate for an expert to opine on the impact of information "leakage" into the market, from whatever source, to make a statistical determination about whether such information was already impounded into a stock price. *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) (citing *Lentell v. Merrill Lynch*,

396 F.3d 161 (2d Cir. 2005)) (accepting the validity of "leakage theory" and rejecting the notion that disclosures of information to the market must come from the company itself).

The government cites *United States v. Blackwell*, 459 F.3d 739 (6th Cir. 2006), stating that the court prohibited Professor Jarrell from testifying about "leakage" of a securities transaction before a public announcement, and implying that all of Professor Jarrell's testimony was barred as irrelevant. Mot. at 10. But the government's description of *Blackwell* is grossly misleading. Professor Jarrell did in fact testify about "leakage theory" in that case, opining that "information about mergers and buyouts will often 'leak' to the public without insider trading. Companies about to buy out or be bought will give off signals indicating a future buyout will occur. Sophisticated investors, especially analysts and research companies looking for these signals, often learn of buyouts before they are publicly announced." *Id.* at 751. Professor Jarrell was permitted to explain to the jury how news of a buyout will sometimes "leak" without any improper disclosure by an insider. *Id.* at 753. The only portion of Professor Jarrell's testimony that was excluded was testimony related to the existence of trading by persons with relationships to directors *other than* the defendant. Professor Jarrell will not offer such testimony in this case, so the limitation imposed by the court in *Blackwell* is inapposite.

## III. DISCUSSION

### A. The Government's Objections to the Scope of Professor Jarrell's Testimony are Unfounded.

1.   Testimony Regarding Background and Summary Matters is Permissible and Does Not Constitute a Lay Opinion.

The government objects to two elements of Professor Jarrell's proposed testimony as impermissible lay opinion. First, the government argues that Professor Jarrell should not be

permitted to testify to matters such as that Galleon employs numerous analysts who gather information from a number of sources and seek to develop a variant view. Mot. at 7. To the extent Professor Jarrell mentions facts about Galleon that are already in evidence, it will simply be to supply relevant background to assist the jury and provide context. Testimony of that nature is permissible and is not a lay opinion. *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events); *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (expert testimony about the structure and workings of a group is permissible).

Second, the government seeks to preclude Professor Jarrell from testifying that the trades at issue represent only approximately 1% of Mr. Rajaratnam's total trades during the relevant time period and approximately 1% of the total transaction value. The government challenges this testimony as not being based on specialized knowledge and as having a tendency to mislead the jury. As an initial matter, the government either misunderstands or mischaracterizes the proposed testimony. Mot. at 9. Testimony concerning the volume and value of Mr. Rajaratnam's trades would not mislead the jury because it *does not* assume that all Galleon trades were transacted by Mr. Rajaratnam or at his direction. The government's argument about the inclusion of Galleon trades is incorrect; trades made by Galleon employees other than Mr. Rajaratnam were not included in the calculation.

Additionally, this testimony is not opinion testimony, lay or expert. Rather, it is admissible summary testimony based on a review of voluminous records. Fed. R. Evid. 1006. All of Galleon's trading records have been loaded into a computer system to which Professor Jarrell has access, and he is entitled to testify to the volume of Mr. Rajaratnam's trading as it will assist the jury in understanding the context in which the trades at issue took place. The

government has already elicited testimony from Adam Smith that Mr. Rajaratnam made a $10 million trade in ICST, implying that the size of the trade signified that Mr. Rajaratnam must have had inside information. R. at 2978. The government did the same on numerous occasions through Special Agent James Barnacle, the government's summary witness, who spoke about the size of trades in many of the stocks at issue in the case. The government clearly did not believe that testimony was irrelevant, and opened the door to proper rebuttal testimony of the sort Professor Jarrell may provide. Additionally, Professor Jarrell's summary testimony will be helpful to the jury to understand the total volume of trades that Mr. Rajaratnam transacted during the relevant time period, which will place particular trades in context and paint a different picture regarding a trade's relative significance.

