UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

    - v.-

RAJ RAJARATNAM,

    Defendant.

                                S2 09-CR-1184 (RJH)

- - - - - - - - - - - - - - - - - - - - - - - - X

### DEFENDANT'S RESPONSE TO GOVERNMENT'S POST-ARGUMENT REPLY MEMORANDUM REGARDING CALCULATING GAIN

Defendant Raj Rajaratnam, through counsel, hereby submits this response to the government's Reply Sentencing Memorandum Regarding Calculating Gain, which was filed on October 7, 2011.

At the oral argument held on October 4, 2011, the Court inquired of the government what its calculation of the gain would be if it were based on the stock price within one day of the public announcement of the information in question. The Reply Memorandum that the government submitted in response went beyond what defense counsel understood the Court requested and included some unsolicited alterations to the calculations.

In particular, the government's new calculations included shares that were not included in the previous calculations that Agent Barnacle performed, and which formed the basis for the government's initial gain calculation of $63.8 million. Specifically, the government has now included additional shares in its gain calculations for both ATI and Xilinx. For ATI, the government included 50,000 additional shares in its calculations, causing (in part) a revised gain number that is 8% greater than Agent Barnacle's original calculation. For Xilinx, the government included an additional 175,000 shares, causing (in part) a revised gain number that is

41% greater than Agent Barnacle's original calculation. A portion of those extra shares are shares Agent Barnacle specifically *excluded* from his original calculations.

In other instances, the government's calculations of losses avoided are inconsistent with each other. In particular, the government's revised loss avoidance calculations for Goldman Sachs are inconsistent with calculations of losses avoided for Google and Intel because, for Goldman Sachs, the government chose a pre-announcement date to perform its calculation instead of using the actual announcement date. This inconsistency causes the government's revised loss avoidance calculation for Goldman Sachs to be more than 16% greater than Agent Barnacle's original calculation.

Finally, when Mr. Rajaratnam sold shares during the day following the announcement, the government did not use the actual sale prices, but instead used the price at the close of the market that day. We understood that the latter price was only to be used for trades that took place after the one-day period, not for trades that took place during the one-day period (when the actual sale price is available and more accurate).

Attached is the Declaration of James Canessa of Forensic Economics, who has worked closely with Professor Jarrell throughout this case, which sets forth in more detail these points regarding the government's new gain calculations and the unsolicited alterations.

Respectfully submitted,

*Terence J. Lynam*
John M. Dowd (admitted *pro hac vice*)
Terence J. Lynam (admitted *pro hac vice*)
James E. Sherry (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 887-4386

Samidh Guha (SG-5759)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212) 872-1000

*Attorneys for Raj Rajaratnam*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on October 10, 2011 via ECF Filing notification and email on the following counsel of record:

> AUSA Jonathan R. Streeter
> AUSA Reed Brodsky
> SAUSA Andrew Z. Michaelson
> United States Attorney's Office
> The Silvio J. Mollo Building
> Southern District of New York
> New York, NY 10007

s/ _Terence J. Lynam_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

    -v-

RAJ RAJARATNAM

                Defendant.

------------------------------------------------------------x

09 Cr. 1184 (RJH)

## DECLARATION OF JAMES L. CANESSA

1.    I am a Vice President at Forensic Economics, Inc., a consulting firm specializing in providing and supporting expert witness damages testimony in business dispute matters.[1]

2.    Forensic Economics has been retained by Akin Gump Strauss Hauer & Feld, LLP, counsel to Mr. Raj Rajaratnam, to provide analytical support to Prof. Gregg A. Jarrell and counsel in connection with the trial and sentencing phases of Mr. Rajaratnam's criminal proceeding.

3.    At Forensic Economics, I am the "case manager" directly responsible for assisting Prof. Jarrell with analysis and research pertinent to his testimony at Mr. Rajaratnam's trial and to the declaration he executed in connection with the sentencing. As part of this work, I attended

---

[1] I have eighteen years experience in the mergers and acquisitions field. I have advised attorneys in securities litigation matters on M&A transactions and other valuation assignments with an aggregate deal value of over $170 billion. In addition, I have consulted on issues pertaining to market efficiency and the analysis of stock price responses to public information in securities fraud lawsuits for nine years. I hold an M.B.A. in Finance (2002) from the William E. Simon Graduate School of Business Administration at the University of Rochester where I graduated Beta Gamma Sigma and was awarded the Edmund D. McGarry Fellowship. I also hold a B.S. in Finance (1993) from the University of Oregon.

1

the trial during Prof. Jarrell's testimony. In preparing for the trial and for the sentencing, I have reviewed and performed numerous analyses of Galleon's order management system ("OMS") trading records, which include trading by Mr. Rajaratnam.

4.   I have reviewed the government's "revised gain calculation" submitted on October 6, 2011.[2] Although the Court requested that the Government revise its gain calculation as if Mr. Rajaratnam exited his positions using the closing price on the first trading day following the announcement (instead of prices from actual transactions), based on my review, I found that the Government made additional changes as well.

