UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

RAJ RAJARATNAM,

        *Defendant*.

S2 09 Cr. 1184 (LAP)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RAJ RAJARATNAM'S
MOTION FOR A WRIT OF ERROR *CORAM NOBIS***

JONES DAY
Samidh Guha
Rajeev Muttreja
Ian Samuel
222 East 41st Street
New York, NY 10017
(212) 326-3721

*Attorneys for Raj Rajaratnam*

June 16, 2015

## TABLE OF CONTENTS

                                                                                                     **Page**

Introduction ............................................................................................................................. 1

Statement of Relevant Facts .................................................................................................... 4

Argument ................................................................................................................................. 6

      A.      Adjusting the Forfeiture Order Is Necessary To Achieve Justice, Because Segments of Mr. Rajaratnam's Convicted Conduct Were Not Criminal and He Was Ordered To Forfeit More Money Than Federal Law Authorizes ............ 8

            1.      The Forfeiture Order Is Invalid Under *Newman* ........................................ 9

            2.      The Forfeiture Order Is Invalid Under *Contorinis* .................................. 10

      B.      Sound Reasons Exist for Not Seeking Earlier Relief, to the Extent They Are Required, Because *Newman* and *Contorinis* Were Issued After the Forfeiture Order Was Entered and Only Recently Became Final ....................... 12

Conclusion ............................................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Austin v. United States*,
　509 U.S. 602 (1993)..................................................................................................9

*Barnickel v. United States*,
　113 F.3d 704 (7th Cir. 1997) ....................................................................................7

*Foont v. United States*,
　93 F.3d 76 (2d Cir. 1996) ...............................................................................7, 8, 12

*Harmelin v. Michigan*,
　501 U.S. 957 (1991)..................................................................................................9

*Kaminski v. United States*,
　339 F.3d 84 (2d Cir. 2003).........................................................................................7

*Kovacs v. United States*,
　744 F.3d 44 (2d Cir. 2014).......................................................................................13

*Libretti v. United States*,
　516 U.S. 29 (1995)....................................................................................................9

*McQuiggin v. Perkins*,
　133 S. Ct. 1924 (2013)............................................................................................12

*SEC v. Rajaratnam*,
　No. 09-cv-8811 (S.D.N.Y. Nov. 8, 2011)..................................................................3

*United States v. Beltramea*,
　785 F.3d 287 (8th Cir. 2015) ....................................................................................9

*United States v. Contorinis*,
　692 F.3d 136 (2d Cir. 2012)............................................................................. *passim*

*United States v. Contorinis*,
　No. 09-cr-1083 (S.D.N.Y. June 25, 2013)...............................................................11

*United States v. Denedo*,
　556 U.S. 904 (2009) ............................................................................................6, 7

*United States v. Goffer*,
　529 F. App'x 17 (2d Cir. 2013) ....................................................................3, 11, 13

*United States v. Jiau*,
　545 F. App'x 34 (2d Cir. 2013) ...............................................................3, 11, 12, 13

*United States v. Mischler*,
　787 F.2d 240 (7th Cir. 1986) ............................................................................7

*United States v. Morgan*,
　346 U.S. 502 (1954) ..........................................................................................7

*United States v. Newman*,
　773 F.3d 438 (2d Cir. 2014)............................................................................. *passim*

**S**TATUTES

18 U.S.C. § 981(a)(1)(C) ................................................................................9, 10, 11, 12

28 U.S.C. § 1651(a) ................................................................................................7

28 U.S.C. § 2255 ................................................................................................. *passim*

**O**THER **A**UTHORITIES

Fed. R. Crim P. 32.2(b)(1) ...........................................................................................9

**Introduction**

Defendant Raj Rajaratnam respectfully submits this motion requesting a writ of *coram nobis*, as a companion to his contemporaneous motion for a writ of *habeas corpus* under 28 U.S.C. § 2255.  A criminal defendant must seek the writ of *coram nobis* to correct errors in a non-custodial component of his sentence, unlike a writ for *habeas corpus* which is limited to challenges regarding custody.  Mr. Rajaratnam accordingly requests *coram nobis* relief from the order that required him to forfeit $53.8 million as part of his criminal sentence, because that order is unlawful in light of subsequent changes in the law articulated by the Second Circuit in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), and *United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012).  In these two decisions, both issued after the entry of the forfeiture order, the Second Circuit repudiated two of the major legal theories underlying Mr. Rajaratnam's conviction and order of forfeiture.  These decisions, when applied here, result in a nearly $50 million reduction of the forfeiture order issued in connection with Mr. Rajaratnam's sentence.  As a matter of fundamental fairness, the non-custodial, monetary consequences currently being suffered by Mr. Rajaratnam as a result of the unlawful forfeiture order should be reassessed, and the forfeiture order amended to comport with what is now known to be the law.