In support of its argument for exclusion based on its incorrect characterization of these elements of Professor Jarrell's proposed testimony, the government cites cases such as *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989), for the proposition that lay opinion testimony is inappropriate. In *Andrews*, a forensic engineer testified as an expert that a train platform was slippery and that the plaintiff's conduct in walking along railroad tracks was reasonable. *Id.* at 708. The Second Circuit held that such testimony should not have been admitted as expert testimony because whether a train platform was slippery from weather, and whether the plaintiff's decision to walk along the train tracks was reasonable, were matters the jury was capable of understanding and deciding without the expert's help. *Id. Andrews* is inapplicable for at least two reasons. First, it concerned opinion testimony, not background testimony or summary testimony of the type to which the government apparently now objects. Second, the testimony in *Andrews* concerned matters that an average person could evaluate without expert assistance; namely, the impact of certain weather conditions on a train platform

11

and whether it was reasonable for the plaintiff to walk along railroad tracks, matters obviously within the ordinary experience of the average juror. Here, the portions of Professor Jarrell's testimony that do constitute his opinion – those portions that are not simply background or summary testimony – concern complex market behavior, which is not an area within the ken of an ordinary juror. The government's reliance on *United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) (expert testimony concerning a defendant's mental state was not permitted even though lay opinion testimony on that subject would be permissible) and *Taylor v. Evans*, No. 94 Civ. 8425, 1997 WL 154010 (S.D.N.Y. April 1, 1997) (expert testimony consisting of "baldly stated legal conclusions" was not admissible), is similarly misplaced as the issues dealt with in those cases are not present here.

The government further argues that permitting Professor Jarrell to testify about these background and summary matters would supplant the role of the jury. That is not the case at all. Professor Jarrell's testimony will not draw any inferences from the background or summary facts that he may mention in an effort to provide context. The inferences will be left to the jury. Unlike the proposed experts in *In re Rezulin Products Liability Litigation*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004), the case upon which the government relies (Mot. at 8), Professor Jarrell will not provide any testimony in connection with these background or summary facts that constitutes any sort of speculative, subjective, or personal view. In fact, he does not intend to opine on them at all, and will only provide them as needed to assist in the jury's understanding of his opinion testimony concerning the trades and securities the government has put at issue.

2.    <u>Testimony Regarding Trading is Appropriate.</u>

For most of the stocks, Professor Jarrell will testify that it would be reasonable for a well-informed professional investor to trade similarly to how Mr. Rajaratnam traded. Professor Jarrell

reached this conclusion based on his review of the publicly available information regarding the stock and its share price – key components of the event studies he performed.  The government objects that this is impermissible testimony about the basis for Mr. Rajaratnam's trading decisions, and amounts to argument.  Mot. at 9-10.  The government is wrong.

The defense is attempting to show that the pattern of trading in the stocks at issue is not suggestive of insider trading or an attempt to conceal it, which would directly rebut the conclusions the government has suggested the jury should draw.  Indeed, the government is relying on patterns of trading when it sees fit.  The defense is entitled to have an expert examine the available public information, review Mr. Rajaratnam's trading, and offer an opinion whether the public information would support the trading pattern at issue.  Professor Jarrell is *not* offering an opinion as to why Mr. Rajaratnam traded as he did—that will be up to the jury to determine.  But he should be permitted to present expert testimony that analyzes the available public information and whether a well-informed professional investor would trade in that manner.

For example, as in *Blackwell*, Professor Jarrell should be permitted to testify that news of an acquisition often leaks into the market before the actual announcement, resulting in measurable trading activity by well-informed, professional investors.  The government presents no authority suggesting that such testimony, which is virtually identical to what was held acceptable in *Blackwell*, should not be permitted here.  The government resorts to arguing that Professor Jarrell cannot offer such testimony because he is not a "professional investor."  Mot. at 11.  Professor Jarrell is an expert on the stock market; the economics behind what drives decisions in the market; how the market reacts to information that is publicly available, such as much of the information in this case; and stock price movement.  His testimony will be helpful to the jury in understanding how the market reacted to the public information in this case.  Traders

13

and well-informed investors are an integral part of that market and Professor Jarrell's testimony

will assist the jury in evaluating decisions to trade made by those individuals.  It will then be up

to the jury to decide whether Mr. Rajaratnam's trading was based on that information, or had

some other basis.[3]

The government points to *United States v. Abdel Rahtman*, 189 F.3d 88, 136 (2d Cir.