5.   For ATI Technologies, the Government's revised gain calculation indicates that a long position of 5,725,000 shares was held immediately prior to the July 24, 2006 announcement that ATI was being acquired by AMD.[3] In contrast, Agent Barnacle's original gain calculation presented by the Government at trial only used 5,675,000 shares.[4] The Government's inclusion of an additional 50,000 shares (*i.e.*, 5,725,000 – 5,675,000) is contrary to Agent Barnacle' presentation at trial. The introduction by the Government of an additional 50,000 shares causes (in part) its revised gain calculation for ATI to be more than 8% greater than that of Agent Barnacle's.[5]

---

[2] *See* Government's Reply Sentencing Memorandum Regarding Calculating Raj Rajaratnam's Gain dated October 6, 2011 (the "Government's Reply").

[3] *See* Government's Reply, Exhibit A, p. 4.

[4] *See* Agent Barnacle's ATI work papers at Bates Nos. 3534-K-000007 and 3534-K-000008 (2,625,000 shares for manager code TAM/GRC), Bates No. 3534-K-000019 and 3534-K-000020 (1,000,000 shares for manager code DIV), and Bates Nos. 3534-K-000040 and 3534-K-000041 (2,050,000 shares for manager code GLT). Agent Barnacle's share total for manager code GLT is 2,200,000 in his work papers; however, this number was manually adjusted to remove 150,000 shares that were sold prior to the acquisition announcement. The profit from this manually adjusted total of 2,050,000 (*i.e.*, 2,200,000 - 150,000) shares agrees with Agent Barnacle's ATI profit shown on GX 1, 21.

[5] *See* Government's Reply, p. 2.

6. For Xilinx, the Government's revised gain calculation indicates that a short position of 700,000 shares was held immediately prior to Xilinx's December 7, 2006 announcement of a business update.[6] In contrast, Agent Barnacle's gain calculation presented at trial only used 525,000 shares.[7] The Government's inclusion of an additional 175,000 shares (*i.e.*, 700,000 – 525,000) is contrary to Agent Barnacle' presentation at trial, which specifically "EXCLUDE[D]" 25,000 of those shares from his analysis and did not include the remaining shares.[8] The introduction by the Government of an additional 175,000 shares causes (in part) its revised gain calculation for Xilinx to be more than 41% greater than that of Agent Barnacle's.[9]

7. The Government's Reply also noted adjustments made in its loss avoidance calculation, which impacted Goldman Sachs, Google and Intel.[10] Before this revision, the Government's loss avoidance calculation for all three companies was the same – it was based on the opening stock price following each company's respective earnings announcement. For the Government's revised loss avoidance calculation, it changed from using the opening stock price to the closing stock price "to be consistent"[11] with its other revised gain calculations as discussed at oral argument on October 4, 2011. The Government, however, went one step further. It moved the hypothetical sale of Goldman Sachs' shares back by more than a month from December 16, 2008 when earnings were announced, to November 10, 2008 (a pre-announcement

---

[6] *See* Government's Reply, Exhibit A, p. 27.

[7] *See* Agent Barnacle's Xilinx work papers at Bates No. 3534-E-000024 (50,000 shares for manager code DIV) and Bates No. 3534-E-000081 (475,000 shares for manager code TAM/TMT). The profit from these specific shares agrees with Agent Barnacle's Xilinx profit shown on GX 1, 37.

[8] *See* Agent Barnacle's Xilinx work papers at Bates Nos. 3534-E-000024 and 3534-E-000081.

[9] *See* Government's Reply, p. 2.

[10] *See* Government's Reply, pp. 3-5.

[11] *See* Government's Reply, p. 4.

date).[12] This adjustment is inconsistent with the Government's treatment of loss avoidance for Google and Intel (which continued to use post-earnings announcement prices), as well as the Government's other gain calculations based on post-announcement prices. This inconsistently applied change causes the Government's revised gain calculation for Goldman Sachs (loss avoidance) to be more than 16% greater than that of Agent Barnacle's.[13]

8.  As requested by the Court, the Government changed Mr. Rajaratnam's actual stock prices when he exited his positions days and weeks after each respective corporate announcement and replaced those post-announcement prices with the closing stock prices immediately following each announcement. Because the Government applied this change to <u>every</u> transaction when Mr. Rajaratnam exited his positions (regardless of whether it was during the first trading day post-announcement or two weeks thereafter), this resulted in the revision of a significant number of transactions that actually occurred during the first day of trading following each announcement at prices different from the closing stock price later that day. The replacement of these actual stock prices from the first day with the closing stock prices causes the Government's revised gain calculation to increase.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 10/10/11                                 _____
                                                 James L. Canessa

---

[12] *See* Government's Reply, Exhibit A, p. 12.
[13] *See* Government's Reply, p. 2.

4