On May 11, 2011, a jury convicted Mr. Rajaratnam of 14 counts of securities fraud and conspiracy to commit securities fraud in connection with trades carried out from 2005 to 2008 that yielded, in the government's view at trial, actual gains to Mr. Rajaratnam of approximately $53.8 million.  On the basis of these convictions and the related actual gains and losses avoided, the District Court sentenced Mr. Rajaratnam on October 13, 2011 to a term of 11 years' imprisonment—the highest sentence ever imposed for insider trading in this District—and imposed a fine of $10 million.  Also as part of the sentence, the Court issued an order requiring Mr. Rajaratanam to forfeit $53.8 million.  Dkt. 343 ("Forfeiture Order").  In doing so, the

District Court did not consider the fact that Mr. Rajaratnam only received approximately $7.4 million as a result of the trades for which he was convicted at trial, and instead ordered him to forfeit over $46 million of additional, lawfully derived money, to account for funds received and retained by innocent investors.[1]  After the imposition of this sentence, Mr. Rajaratnam began serving his sentence of 11 years' imprisonment on November 28, 2011, and timely satisfied the Forfeiture Order prior to his voluntary surrender.

In the four years since Mr. Rajaratnam's conviction and sentencing, central theories upon which the government pursued Mr. Rajaratnam have been rejected by the Second Circuit.  It is now clear that (i) much of Mr. Rajaratnam's conduct as a downstream tippee was lawful, as the government failed to introduce any evidence that Mr. Rajaratnam had knowledge of breach of duty by the upstream tippers, *see Newman*, 773 F.3d 438; and, (ii) the law does not authorize criminal forfeiture of money in excess of the defendant's actual gains, *see Contorinis*, 692 F.3d 136.  The Second Circuit's unequivocal correction of central insider trading principles in *Newman* and *Contorinis* therefore requires a recalculation of the $53.8 million of forfeiture ordered by the District Court as a part of Mr. Rajaratnam's sentence.

*Newman* and *Contorinis* provide independent analytical bases for reducing the amount of forfeiture owed by Mr. Rajaratnam.  <u>First</u>, under *Newman*, the government's allegations of his wrongdoing as a downstream tippee—which encompasses large swaths of the convicted conduct—are unsupported by any evidence sufficient to warrant conviction.  Accordingly, as explained in Mr. Rajaratnam's § 2255 motion, certain trades can no longer be a basis for punishment.  Given that Mr. Rajaratnam cannot be required to forfeit proceeds from trades that

---

[1]  Between 2005 and 2009, Mr. Rajaratnam personally executed more than 36,000 trades in nearly 1,000 different securities; the trades for which he was prosecuted at trial accounted for a tiny fraction (~0.3%) of those.  *See* Trial Transcript at 4700-4703.

2

are not illegal, *Newman* more than halves the forfeiture ordered by the District Court for trading attributed to Mr. Rajaratnam.  <u>Second</u>, under *Contorinis*, the Forfeiture Order miscalculates the amount of forfeiture due from Mr. Rajaratnam by including trading proceeds to which Mr. Rajaratnam was never entitled and never retained.  Including only those proceeds retained by Mr. Rajaratnam collectively in his capacities as a portfolio manager, investor, and owner at Galleon independently requires a reduction of the Forfeiture Order.  Such an adjustment would be consistent with similar reductions agreed to by the government in contemporaneous insider trading cases following the decision in *Contorinis*.  *See, e.g.*, *United States v. Jiau*, 545 F. App'x 34, 36 (2d Cir. 2013); *United States v. Goffer*, 529 F. App'x 17, 20 (2d Cir. 2013).