1999), in support of its argument that Professor Jarrell may not opine on Mr. Rajaratnam's basis

for trading.  Because Professor Jarrell will not opine on Mr. Rajaratnam's basis for trading, the

government's argument misses the point entirely.  Moreover, the other cases the government

cites in support of its argument are not instructive.  First, in *United States v. Nersesian*, the

Second Circuit affirmed the admissibility of opinion testimony concerning narcotics-related

phone calls, finding that permitting the testimony was within the "wide latitude" provided to the

district court and that the ultimate question of which narcotics were being discussed was left to

the jury.  824 F.2d 1294, 1308 (2d Cir. 1987).  Second, in *Kidder, Peabody & Co., Inc. v. IAG*

*Intern. Acceptance Group*, the district court excluded expert testimony that would have required

the expert to opine not only on party obligations under state contract law, but also on an

individual's state of mind.  14 F. Supp. 2d 391, 404 (2d Cir. 1998).  *United States v. Bronston*,

658 F.2d 920 (2d Cir. 1981), and *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450

(S.D.N.Y. 2001), are no more helpful.  In both cases, expert testimony was excluded because it

speculated about the behavior of the relative defendants themselves, and drew legal conclusions

from it, a situation not present here.

---

[3] The excerpt from the discussion that Judge Sullivan had with counsel in *United States v. Contorinis* is instructive.  Mot. at Ex. D.  While Judge Sullivan was skeptical that some of the proferred expert testimony would be helpful, he seemed to acknowledge that testimony about trading patterns would be appropriate—"I think to the extent he's going to be asked to testify about a pattern, I think that's a different story."  Ex. D at Tr. 1216.

Professor Jarrell's proposed testimony will not usurp the role of the jury because he will opine on whether a reasonable well-informed investor would trade in the manner that Mr. Rajaratnam did.  His testimony will be based on his extensive experience analyzing market behavior and trading patterns and will not draw or communicate any conclusions concerning Mr. Rajaratnam's state of mind or any other legal or factual issue reserved for the jury.  Further, Professor Jarrell's testimony is merely evidence the jury may consider in making its ultimate determination about Mr. Rajaratnam's own basis for trading.

### 3.   Testimony About Whether Information Is "Nonpublic" or "Material" is Appropriate.

The government makes a straw-man argument that Professor Jarrell may not invade the province of the jury and the court by opining "on the meaning of material, nonpublic information in this case." Mot. at 13-15.  But Professor Jarrell will not opine on the legal meaning of any such elements.  As part of his testimony, Professor Jarrell will explain what information about particular relevant events was already in the market and whether the market had absorbed that information into the price of the stock.[4]  In order to present this undisputedly proper testimony, Professor Jarrell will necessarily describe what information about particular events was already present in the public market prior to official announcements concerning these events.  This testimony is necessary to support his conclusions regarding the trading pattern at issue.  Contrary to the government's objection (Mot. at 12), doing so does not transform his testimony into testimony about legal elements of the charged offense simply because "nonpublic" is one of the elements of insider trading.

---

[4] As noted previously, the government accepts that testimony about event "impoundment" into stock price is appropriate.

The case the government relies on, *United States v. Scop*, 846 F.2d 135 (2d Cir.) (1988), is inapposite because the testimony at issue there concerned such legal terms as "manipulation," "scheme to defraud," and "fraud." In this case, the word "public" has both a practical meaning for the purposes of an event study analysis and a legal meaning for the purposes of Section 10(b). Professor Jarrell will not opine about whether information was public for the purposes of the securities laws, distinguishing this case from *United States v. Libera*, 989 F.2d 596 (2d Cir. 1993), cited by the government.[5] Instead, Professor Jarrell will testify as to what relevant information was in the market as a practical matter, and must do so in order to explain his conclusions about the statistical significance of changes in stock price, if any, and what trading patterns such information supports. Whether the information in the public market satisfies the "non-public" element of an insider trading charge will be for the jury to decide.