In light of the above framework, Mr. Rajaratnam can be required to forfeit only the amount he received in personal benefit for trades that could be deemed illegal after *Newman* given the evidence adduced at trial.  Including only trades for which Mr. Rajaratnam was convicted that survive scrutiny under *Newman* reduces the total gains potentially eligible for forfeiture to approximately $20.6 million.  Further applying the rule of *Contorinis* reduces the total gain amount from approximately $20.6 million to approximately $4.3 million, which measures Mr. Rajaratnam's personal benefit and is the correct forfeiture total.  *See* Declaration of George Lau (June 16, 2015) ("Lau Decl.") (calculating forfeiture amount of $4,332,505.71).

This recalculation of the Forfeiture Order in light of *Newman* and *Contorinis* is necessary as a matter of fundamental justice.  As it currently stands, the government is retaining from this action approximately $49.5 million to which it is not entitled under the law.[2]  The government

---

[2] In a parallel civil case, Mr. Rajaratnam was permitted to reduce his disgorgement obligation by the amount of the forfeiture in this criminal case. *See SEC v. Rajaratnam*, No. 09-cv-8811, Dkt #251 (S.D.N.Y. Nov. 8, 2011). Although the issue is not before this Court, Mr. Rajaratnam will bring any relief granted in this case to the attention of the district court in that civil action.

would suffer no cognizable prejudice from having this matter properly adjudicated—indeed, the government has repeatedly consented to such a recalculation for other defendants. To date, however, the government has refused to treat Mr. Rajaratnam similarly. Ironically, having loudly and repeatedly decried Mr. Rajaratnam's supposed greed when prosecuting him, the government itself now refuses to return tens of millions of dollars to which it is simply not entitled under the law.

**Statement of Relevant Facts**

Raj Rajaratnam was the founder and managing general partner of Galleon Management ("Galleon"), a hedge fund investment partnership. In October 2009, Mr. Rajaratnam was arrested for engaging in alleged insider trading at Galleon. In May 2011, he was convicted for executing improper trades in the Galleon Diversified and Galleon Technology Funds, two funds run by Galleon Management that largely consisted of other investors' money.

Mr. Rajaratnam earned money from the trades at issue in two ways. First, he was entitled to a portion of the fees that investors paid to Galleon Management to manage the two funds at issue. Lau Decl. ¶ 8. These fees, imposed annually, consisted of an industry-standard 1% to 2% of the managed assets, plus an industry-standard 20% of the funds' profits. Lau Decl. ¶ 10. Mr. Rajaratnam received a portion of these fees, both as the portfolio manager for the funds at issue, and as the owner of a 40% interest in Galleon Management. Lau Decl ¶ 11-15. Second, Mr. Rajaratnam was entitled to a pro rata share of any profits generated by trading in the funds at issue, as a result of both (1) his own direct investments in the funds, and (2) a deferred-compensation arrangement where his fees described above would be held in various Galleon funds instead of being paid to him immediately. Lau Decl. ¶ 16.

Notwithstanding Mr. Rajaratnam's limited personal interest in the improper trades, the government sought to hold him accountable at sentencing for *all* gains and losses avoided from

4

the trades at issue, regardless of whether such sums accrued to Mr. Rajaratnam or to Galleon's investors. *See, e.g.*, Dkt. 305 (Government's Sentencing Memorandum) at 31-37. Mr. Rajaratnam vigorously opposed this expansive view. Entering into sentencing, this dispute (along with other disputed sentencing questions) remained pending. At the sentencing itself, the District Court ruled orally in favor of the government: it held Mr. Rajaratnam accountable under the Sentencing Guidelines for all gains or losses avoided from the improper trades, regardless of whether the benefit accrued to Mr. Rajaratnam or to the Galleon investors, for the purposes of Guidelines calculations. The District Court then sentenced Mr. Rajaratnam to, among other things, a term of incarceration of 11 years.