As to Professor Jarrell's testimony explaining whether any of the information at issue was economically material, that testimony is appropriate to support an event study that compares the "return" on a stock when the event is announced to the stock's normal volatility. Event studies are routinely done in securities fraud cases and even the government acknowledges that price "impoundment" (*i.e.*, economic materiality) is a proper area for expert testimony. Mot. at 2, 18. As noted previously, in other cases the government has itself offered expert testimony on materiality. *See, e.g., United States v. Russo*, 74 F.3d 1383 (2d Cir 1996), and *United States v. Schlisser*, 168 Fed. Appx. 483, 2006 WL 452005 (2d. Cir. 2006). Professor Jarrell's use of the word "economically" in front of the word "material" is not a clever work-around as the

---

[5] Notably, in *Libera*, the court found that whether information was publicly in the market so as to impound the information into a stock price was appropriate evidence for the jury to consider in determining whether information was non-public for Section 10(b) purposes. *Id*. at 601.

government suggests. Mot. at 13. Economic materiality refers to Professor Jarrell's expert interpretation of the analysis he performed as part of his event studies. It speaks to statistical significance, which is a quantitative, rather than legal, concept. By declining to name its own expert, the government has apparently chosen not to provide the jury with expert assistance to support its own view of the materiality of the facts at issue. However, that hardly precludes the defense from offering expert testimony on materiality.

In light of the actual nature of Professor Jarrell's testimony, the government's reliance on *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006), is easily distinguishable on at least two grounds. First, the proposed expert in *Stewart* was explicitly called to testify about a legal issue, *i.e.*, whether Stewart's trading constituted unlawful insider trading. *Id.* at 311. Second, the legality of Ms. Stewart's trading was irrelevant to the false statement charge against her, which was the only charge under consideration. *Id.* at 311-12. The other cases the government cites in Section II.A.3 of its Motion are not on point for a similar reason – they all state the undisputed but inapposite proposition that expert testimony that instructs the jury on the law is inappropriate.[6]

---

[6] In *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505 (2d cir. 1977), the court found error in the trial court's decision to permit expert testimony from an attorney concerning the legal obligations of the parties under a contract. *Id.* at 508. What the government neglected to point out was that the court approved of expert testimony concerning the customary practice of those engaged in the securities business. *Id.* at 508-9. The *Marx* court did not discuss the expert's opinion, if any, on materiality, to exclude it or otherwise. In *United States v. Duncan*, 42 F.3d 97 (2d Cir. 1994), the court warned against expert testimony that told the jury what result to reach, but found the testimony at issue admissible under Rule 704, reasoning that a factual conclusion was not tantamount to telling the jury what decision to make. *Id.* at 103. The court noted that opinion testimony is not objectionable because it happens to embrace an ultimate issue of fact for the jury. *Id.*; *see also* Fed. R. Evid. 704. Similar statements of the law in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), and *United States v. Bronston*, 658 F.2d 920 (2d Cir. 1981), are likewise irrelevant. The government also cites *SEC v. Happ*, 392 F.3d 12 (1st Cir.

Here, Professor Jarrell will not offer any testimony concerning the legal issue of whether information allegedly possessed by Mr. Rajaratnam was nonpublic or material. Professor Jarrell will not tell the jury how it should decide any ultimate legal issue in the case. He will only testify about what he reviewed, the proper statistical analyses he performed, and what conclusions he drew from the results based on his substantial expertise. The jury is free to accept or reject Professor Jarrell's testimony and the court will undoubtedly instruct the jury appropriately on how to evaluate his testimony.

     4.    <u>Testimony Regarding the Mosaic Theory is Proper.</u>

The government's objection to what it characterizes as Professor Jarrell's views on law and economics (Mot. at 16-17) is another straw-man objection. Professor Jarrell will not be testifying to what the law "should be." He will, however, be testifying that professional stock traders study the market and develop a mosaic of information that informs their trading decisions. This is a well-recognized method for collecting and analyzing information to inform trading decisions and has been recognized as such by the Supreme Court in *Dirks v. SEC*, 463 U.S. 646 (1983) and by the Second Circuit in *SEC v. Monarch Fund*, 608 F.2d 938 (2d Cir. 1979). In *Dirks*, the Supreme Court acknowledged that "a duty to disclose arises from the relationship between the parties … and not merely from one's ability to acquire information because of his position in the market.…It is commonplace for analysts to ferret out and analyze information." *Dirks*, 463 U.S. at 657-58. In *Monarch Fund*, the Second Circuit similarly stated:

> All reasonable investors seek to obtain as much information as they can before purchasing or selling a security. Investors will usually consult a broker, having confidence that such a professional keeps abreast of the

2004), although it is not clear why it does so because that case does not involve expert testimony on any subject, much less expert testimony about a legal issue.

market, including the information circulated regarding specific securities, and will rely upon the information given to them by their broker. Therefore, investment advisors seek to obtain as much information including rumors regarding a security as they can so that they may properly advise their clients.

*Monarch Fund*, 608 F.2d at 942-43.

Professor Jarrell's explanation of mosaic theory serves as a background for his testimony regarding how the market absorbs public information and how professional investors collect, and make trading decisions based on, a mosaic of information. Such testimony is appropriate and should be permitted. As the Second Circuit stated in *Marx & Co., Inc. v. Diners' Club, Inc.*, a case the government cites in its Motion, expert testimony concerning the customary practice of those in engaged in the securities business is admissible. 550 F.2d at 508. *See also Highland Capital Mgmt, L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008). Professor Jarrell, although not a professional trader himself, is eminently qualified, both through his work at the SEC and his decades-long study of the securities industry, to provide testimony about the customary practice of securities professionals.

## B. The Government's Request For Additional Backup Data Has Been Satisfied.

In response to the government's request for additional backup data from Professor Jarrell, the defense supplied a disk containing the requested data on April 4, 2011.

## C. A *Daubert* Hearing is Not Necessary.

As the Supreme Court stated in *Kumho Tire*, "[t]he trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether* that expert's relevant testimony is reliable." 526 U.S. 137 at 152 (emphasis in original).

While a district court may conduct an evidentiary hearing in order to ascertain the admissibility of expert testimony, "nothing in *Daubert* or any other Supreme Court or Second Circuit case mandates that a district court hold a *Daubert* hearing prior to ruling on the admissibility of expert testimony." *Berk v. St. Vincent's Hosp.*, 380 F. Supp. 2d 334, 349 (S.D.N.Y. 2005); *see also United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007) (the gatekeeping function of the court "does not necessarily require that a separate hearing be held"); *United States v. Starzecpyzel*, 880 F. Supp. 1027, 1031 (S.D.N.Y. 1995) (In *Daubert*, the Supreme Court did not address the procedural aspects of *Daubert* hearings, but the "inquiry conducted" represents a "primarily legal question for the court").

Daubert hearings are unnecessary where, as here, the *Daubert* issue is fully briefed by the parties and "the record pertinent to the expert opinions is already well-developed." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581-82 (S.D.N.Y. 2007); *Colon ex rel Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 71 (S.D.N.Y. 2001). In this case, Professor Jarrell's qualifications as an expert are not in dispute, nor is the methodology he used in forming his opinions. The testimony will undoubtedly be helpful to the jury in a long, complex case such as this. *Cohen*, 518 F.2d at 737. The only issue raised by the government is the scope of Professor Jarrell's testimony, an issue that has now been fully briefed by the parties and that can be decided without a *Daubert* hearing.

## IV. CONCLUSION

For the reasons stated herein, the government's Motion should be denied. A *Daubert* hearing is not necessary.

20

Dated: New York, New York
April 6, 2011

Respectfully submitted,

By: _Terence J. Lynam_

John M. Dowd (admitted *pro hac vice*)
Terence J. Lynam (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(202) 887-4386

*Attorneys for Raj Rajaratnam*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposition to Government's

Motion to Preclude Expert Testimony and for Additional Expert Disclosures was served on April

6, 2011 via ECF filing notification and email on the following counsel of record:

> AUSA Jonathan R. Streeter
> AUSA Reed Brodsky
> SAUSA Andrew Z. Michaelson
> United States Attorney's Office
> The Silvio J. Mollo Building
> Southern District of New York
> New York, NY 10007

*Terence J. Lynam*