Immediately after the District Court's oral ruling, but while the sentencing proceedings were still ongoing, the parties submitted to the court a draft order of forfeiture that proposed a forfeiture amount of $53.8 million, reflecting all gains from the trading in question.[3] This submission reflected that Mr. Rajaratnam was required to forfeit the total gain attributed to the trading in question irrespective of whether the proceeds accrued to Mr. Rajaratnam or to the Galleon investors, and was therefore consistent with the District Court's determination on the Guidelines calculation. At the sentencing, the District Court agreed orally to enter the proposed order, but no inquiry or analysis as to the appropriateness of the forfeiture amount was conducted. This Court issued the written Forfeiture Order on August 13, 2012 (approximately ten months after Mr. Rajaratnam's sentencing), following Judge Holwell's resignation from the bench. *See* Dkt. 343. The formal Forfeiture Order adopted the earlier oral forfeiture ruling from the sentencing hearing.

---

[3] The proposed forfeiture amount excluded approximately $10 million of losses avoided. Although Judge Holwell considered losses avoided when measuring Mr. Rajaratnam's gains for purposes of the Sentencing Guidelines, losses avoided are not a proper basis for forfeiture. *See infra* note 4.

Shortly thereafter, the Second Circuit decided *Contorinis*. *See* 692 F.3d 136. In *Contorinis*, the court held that insider trading defendants could be subjected to criminal forfeiture only for their *personal* gains, and not for gains earned by third parties for whom a defendant made trading decisions. In or around October 2014, counsel for Mr. Rajaratnam raised *Contorinis* and the decision's impact on the Forfeiture Order with the government. Although the parties discussed the matter in some detail, the government ultimately informed counsel that it would not consent to any revisions to the Forfeiture Order.

On December 10, 2014, the Second Circuit decided *Newman*, in which it held that a tippee may be criminally liable for insider trading only if he knows both (1) that an insider disclosed confidential information and (2) that the insider did so in exchange for a personal benefit. *See* 773 F.3d 438. On January 23, 2015, the government filed a motion for rehearing or rehearing *en banc* in *Newman*. On April 3, 2015, the Second Circuit denied that motion, confirming that the panel's decision in *Newman* would remain the law of the circuit.

Mr. Rajaratnam now files this motion for a writ of *coram nobis*, in light of the Forfeiture Order's infirmity under *Newman* and *Contorinis*, and in connection with a companion motion under 28 U.S.C. § 2255.

**Argument**

When a "fundamental error" has occurred in a criminal proceeding regarding non-custodial components of a sentence for which remedies such as "habeas corpus" are not available, a writ of *coram nobis* may issue to correct that error. *United States v. Denedo*, 556 U.S. 904, 911 (2009). The "motion is of the same general character as one under 28 U.S.C. § 2255," and the "accepted American practice" is to proceed by motion rather than seeking relief in a separate case. *United States v. Morgan*, 346 U.S. 502, 505 n.4 (1954). *Coram nobis* is therefore an "extension of the original proceeding during which the error allegedly transpired."

*Denedo*, 556 U.S. at 912-13.  The authority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits "courts established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions."  28 U.S.C. § 1651(a); *see Denedo*, 556 U.S. at 911.

A motion for a writ of *habeas corpus* under 28 U.S.C. § 2255 has been submitted to this Court in tandem with this motion.  *See* Memorandum of Law in Support of Defendant Raj Rajaratnam's Motion Pursuant to 28 U.S.C. § 2255 to Vacate Convictions and Sentence ("§ 2255 Brief").  That motion, however, challenges only Mr. Rajaratnam's convictions and his term of incarceration, because "§ 2255 may not be used" where a defendant is challenging a monetary rather than custodial aspect of his sentence.  *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003).  Therefore, when an error in the original trial has infected a non-custodial aspect of the sentence, as has happened here, a prisoner's resort is a writ of *coram nobis*, which may accompany a separate writ of *habeas corpus*.  *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Kaminski*, 339 F.3d at 89-91 (Calabresi, J., concurring) (to "say that habeas challenges are restricted to those situations in which freedom from custody is at stake is not to foreclose other collateral attacks"); *see also United States v. Mischler*, 787 F.2d 240 (7th Cir. 1986) (same).

To receive *coram nobis* relief, a movant must demonstrate that (1) "there are circumstances compelling such action to achieve justice," (2) "sound reasons exist for failure to seek appropriate earlier relief," and (3) the defendant "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."  *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996).  As to the last of these, there can be no meaningful dispute about the continuing consequences of the erroneous forfeiture order—the government continues to hold

7

approximately $49.5 million of Mr. Rajaratnam's lawfully derived money to which it is not entitled. For the reasons explained below, Mr. Rajaratnam also satisfies each of the other two *Foont* requirements, and the Court should therefore issue the writ.

> A. **Adjusting the Forfeiture Order Is Necessary To Achieve Justice, Because Segments of Mr. Rajaratnam's Convicted Conduct Were Not Criminal and He Was Ordered To Forfeit More Money Than Federal Law Authorizes.**

Where a subsequent change in law makes clear that a person was convicted for conduct that was not criminal or was punished in excess of what the law permits, the interests of justice inherently require the granting of the writ. In *United States v. Reguer*, for example, the defendant had pleaded guilty to an offense for which the Supreme Court subsequently established scienter as an element; the change in law cast doubt on the conviction's validity because at the original trial, "no evidence was elicited … about [Reguer]'s state of mind." 901 F. Supp. 515, 519 (E.D.N.Y. 1995). As a result of his conviction, Reguer "still owed over $200,000 in fines and interest," and accordingly the district court determined that the writ of *coram nobis* was available to attack the "continuing consequences" of the conviction. *Id.* at 517-18. The district court granted the petition and vacated Reguer's plea and conviction, holding that if "a conviction and punishment are for an act that the law does not make criminal, there can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief." *Id.* at 520 (citing *Davis v. United States*, 417 U.S. 333 (1974)) (internal quotation marks and alterations omitted).

In this case, the Forfeiture Order was calculated in significant part on the basis of conduct that is now known not to be criminal, and through a methodology now rejected by law. As in *Reguer*, punishment (such as a financial penalty) for lawful conduct or in excess of what the law authorizes is inherently an extraordinary circumstance justifying *coram nobis* relief. Indeed, such punishment violates any number of constitutional guarantees. *See, e.g.*, *Austin v. United*

*States*, 509 U.S. 602 (1993) (Excessive Fines Clause applies to forfeiture orders); *Harmelin v. Michigan*, 501 U.S. 957, 966-75 (1991) (opinion of Scalia, J.) (Eighth Amendment forbids punishment in excess of what positive law authorizes).

Relief by this Court under *coram nobis* to ensure that the forfeiture in this matter is lawful is also consistent with a district court's statutory responsibilities.  A district court has "an independent duty to ensure that the required nexus" is present between the forfeiture amount, the nature and circumstances of a defendant's conviction, and the applicable forfeiture statute (here, 18 U.S.C. § 981(a)(1)(C)).  *United States v. Beltramea*, 785 F.3d 287, 291 (8th Cir. 2015) (emphasizing that "a defendant's consent to forfeiture" does not "abrogate[] th[is] requirement"); *see also* Fed. R. Crim P. 32.2(b)(1) (stating that "*the court must determine* the amount of money that the defendant will be ordered to pay") (emphasis added); *Libretti v. United States*, 516 U.S. 29, 43 (1995) ("We do not mean to suggest that a district court must simply accept a defendant's agreement to forfeit property").  Because the forfeiture order in this case exceeded what §981(a)(1)(C) permits, this Court should adjust it accordingly.

        1.        **The Forfeiture Order Is Invalid Under *Newman*.**

As part of Mr. Rajaratnam's sentence and pursuant to a consent order, this Court ordered him "to forfeit $53,816,434 in United States currency, representing the amount of proceeds obtained as a result of" the insider trading offenses for which he was found guilty.  Dkt. 343 at 2.  Under *Newman*, however, a substantial portion of the trading for which Mr. Rajaratnam was convicted as a downstream tippee was in fact innocent conduct.  Therefore, he cannot lawfully be ordered to forfeit the proceeds he received for that conduct, and the Forfeiture Order must be adjusted accordingly.  As set forth in the Lau Declaration, only $20.6 million in gains can be traced to trades that, under *Newman*, are unlawful.  *See* Lau Decl. ¶ 6.

9

*Newman* holds that, "in order to sustain a conviction for insider trading, the Government must prove beyond a reasonable doubt that the tippee knew that an insider disclosed confidential information *and* that he did so in exchange for a personal benefit." 773 F.3d at 442 (emphasis in original). Absent evidence that a defendant "knew [he] w[as] trading on information obtained from insiders in violation of those insiders' fiduciary duties," no violation of the law has been established. *Ibid.* In so holding, the Second Circuit in *Newman* specifically disapproved the "doctrinal novelty" of the government's "recent insider trading prosecutions, which are increasingly targeted at remote tippees many levels removed from corporate insiders." *Id.* at 448.

In the interest of efficiency, Mr. Rajaratnam incorporates by reference the arguments advanced in his motion seeking a writ of *habeas corpus* regarding (i) the applicability of *Newman* to his convictions; (ii) the retroactive application of *Newman*; and, (iii) the analysis of the trial record after *Newman*. *See* § 2255 Brief, Argument Section I. *Newman* reduces the number of wrongful trades attributable to Mr. Rajaratnam, who plainly cannot be required to forfeit gains from trades that the government cannot prove were illegal. When considering only those trades appropriately subject to criminal sanction after *Newman*, the amount of potentially forfeitable money is approximately $20.6 million. *See* Lau Decl. ¶ 6.

### 2. The Forfeiture Order Is Invalid Under *Contorinis.*

In addition to deciding *Newman*, the Second Circuit also made clear following Mr. Rajaratnam's sentencing that the Forfeiture Order exceeds the scope of § 981(a)(1)(C), the applicable forfeiture statute. *See Contorinis*, 692 F.3d 136. Even the post-*Newman* figure cited above reflects the *total* proceeds from the trades at issue—not just Mr. Rajaratnam's gains, but also the gains of all of Galleon's investors. *See* Lau Decl. ¶ 6. In *Contorinis*, however, the Second Circuit held that, under § 981(a)(1)(C), an "insider trading" defendant "cannot be

ordered to forfeit profits that he never received or possessed." 692 F.3d at 145. Thus, a forfeiture order for insider trading cannot cover any and all proceeds that might be traceable to the defendant's actions, even if earned by others. Instead, the forfeiture order presumptively must be limited to "*the defendant's* actual gain," without consideration of any losses avoided. *Id.* at 146-47 (emphasis added).[4]

Applying this rule to an insider trading defendant who, like Mr. Rajaratnam, "made investment decisions" for a fund, the Second Circuit in *Contorinis* vacated the district court's order that the defendant "forfeit $12.65 million, the total amount of profits made, and losses avoided, by the Fund" through improper trades. *Id.* at 139, 145. The Second Circuit held in *Contorinis* that the district court's focus on the fund's gains was improper, as was that court's inclusion of losses avoided, and remanded the matter to the district court for recalculation of the proper forfeiture amount. As a result, on remand, the defendant's forfeiture order was reduced by over 95%, to $427,875. *See United States v. Contorinis*, No. 09-cr-1083, Dkt. 112 (S.D.N.Y. June 25, 2013).

Applying its ruling in *Contorinis*, the Second Circuit subsequently reduced other previously entered forfeiture orders, often with the government's agreement. In *Goffer*, for example, "the Government concede[d] that the forfeiture order should not account for gains realized by [the defendant's] employers." 529 F. App'x at 20. And in *Jiau*, "the government agree[d]" that "the order of forfeiture should not have included [sums] attributable to . . . avoided losses." 545 F. App'x at 36.

---

[4] Under *Contorinis*, "the only money that should be subject to forfeiture in an insider trading case is money acquired when shares are traded based upon inside information *at a gain*." 692 F.3d at 145 n.3 (emphasis added). If the defendant's improper trades merely avoided further losses, no forfeiture is allowed. The Forfeiture Order of $53.8 million did not take account of losses avoided and therefore no correction is required regarding losses avoided.

11

The same result is appropriate here. As discussed above, only $20.6 million in proceeds were the result of trades that were illegal. But the majority of that money was earned by Galleon and its investors. As explained in the attached declaration, Mr. Rajaratnam *personally* realized only $4,332,505.71 from improper trades (even after accounting for his ownership interest in Galleon). Lau Decl. ¶ 20.[5] This Court should revise the Forfeiture Order accordingly, to bring it into conformity with *Contorinis* and § 981(a)(1)(C).

### B. Sound Reasons Exist for Not Seeking Earlier Relief, to the Extent They Are Required, Because *Newman* and *Contorinis* Were Issued After the Forfeiture Order Was Entered and Only Recently Became Final.

In part because there is no statute of limitations for *coram nobis* relief, a movant must ordinarily show that "sound reasons exist for failure to seek appropriate earlier relief." *Foont*, 93 F.3d, at 79. But that requirement does not apply here: because *Newman* renders Mr. Rajaratnam innocent for a number of the trades for which he was convicted, there can be no bar to the reconsideration of his sentence, as "a credible showing of actual innocence" excuses any otherwise-applicable "procedural bar to relief." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). To the extent the requirement is applicable here, however, it is satisfied.

*Newman* and *Contorinis* were both decided after Mr. Rajaratnam's sentencing and after the Forfeiture Order was entered. *Newman* was decided in December 2014 and its holding, when applied to Mr. Rajaratnam's case, called into question significant aspects of Mr. Rajaratnam's conviction. *See* 773 F.3d at 441. As has been well-publicized, the government immediately criticized the *Newman* decision and moved for reconsideration or rehearing *en banc*. The Second Circuit requested full briefing on that motion and then denied the motion only two

---

[5] Moreover, even if *Newman* were inapplicable, the forfeiture order would still be unlawful. Considering *all* of the trades that were the basis of Mr. Rajaratnam's conviction (including those that are now legal under *Newman*), he personally realized only $7,460,633 in gains. *See* Dkt. 304-1 (Declaration of George Lau, dated July 11, 2011), Attachment A at 4.

12

months ago, on April 3, 2015, thereby establishing that the holding of *Newman* would remain the law of the circuit.  *See* 2015 WL 1954058.

Just prior to the Second Circuit's ruling in *Newman*, in fall of 2014, Mr. Rajaratnam completed negotiations with the government regarding the potential impact of *Contorinis* on the Forfeiture Order.  Counsel for Mr. Rajaratnam initiated this attempt at resolution following the June 2014 denial of his petition for certiorari.  While the parties discussed a recalculation of the Forfeiture Order (much like what the government agreed to in *Goffer* and *Jiau*), the government here ultimately refused to consent to any such relief.  *Compare Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014) (reversing a district court's failure to grant *coram nobis* relief and determining that the defendant's petition was timely in part because of the defendant's "efforts to negotiate for an agreed-upon motion" prior to filing his petition).

In short order following the denial of the government's motion for *en banc* review of *Newman*, Mr. Rajaratnam prepared and filed this motion and the companion motion under § 2255.  He did so consistent with the deadline for his § 2255 motion in the interest of efficiency, to allow the Court to consider both motions (which overlap substantially) together.  Accordingly, to the extent that Mr. Rajaratnam's actual innocence does not excuse the requirement that there be sound reasons for not seeking earlier relief, he has therefore satisfied any such obligation.

**Conclusion**

For the foregoing reasons, this Court should issue a writ of error *coram nobis*, vacate the order of forfeiture, and enter a revised order that complies with the rules of *Newman* and *Contorinis*.

    Respectfully submitted,

    JONES DAY

    /s/ Samidh Guha

    Samidh Guha
    Rajeev Muttreja
    Ian Samuel
    222 East 41st Street
    New York, New York  10017
    Telephone:  (212) 326-3721
    Facsimile: (212) 755-7306
    sguha@jonesday.com
    rmuttreja@jonesday.com
    isamuel@jonesday.com

**DECLARATION OF SERVICE**

Samidh Guha, an attorney admitted to practice before the bar of this Court, declares under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing Memorandum of Law in Support of Defendant Raj Rajaratnam's Motion for a Writ of Error *Coram Nobis* will be served upon counsel for the government registered to receive electronic notices in this action via the United States District Court for the Southern District of New York's ECF system upon filing. Counsel for the government are:

>   Michael Ferrara
>   Amy Ruth Lester
>   U.S. Attorney's Office
>   Southern District of New York
>   One St. Andrew's Plaza
>   New York, New York 10007
>   michael.ferrara@usdoj.gov
>   amy.lester@usdoj.gov

Dated: June 16, 2015
   New York, New York


   _/s/ Samidh Guha_____
   SAMIDH GUHA